1   David M. Birka-White (State Bar No. 85721)
    dbw@birka-white.com
2   Mindy M. Wong (State Bar No. 267820)
    mwong@birka-white.com
3   BIRKA-WHITE LAW OFFICES
    411 Hartz Avenue, Suite 200
4   Danville, CA  94526
    Telephone:  (925) 362-9999
5   Facsimile:  (925) 362-9970

6   Attorneys for Plaintiffs
    *United Desert Charities, Maralee Pelka,*
7   *Fred Ede, III, Emily Williams, Bruce Pritchard,*
    *and Jean Steiner*
8
9                **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11   UNITED DESERT CHARITIES,              Case No.  CV12-06878 SJO (SHx)
     MARALEE PELKA, FRED EDE, III,
12   EMILY WILLIAMS, BRUCE                 *The Honorable S. James Otero*
     PRITCHARD, and JEAN STEINER,
13   on behalf of themselves and all others **FIRST AMENDED CLASS**
     similarly situated,                   **ACTION COMPLAINT**
14
                 Plaintiffs,               **JURY DEMAND**
15
     v.                                    Action Filed:   August 9, 2012
16
     FLUSHMATE, a division of SLOAN
17   VALVE COMPANY, AMERICAN
     STANDARD BRANDS AS
18   AMERICA, INC., KOHLER CO.,
     GERBER PLUMBING FIXTURES,
19   LLC, MANSFIELD PLUMBING
     PRODUCTS, LLC, HOME DEPOT,
20   U.S.A., INC., and DOES 1-10,
     inclusive,
21
                 Defendants.
22
23
24
25
26
27
28

1    Plaintiffs UNITED DESERT CHARITIES, MARALEE PELKA,

2    FRED EDE, III, EMILY WILLIAMS, BRUCE PRITCHARD, and JEAN

3    STEINER ("Plaintiffs"), on behalf of themselves and all others similarly situated,

4    by and through their undersigned counsel, upon personal knowledge, information,

5    and belief allege as follows:

6    **I.**     **INTRODUCTION**

7         1.     This is a class action for damages and/or restitution filed on behalf of

8    Plaintiffs and all persons or entities who own or owned toilets equipped with a

9    Series 503 Flushmate® III Pressure-Assist Flushing System that were manufactured

10   between October 14, 1997 and February 29, 2008 ("Flushmate System") and sold

11   by Flushmate, a division of the Sloan Valve Company.  The Flushmate System is

12   currently subject to a nationwide Consumer Product Safety Commission ("CPSC")

13   product recall ("Flushmate Recall"), and it is estimated that more than 2.3 million

14   toilets, which were manufactured and marketed by several toilet manufacturers, are

15   impacted by this Flushmate Recall.  In connection with the Flushmate Recall, it was

16   revealed that there have been at least 304 failures of the Flushmate System and at

17   least 14 injuries stemming from the catastrophic failure of the Flushmate System.

18        2.     The Flushmate System is defective, poses a safety hazard, and is

19   unreasonably dangerous to consumers in that the Flushmate System's pressure

20   vessel, which is located in a toilet's water storage tank, suffers from a design and/or

21   manufacturing defect.  As further detailed below, this design defect creates a

22   substantial likelihood that the Flushmate System's pressure vessel will suddenly

23   and unexpectedly rupture, causing the toilet to explode.  In now acknowledging this

24   design and/or manufacturing defect, Flushmate has instructed owners to

25   immediately turn off the water supply to the toilets containing the Flushmate

26   System to avoid physical injury and property damage.

27        3.     Plaintiffs and all similarly situated owners of such toilets, have been

28   damaged by Defendants' failure to properly design, develop, test, manufacture,

1   distribute, market, and sell toilets containing the Flushmate System, requiring

2   Plaintiffs and members of the proposed class ("Class Members") to pay for out-of-

3   pocket costs for repairing and replacing the defective Flushmate System.

4   **II.    PARTIES**

5       4.      Plaintiff and putative class representative United Desert Charities

6   ("UDC") is a California corporation located in Palmdale, California.  Plaintiff UDC

7   owns American Standard toilets containing the defective Flushmate System. One of

8   their toilets has failed and leaked.

9       5.      Plaintiff and putative class representative Maralee Pelka ("Pelka"), is a

10  resident of Las Vegas, Nevada.  Ms. Pelka owns American Standard toilets

11  containing the defective Flushmate System.  One of the toilets at Ms. Pelka's

12  residence has failed and leaked.

13      6.      Plaintiff and putative class representative Fred Ede, III ("Ede"), is a

14  resident of Fresno, California.  Plaintiff owns several Kohler toilets containing the

15  defective Flushmate System.

16      7.      Plaintiff and putative class representative Emily Williams

17  ("Williams"), is a resident of South San Francisco, California.  Ms. Williams

18  purchased a Gerber toilet containing a Flushmate System for her residence.  The

19  Flushmate System contained within her Gerber toilet is subject to the Flushmate

20  Recall.

21      8.      Plaintiff and putative class representative Bruce Pritchard

22  ("Pritchard"), is a resident of Emerald Hills, California.  Mr. Pritchard acquired a

23  Mansfield toilet containing a Flushmate System for his residence.  The Flushmate

24  System contained within his Mansfield toilet is subject to the Flushmate Recall.

25      9.      Plaintiff and putative class representative Jean Steiner ("Steiner"), is a

26  resident of Desert Hills, Arizona.  Mrs. Steiner purchased a Kohler toilet containing

27  a Flushmate System for her residence from Home Depot.  The Flushmate System

28  contained within her Kohler toilet is subject to the Flushmate Recall.

10.     Flushmate is a division of the Sloan Valve Company, located in New Hudson, Michigan.  Sloan Valve Company is a Delaware corporation with its principal place of business in Franklin Park, Illinois (collectively, "Flushmate"). Flushmate is engaged in the business of manufacturing, supplying and distributing pressurized flushing devices including the defective Flushmate System used in the Gerber toilets.

11.     AS America, Inc., doing business in California as American Standard Brands AS America, Inc. ("American Standard"), is a Delaware corporation with its principal place of business in Piscataway, New Jersey.   American Standard manufactures and sells, among other things, bathroom fixtures, including toilets containing the Flushmate System.

12.     Kohler Co. ("Kohler"), is a Delaware corporation with its principal place of business in Kohler, Wisconsin.   Kohler manufactures and sells, among other things, bathroom and kitchen plumbing fixtures, including toilets containing the Flushmate System.

13.     Gerber Plumbing Fixtures, LLC ("Gerber"), is a Delaware corporation with its principal place of business in Woodridge, Illinois.  Gerber manufactures and sells, among other things, plumbing fixtures, including toilets containing the Flushmate System.

14.     Mansfield Plumbing Products, LLC ("Mansfield"), is a Delaware corporation with its principal place of business in Perrysville, Ohio. Mansfield claims to be the leading United States manufacturer and seller of top quality, high design, performance plumbing fixtures and fittings for use in residential, commercial and institutional markets, including toilets equipped with the Flushmate System.

15.     Home Depot U.S.A., Inc. ("Home Depot"), is a Delaware corporation with its principal place of business in Atlanta, Georgia. Home Depot claims to be the world's largest home improvement specialty retailer and operates more than

- 3 -

1  5,000 stores in all 50 states. Home Depot sold toilets containing the Flushmate
2  System throughout the United States.

3        16.    Plaintiffs are unaware of the true names and capacities of the
4  Defendants sued herein as DOES 1 through 10, and therefore sue these Defendants
5  by such fictitious names.  Plaintiffs will amend this complaint to allege their true
6  names and capacities when they are ascertained.  Plaintiffs are informed and believe
7  that each of the fictitiously named Defendants is responsible in some manner for the
8  occurrences herein alleged and that damages suffered by Plaintiffs and the proposed
9  class, were proximately caused by their conduct.

10        17.    Plaintiffs are informed and believe that all Defendants, including the
11  fictitious Doe Defendants 1 through 10, were at all relevant times acting as actual
12  agents, conspirators, ostensible agents, partners, alter egos and/or joint venturers
13  and employees of all other Defendants and that all acts alleged herein occurred
14  within the course and scope of that agency, employment, partnership, and/or
15  enterprise, and with the express and/or implied permission, knowledge, consent,
16  authorization and ratification of their co-Defendants.

17        18.    Plaintiffs are currently unaware of which individual person(s)
18  employed by Defendants is responsible for each of the fraudulent acts and
19  representations alleged herein to have been committed by Defendants as corporate
20  entities.  Plaintiffs will amend this complaint to allege the identities of such persons
21  when their identities are ascertained.

22  **III.**    **JURISDICTION AND VENUE**

23        19.    This Court has jurisdiction over this action pursuant to the Class
24  Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which:
25  (1) there are at least 100 Class Members, (2) the combined claims of Class
26  Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and
27  (3) there is minimal diversity as some of the Plaintiffs and Class Members are
28  citizens of each state of the United States and Defendants are citizens of the States

of Delaware, Georgia, Michigan, Illinois, North Carolina, Ohio, Washington, and Wisconsin.

20.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of conducting business activities within the State of California by advertising, selling, and warranting the toilet systems and the defective Flushmate System to Plaintiffs and Class Members, and maintained systematic and continuous business contacts with the State of California and this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are residents of this District within the meaning of § 1391(d), and a substantial part of the events, misrepresentations and/or omissions giving rise to Plaintiff UDC's claims alleged herein occurred in the Central District when Defendants sold, marketed, and/or warranted the toilets containing the defective Flushmate System to Plaintiff UDC and the proposed class.

## IV.   <u>FACTUAL ALLEGATIONS</u>

### A.   <u>The Flushmate System</u>

22.     Flushmate sells various plumbing products including the Flushmate® III Pressure-Assist Flushing System, also referred to as the Flushmate Flushometer Tank System ("Flushmate System").

23.     Flushmate represents that it has a 25-year track record of reliable service.  Flushmate manufactured over 2.3 million Flushmate Systems between October 14, 1997 and February 29, 2008, which were then sold to Plaintiffs and Class Members throughout the United States between October 1997 and the present (the "Class Period").  The Flushmate System was installed in the water storage tank of toilets manufactured by Defendants American Standard, Kohler, Gerber, Mansfield, and others.

24.     The Flushmate System differs from traditional, gravity-fed flushing

1  systems, and is supposed to be superior to such traditional flushing systems in that

2  the water flushed is under pressure and therefore creates a more powerful flush.

3  The Flushmate System consists of, among other things, a plastic tank or "vessel"

4  located in a toilet's water storage tank.  The vessel is comprised of two plastic

5  halves that are "welded" together.  The vessel stores water under pressure that is

6  then released once the Flushmate System-equipped toilet is flushed.  More

7  particularly, pressure in the water supply line to the Flushmate System compresses

8  and pressurizes air inside the vessel.  Upon flushing a Flushmate System-equipped

9  toilet, the compressed air forces water into the toilet bowl, and instead of the

10  "pulling" or siphon action of a gravity-fed unit, the pressure-assist unit "pushes"

11  waste out.  The plastic tanks are under considerable and constant pressure.

12       25.    Flushmate represented in marketing materials that their Flushmate

13  System was "free of defects in material and workmanship,"  "designed with

14  continuous improvements to be the most reliable, consistent, and trouble-free

15  system available," as well as "No Leaks," "No Callbacks," and "Easier to

16  maintain."

17       26.    Flushmate also represented that its Flushmate System meets industry

18  standards including, but not limited to, American Society of Sanitary Engineering

19  ("ASSE") Standard 1037-90 and ANSI/ASME A112.19.2.

20       27.    Toilets manufactured using the Flushmate System are inherently

21  defective due to a design and/or manufacturing flaw in the Flushmate System's

22  plastic vessel.  More specifically, the pressure within such vessels exert forces on

23  the seam weld holding the vessel's two halves together greater than the capacity of

24  the weld, leading to weld separations and a sudden release of pressure or an

25  explosion. The sudden release of pressure then lifts the toilet's water storage tank's

26  lid and shatters the tank, posing an unreasonable risk of impact or laceration

27  hazards to consumers, as well as property damage to the toilet and the home or

28  other structure in which the toilet is located stemming from the uncontrolled

1   discharge of water from the water supply line.  This failure mechanism is common

2   to all Flushmate Systems throughout the Class Period by virtue of their defective

3   design and/or manufacture, and is not caused by installation practices.

4         28.    Accordingly, each Flushmate System contained a latent defect when

5   manufactured and sold, which renders it currently unsafe and unusable, and to the

6   extent any particular Flushmate System has not already failed, there is a substantial

7   certainty that it will fail in the future before the end of its useful life.

8         29.    But for Defendants' omission of material facts, misleading partial

9   disclosures and misrepresentations concerning the Flushmate System, as further

10   discussed below, Plaintiffs and Class Members would not have purchased any toilet

11   equipped with a Flushmate System.

12              **B.      Target of Flushmate's Representations**

13         30.    Flushmate sells its Flushmate System to initial purchasers, including

14   but not limited to toilet manufacturers (the "Initial Purchasers"), who are not

15   intended to be the ultimate owners of the Flushmate System. The Flushmate System

16   purchased by the Initial Purchasers was ultimately installed in toilets and then sold

17   by the toilet manufacturers to Plaintiffs and Class Members.

18         31.    Flushmate and the Initial Purchasers intended that all representations

19   made by Flushmate concerning the Flushmate System – including representations

20   concerning the quality and reliability of the Flushmate System would be conveyed

21   to and relied upon by Plaintiffs and Class Members. Flushmate and the Initial

22   Purchasers also intended that express and implied warranties concerning the

23   Flushmate System made by Flushmate were for the benefit of Plaintiffs and Class

24   Members.

25         32.    Flushmate contracted with the Initial Purchasers to supply the

26   Flushmate System to be installed in toilets sold to Plaintiff and Class Members.

27   Express and implied warranties made by Flushmate concerning its products would

28   be of no economic value to the Initial Purchasers unless Plaintiffs and Class

Members received the benefit of such warranties.  Toilet manufacturers, like American Standard, Kohler, Gerber, and Mansfield ("Defendant Toilet Manufacturers"), include literature related to the Flushmate System which is separate from their own materials relating to the toilet only, providing their own warranties for their toilets and "flowing down" Flushmate's warranties for the Flushmate System.  For example, Gerber states at the bottom of their warranty, "For warranty issues related to Flushmate®, contact Sloan Flushmate®."

33.    At all times, Flushmate manufactured the Flushmate System for the purpose of selling it to the toilet manufacturers.  Flushmate knew that the toilet manufacturers intended to sell the toilets containing the Flushmate System either directly to Plaintiffs and Class Members or through a retail distributor outlet such as Home Depot and Lowe's, or plumbing supply houses.

34.    At all times, Flushmate intended that their warranties, both express and implied, and their representations, or omissions, about the system, be directed to Plaintiffs and Class Members.

**C.    American Standard**

35.    American Standard manufactures bath and kitchen products.  During the Class Period, American Standard manufactured and sold toilets containing the Flushmate System.

36.     These American Standard toilets include, but are not necessarily limited to, the Cadet 16 ½" Elongated ADA Toilet, Model No. 2467.016, Cadet Elongated Front Toilet, Model No. 2462.016, Yorkville Elongated Front Toilet, Model No. 2876.016, and Glenwall Elongated Toilet, Model No. 2093.100.

37.    American Standard advertised that their toilets were "equipped with FLUSHMATE®" and included separate service instructions for the Flushmate System.  American Standard also represented that the Flushmate System was "factory-adjusted to provide a consistent, safe seal depth in the bowl after each flush," and complied with American Society of Mechanical Engineers ("ASME")

1    Standard A112.19.2.

2        38.    American Standard misrepresented and omitted material facts because

3    Flushmate had previously issued product advisory notices that informed American

4    Standard that the Flushmate System may develop leaks, that the welded joints may

5    separate in the vessels, and that the toilet might explode, posing an unreasonable

6    safety risk.

7        39.    American Standard also received claims and complaints filed by Class

8    Members who had experienced failures of the American Standard toilets containing

9    the Flushmate System, which resulted in damage to real and personal property.

10        40.    Accordingly, American Standard knew, or should have known, that the

11    Flushmate System was inherently flawed and subject to catastrophic failure

12    resulting in physical injury and/or property damage.

13        **D.**    **Kohler Co.**

14        41.    Kohler manufactures bathroom and kitchen plumbing fixtures.  During

15    the Class Period, Kohler manufactured and distributed toilets containing the

16    Flushmate System.

17        42.    These Kohler toilets include, but are not necessarily limited to, the

18    Highline Pressure Assist and Pressure Lite, Wellworth Pressure Assist and Pressure

19    Lite, and Barrington Pressure Assist that flush 1.4 gallon and 1.6 gallon toilets.

20        43.    Kohler represented and advertised that their toilets complied with

21    American Society of Mechanical Engineers ("ASME") Standard A112.19.2.

22        44.    Kohler misrepresented and omitted material facts because Flushmate

23    had previously issued product advisory notices that informed Kohler that the

24    Flushmate System may develop leaks, that the welded joints may separate in the

25    vessels, and that the toilet might explode.  These defects with the Flushmate System

26    coupled with the inability to repair the defect violated ASME A112.19.2.

27        45.    Kohler also received claims and complaints filed by Class Members

28    who had experienced failures of the Kohler toilets containing the Flushmate

System, which resulted in property damage and posed an unreasonable safety risk.

46.     Accordingly, Kohler knew, or should have known, that the Flushmate System was inherently flawed and subject to catastrophic failure resulting in physical injury and/or property damage.

**E.      Gerber Plumbing Fixtures, LLC**

47.     Gerber manufactures bathroom and kitchen plumbing fixtures.  During the Class Period, Gerber manufactured and distributed toilets containing the Flushmate System.

48.     These Gerber toilets include, but are not necessarily limited to, the Maurice one-piece toilet (Model No. 21-012), Ultra-Flush™ Handicap Elongated Toilet (Model No. 21-318), Ultra-Flush™ Elongated Back Outlet Toilet (Model No. 21-310), Ultra-Flush™ Round Front Toilet (Model No. 21-302), and Ultra-Flush™ Elongated Front Toilet (Model No. 21-312).

49.     Gerber advertised that their toilets were "equipped with FLUSHMATE®."  Gerber also represented that their toilets complied with American Society of Mechanical Engineers ("ASME") Standard A112.19.2, listed with the International Association of Plumbing and Mechanical Officials ("IAPMO"), satisfied the requirements of the Uniform Plumbing Code ("UPC"), and were free from defects in material and workmanship.

50.     Gerber misrepresented and omitted material facts because the Flushmate had previously  issued product advisory notices that informed Gerber the Flushmate System may develop leaks, that the welded joints may separate in the vessels, and that the toilet tank might explode posing an unreasonable safety risk to Plaintiffs and Class Members.  These defects in the Flushmate System, coupled with the inability to repair the defect, violated ASME A112.19.2 and the UPC.

51.     Gerber also received claims and complaints filed by Class Members who had experienced failures of the Gerber toilets containing the Flushmate System, which resulted in damage to real and personal property.

1    52.    Accordingly, Gerber knew, or should have known, that the Flushmate

2    System was inherently flawed and subject to catastrophic failure resulting in

3    physical injury and/or property damage.

4         **F.    Mansfield Plumbing Products, LLC**

5    53.    Mansfield manufactures bathroom and kitchen plumbing fixtures.

6    During the Class Period, Mansfield manufactured and distributed toilets containing

7    the Flushmate System.

8    54.    These Mansfield toilets include, but are not necessarily limited to, the

9    QUANTUM™ Elongated Front, Back Outlet Toilet 149-123, QUANTUM™

10   Elongated Front Toilet 147-123, QUANTUM™ Round Front Toilet 146-123, and

11   QUANTUM™ Elongated Front Smart-Height Toilet 148-123.

12   55.    Mansfield represented and advertised that their toilets complied with

13   American Society of Mechanical Engineers ("ASME") Standard A112.19.2.

14   56.    Mansfield also represented that their toilets equipped with the

15   Flushmate System were "backed by extensive warranties" and that "you can count

16   on reliable performance for years."

17   57.    Mansfield misrepresented and omitted material facts because

18   Flushmate had previously issued product advisory notices that informed Mansfield

19   that the Flushmate System may develop leaks, that the welded joints may separate

20   in the vessels, and that the toilet might explode, posing an unreasonable safety risk.

21   These defects with the Flushmate System, coupled with the inability to repair the

22   defect, violated ASME A112.19.2.

23   58.    Mansfield also received claims and complaints filed by Class Members

24   who had experienced failures of the Mansfield toilets containing the Flushmate

25   System, which resulted in damage to real and personal property.

26   59.    Accordingly, Mansfield knew, or should have known, that the

27   Flushmate System was inherently flawed and subject to catastrophic failure

28   resulting in physical injury and/or property damage.

- 11 -

### G.    **Home Depot**

60.    Throughout the Class Period, Home Depot marketed, advertised, warranted, and sold toilets manufactured by Defendant Toilet Manufacturers equipped with the Flushmate System Plaintiffs and Class Members.

61.    Because Flushmate had previously issued product advisory notices that informed Home Depot that the Flushmate System may develop leaks, that the welded joints may separate in the vessels, and that the toilet tank might explode posing an unreasonable safety risk to Plaintiffs and Class Members, Home Depot knew, or should have known, that the Flushmate System was inherently flawed and subject to catastrophic failure resulting in physical injury and/or property damage.

### H.    **Industry Standards**

62.    The standards to which plumbing fixtures – like the toilets manufactured by Defendant Toilet Manufacturers and the pressurized flushing systems are tested are promulgated by, among others, the American Society of Mechanical Engineers ("ASME") and the American Society of Sanitary Engineering ("ASSE").

63.    Because plumbing fixtures are required by building codes to bear the relevant listing marks and/or satisfy standards promulgated by the standards bodies, purchasers of plumbing fixtures will not purchase products which do not, or might not, meet relevant testing or listing standards.  Plumbing fixtures that do not assuredly comply with all relevant standards could not be sold at any price and have no market value.

64.    Accordingly, it is a material misrepresentation for a plumbing fixture manufacturer to claim that its product qualifies for listing – or meets the standards related to the listing – if the manufacturer: (1) changes the formula or production process for the product; (2) does not institute appropriate quality control measures; or (3) produces a product that poses a safety risk to the consumer.  If the certification body becomes aware that the manufacturer's product fails to meet the

1    governing standard or poses an unreasonable safety risk, the listing body will

2    prohibit the manufacturer from selling the product bearing the relevant listing mark.

3         65.    The certification body relevant to this action, the International

4    Association of Plumbing and Mechanical Officials ("IAPMO"), publishes the

5    Uniform Plumbing Code ("UPC"). IAPMO, requires that the plumbing fixtures

6    submitted by a manufacturer be "representative" of the product sold by the

7    manufacturer to the public to qualify for its listing or certification.

8         66.    The UPC is a system of plumbing codes adopted by California and

9    numerous other states that establishes "minimum requirements and standards for

10   the protection of public health, safety, and welfare." Flushmate is certified by

11   IAPMO and represents in marketing materials and its pressure vessel itself that the

12   Flushmate System complies with the listing requirements of IAPMO.  It does so by

13   placing the UPC logo on every pressure vessel.

14        67.    The listing agreement between IAPMO and Flushmate requires that

15   Flushmate maintain a quality control program, including regular testing, to ensure

16   continued compliance with its standard and to further ensure that all plumbing

17   fixtures sold by it meet the minimum criteria specified by the certifying

18   organization.

19        68.    The listing agreements between Flushmate and IAPMO provide that

20   Flushmate's use of a listing mark constitutes a representation both that the mark is

21   being used in a manner consistent with the rules of the certification body and that

22   Flushmate has ensured through appropriate quality control measures that the

23   Flushmate System meets the standards of the certifying body.

24        **I.    Material Omissions About the Flushmate System**

25        69.    Defendants made numerous material omissions relating to the design,

26   reliability, and performance of the Flushmate System used in toilets sold by

27   Defendant Toilet Manufacturers.

28        70.    Among these omissions was the failure to inform Plaintiffs and Class

1    Members about the history of hundreds of failures in the form of leaks and

2    explosions of the Flushmate Systems.  Flushmate and Defendant Toilet

3    Manufacturers have known since at least 2000 that the pressure vessels leak and

4    explode, resulting in property damage and serious bodily injury.  The Flushmate

5    System fails suddenly and without warning.  Consumers only become aware of the

6    problem if they actually experience the failure first-hand, at which point they have

7    already suffered property damage and/or physical injury.

8         71.    Flushmate became aware of the Flushmate System defect as early as

9    July 24, 2000, if not sooner, but nonetheless continued to sell the Flushmate System

10   pursuant to its false representations and without disclosing the defect.  Since 2000,

11   Flushmate has engaged in a practice of deceptive material omissions in connection

12   with the marketing, advertising, and sale of the Flushmate System.  Had Flushmate

13   disclosed the known history of leaks and explosions and the risks and consequences

14   of such leaks and explosions, including the risk of serious laceration injuries due to

15   impact and risk of flooding to the property, Plaintiff and Class Members would not

16   have purchased any toilet containing the Flushmate System.

17        72.    On or about July 24, 2000, Flushmate issued a Product Advisory

18   notice entitled, "FLUSHMATE® II VESSEL WELD LEAK OR SEPARATION."

19   Flushmate explained that "a very small number" of Flushmate II units developed

20   leaks, or separation of the joints in the vessels that are accompanied by the rapid

21   release of the pressurized water contained in the vessel.

22        73.    On or about June 31, 2003, the Product Advisory notice was revised

23   and entitled, "FLUSHMATE® II and III VESSEL WELD LEAK OR

24   SEPARATION." Flushmate concealed the seriousness of the problems with the

25   Flushmate System from the public and its customers and only included models

26   manufactured between January 1998 and April 1998, May 4, 1998, and May 13,

27   1998.  The notice disclosed nothing about the Flushmate System's propensity to

28   cause the toilet tank to explode, referring to the defect as simply a "rapid release of

1   pressurized water."

2      74.    Flushmate continued to downplay the extent and seriousness of the

3   defects with the Flushmate System until a recall notice was issued by the U.S.

4   Consumer Product Safety Commission ("CPSC") on June 21, 2012, affecting

5   Flushmate Systems manufactured between October 14, 1997 and February 29,

6   2008.  The basis for the product advisories and the recall were the same: the sudden

7   and rapid release of stored pressure and water leaks.  However, Flushmate

8   concealed the fact that the tanks "burst" or exploded, with the related safety risks,

9   and concealed that the exploding tanks had in fact caused serious personal injuries

10  for a twelve year period between at least 2000 to 2012.

11     75.    According to the CPSC, Flushmate has received 304 reports of the

12  product bursting, resulting in serious property damage and 14 impact or laceration

13  injuries.  Flushmate has since revised their prior Product Advisory notices to read,

14  "See Flushmate III Recall 2012."

15     76.    As a result of over 304 reported failures of the Flushmate System, and

16  14 reported injuries, Flushmate was repeatedly placed on notice of the likelihood

17  that the toilets in which Flushmate Systems were installed may explode, and the

18  serious attendant risks, but yet it did nothing to inform Plaintiffs or Class Members

19  or correct the problem prior to the recall.

20     77.    Flushmate was obligated to disclose these facts to Plaintiff and Class

21  Members because the defect in the Flushmate System posed an unreasonable safety

22  risk and because such disclosure was necessary to qualify affirmative

23  representations made concerning its Flushmate System to make such

24  representations non-misleading.  Disclosure of the facts Flushmate failed to

25  disclose was also necessary because Flushmate was uniquely in possession of the

26  facts it did not disclose, knew that such facts were not available to Plaintiffs and

27  Class Members, and knew that such facts would be highly material to any

28  prospective purchaser of its Flushmate System.

78.     Flushmate was in exclusive possession of this material information related to the defect, the number of incidents of toilet tanks exploding during the Class Period, and the associated risk to its customers. Toilets are, of course, used daily by purchasers, their spouses, small children, other family members and guests and customers of places of business.  That toilets will not explode and that they are safe is universally assumed.  Had Plaintiff and Class Members been made aware of the unreasonable safety risks associated with the Flushmate System, they would not have purchased any toilet containing a Flushmate System.

79.     Flushmate admits for the first time with a "Safety Recall Notice" imposed by the CPSC that it has received over 304 reports of the Flushmate System bursting and that the Flushmate System cannot be used safely, a condition that has existed for over a decade.

80.     The Flushmate Recall states: "Consumers should immediately turn off the water supply to the recalled Flushmate III unit and stop using the system. Consumers should contact the firm to determine if their Flushmate III serial number is included in the recall and to request a free repair kit." (Emphasis added.)

81.     As of the date of manufacture and sale, the Flushmate System was neither merchantable nor fit for its intended use.

82.     In connection with the Flushmate Recall, not only did Flushmate caution against the use of toilets equipped with the Flushmate System, it also developed a "repair kit" that it has made available to Plaintiffs and Class Members for "free."  Significantly, however, the installation of the "repair kit" requires the skills of a plumber and Flushmate refuses to pay for the installation of the "repair kit."  Flushmate has improperly placed the unreasonable burden on consumers to assume the responsibility of the installation of the repair kits by refusing to reimburse consumers for the labor costs associated with hiring a plumber.

**J.     Inadequate Repair and Remedy**

83.     Moreover, Flushmate continues to omit material facts to Plaintiffs and

Class Members by implying that its "repair kit," as described below, resolves the admitted problem with the Flushmate System.  The "repair kit" offered by Flushmate does nothing to "repair" or correct the design and/or manufacturing defect which causes the Flushmate System's vessel welds to separate and leak, and was never intended to do so.  It is only intended to contain and limit the severity of toilet explosions.  Consequently, the "repair kit" does not prevent the weld separation, meaning that when a weld separation occurs, water from the water supply line discharges without control and floods the home or structure in which the Flushmate System-equipped toilet sits unless the valve to the water supply line is turned off after each flush of the toilet.

84.     The "repair kit" is comprised of two parts.  The first component of the repair kit is a U-shaped metal strap described as the "U-Band."  Flushmate instructs the owner to install the U-Band around the Flushmate System pressure vessel which is housed inside the toilet tank.  The purported purpose of the U-band is to restrain the movement of the two halves of the plastic pressure vessel upon failure, to reduce the likelihood of a catastrophic explosion of the porcelain toilet water storage tank – thereby containing the explosion and reducing the risk of collateral damage.  Thus, the U-Band is inadequately designed and fails to correct, repair, or prevent the defect.

85.     The second component of the repair kit is an "external regulator."  The purported purpose of the external regulator is to reduce the water pressure from the water supply line to the Flushmate System's pressure vessel, and thereby limiting the force of a toilet explosion.  Thus, Flushmate's "repair kit" is an inadequate repair that does nothing to "repair" or correct the design and/or manufacturing defect in the Flushmate System, and ironically, directly compromises the flushing function of the Flushmate System by reducing the pressure through the external regulator.   Moreover, as noted above, the Flushmate System will still leak water even after the installation of the "repair kit," and does nothing to prevent the

- 17 -

1   Flushmate System from flooding the home or structure in which the Flushmate

2   System-equipped toilet sits.

3        86.    Furthermore, Flushmate's so called "repair kit" cannot be installed in

4   many toilets due to the restricted available space, shape of the toilet, and length of

5   the existing water line.  It also improperly alters the appearance and operation of the

6   toilet in an effort to compensate for the defect.  It is unreasonable to require

7   Plaintiffs and Class Members to undertake the responsibility and risks associated

8   with the installation of an inadequate "repair kit." Again, the installation of the

9   "repair kit" requires plumbing tools and skills that many owners do not possess and

10  should be performed by a qualified plumber, paid for by Defendant Toilet

11  Manufacturers or Flushmate.  There is also the additional inconvenience of having

12  an inoperable toilet until the proper repair or replacement is completed.

13       87.    The notice issued for the Flushmate Recall, in cooperation with the

14  CPSC, is insufficient and inadequate.  Owners of the Flushmate System have not

15  received notice of the recall and the risk of personal injury and property damage

16  remains unresolved.  A much broader and more robust recall notice program is

17  required to reach owners of the Flushmate System.  Furthermore, the Flushmate

18  Recall is limited to only those Flushmate Systems manufactured between October

19  1997 and February 2008, and is therefore misleading to consumers in that it does

20  not specifically warn that Flushmate Systems manufactured during this time frame

21  can be sold up to several years later.

22       88.    The poorly designed "repair kit" and Flushmate's refusal to pay the

23  labor costs associated with the repair and/or replacement of the Flushmate System,

24  combined with an inadequate recall notice program, undermines the purpose and

25  impact of the Flushmate Recall.  The terms of this recall do not provide an adequate

26  remedy to owners and is a sham.

27       89.    Additionally, Flushmate expressly warrants that they will replace any

28  part of the Flushmate System that proves to be defective in material or

1   workmanship.  The Flushmate System is admittedly defective as consumers are

2   instructed to immediately turn off the water supply to the toilet and stop using the

3   Flushmate System.  However, Flushmate is not replacing the defective Flushmate

4   System and instead is compelling Plaintiffs and Class Members to instead bear the

5   labor costs associated with installing a "repair kit" for a defective product that does

6   nothing to fix the defects.  Further, when Flushmate issued their product advisories,

7   Flushmate recommended "the replacement of the unit to assure proper function of

8   the unit and avoid damage to the toilet fixture, any collateral damage, or the

9   possibility of personal injury."

10         90.    With the Flushmate Recall, Flushmate refuses to replace the tank

11   which is exactly what they agreed to do pursuant to the previously issued product

12   advisories for the *same* risk of explosion, injury, and property damage.

13         **K.    Toilet Manufacturer Misrepresentations Concerning Compliance**

14         91.    Throughout the relevant time period, Defendant Toilet Manufacturers

15   made numerous representations in promotional literature, on their websites and by

16   markings on their toilets relating to the conformance of their toilets with ASME

17   A112.19.2 (Standard for Vitreous China Plumbing Fixtures).

18         92.    ASME A112.19.2 establishes requirements and test methods

19   pertaining to materials, significant dimensions, and functional performance for

20   vitreous china plumbing fixtures.

21         93.    Section 2.7.1 Alternate Material Components provides as follows:

22             When alternate materials are used as components within a water closet, the

23             assembly shall conform to applicable material standards for the plumbing

24             application.  They shall satisfy this Standard regarding quality, strength,

25             effectiveness, durability, and safety.  They shall also be repairable or

26             replaceable within the vitreous china fixture."  (Emphasis added.)

27         94.    By at least June 31, 2003, when Flushmate issued a revised Product

28   Advisory notice, entitled "FLUSHMATE® II and III VESSEL WELD LEAK OR

1   SEPARATION," Defendant Toilet Manufacturers knew or should have known that
2   the Flushmate Systems contained within their toilets were defective and incapable
3   of repair.  Even now, after the June 21, 2012 recall notice was issued in connection
4   with the Flushmate Recall, Defendant Toilet Manufacturers refuse to assist
5   consumers with the defective Flushmate System and instead refer them to
6   Flushmate to obtain the "repair kit."

7           95.    Section 4.1 Requirements for Flushing Devices of ASME A112.19.2
8   requires the Flushmate System to deliver water at a sufficient rate and quantity to
9   permit the toilet to meet the performance requirements of the Standard.

10          96.    After the "repair kit" is installed, the original pressure of the toilet's
11  flush is not maintained because the external regulator compromises the integrity of
12  the Flushmate System by reducing the amount of water pressure that reaches the
13  tank.

14          **L.     Flushmate Misrepresentations Concerning ASSE Compliance**

15          97.    Throughout the relevant time period, Flushmate made numerous
16  representations in promotional literature, on its website and by marking the
17  standards on the pressurized vessels relating to the conformance of the Flushmate
18  System with American Society of Sanitary Engineering ("ASSE") Standard 1037
19  Performance Requirements for Pressurized Flushing Devices (Flushometers) for
20  Plumbing Fixtures.

21          98.    The ASSE 1037-90 standard establishes physical requirements, basic
22  performance requirements, and test procedures for pressurized flushing devices for
23  the safe, sanitary operation of plumbing fixtures.

24          99.    Section 1.3.1 of ASSE 1037-90 provides, "Materials used shall be free
25  from defects, which would adversely affect the performance of maintenance of
26  individual components or of the overall assembly."

27          100.   The materials and processes used to manufacture the Flushmate
28  System are inferior and the pressurized vessels leak and cause the toilet tank to

explode, violating the ASSE 1037-90 Standard.

### M.   Misrepresentations Concerning Compliance with UPC

101.   The use by Defendants of the UPC Shield constitutes a representation that Defendants will ensure both compliance with the UPC requirements and that they will conduct sufficient examinations and tests to ensure that the product meets the requirements of the IAPMO listing agreement and are properly certified as meeting the requirements of ASSE 1037-90.

102.   As stated above, Defendants' representations that the toilets containing the Flushmate System qualified for the UPC Shield and complied with the relevant provisions of the UPC and ASSE 1037-90 were false.

103.   Defendants knew, or should have known, that they made numerous material omissions, misleading partial disclosures and misrepresentations relating to the design, reliability, and performance of the Flushmate System sold by Flushmate to Defendant Toilet Manufacturers for use in their toilet systems. Had Flushmate and Defendant Toilet Manufacturers disclosed the known history of exploding Flushmate Systems, neither Plaintiffs nor Class Members would have purchased any toilet containing a Flushmate System.

### N.   Plaintiff United Desert Charities' Experience

104.   Plaintiff United Desert Charities did not become aware of the falsity of the representations and breaches of warranties made by Defendants until approximately July 2012, when it was made aware of the Flushmate Recall.  The seven toilets installed in the United Desert Charities facility are used by a large volume of members of the public.

105.   Plaintiff UDC will have to repair and/or replace the American Standard toilets containing the Flushmate System.

106.   At the time UDC purchased the American Standard toilets with the Flushmate System, Flushmate had already received many reports of the Flushmate vessel leaking and exploding.

107.   The facts regarding the history of explosions and failures of the Flushmate System were material to any decision by UDC to purchase the American Standard toilets.  These material facts concerning the safety risks associated with the Flushmate System should have been disclosed.

108.   Had Flushmate and the American Standard disclosed the known history of exploding Flushmate Systems, UDC would not have purchased any toilet containing a Flushmate System.

**O.   Plaintiff Maralee Pelka's Experience**

109.   Plaintiff Maralee Pelka did not become aware of the falsity of the representations and breaches of warranties made by Defendants until approximately June 2012, when one of two American Standard toilets at her home containing the Flushmate System failed and began to leak, causing damage to her property.

110.   Ms. Pelka was informed by her son, who consulted with a plumber, that there was a leak in the Flushmate System and recommended that the remaining toilets in her home containing the Flushmate System be replaced, which was done.

111.   At the time Ms. Pelka purchased her American Standard toilets with the Flushmate System, Flushmate had already received many reports of the Flushmate vessel leaking and exploding.

112.   The facts regarding the history of explosions and failures of the Flushmate System were material to any decision by Ms. Pelka to purchase the American Standard toilets.  These material facts concerning the safety risks associated with the Flushmate System should have been disclosed.

113.   Had Flushmate and American Standard disclosed the known history of exploding Flushmate Systems, Ms. Pelka would not have purchased any toilet containing a Flushmate System.

**P.   Plaintiff Fred Ede, III's Experience**

114.   Plaintiff Fred Ede, III is a licensed plumbing contractor and primary owner of M&L Plumbing, Inc.  Plaintiff owns six Kohler toilets containing the

1    defective Flushmate System located at two properties in California.

2         115.   During or about the winter of 2011, one of the Kohler toilets

3    containing the defective Flushmate System exploded causing property damage as a

4    result of flooding.  Mr. Ede paid for and installed a new toilet to replace the

5    irreparably damaged Kohler toilet.  Mr. Ede contacted the Kohler sales

6    representative and informed him of the explosion, but was told by the Kohler

7    representative that he was unaware of what might have caused the toilet to explode,

8    and that he had never heard of such a problem.

9         116.   It was not until Mr. Ede was notified by an acquaintance in July or

10   August of 2012, that he became aware of the Flushmate Recall and of explosion

11   risks that Flushmate was then disclosing for the first time.

12        117.   Plaintiff contacted Kohler about the Flushmate Recall, and was

13   informed by Kohler that he should contact Flushmate.

14        118.   Mr. Ede then contacted Flushmate to learn more about its recall.  He

15   was directed to immediately turn off the water supply to his toilet containing the

16   Flushmate System and that Flushmate would provide "repair kits" for the toilets.

17        119.   When Mr. Ede inquired about who was going to pay for the labor to

18   install the "repair kit," he was told that Flushmate does not pay the costs associated

19   with the installation of their repair kits and told that he would have to assume that

20   responsibility.

21        120.   Through M&L Plumbing, Mr. Ede has installed a large number of

22   toilets with the Flushmate System.  While installing the "repair kit," he learned that

23   the repair kit is difficult and problematic to install, and likely beyond the skills of

24   most homeowners.  He also learned that the "repair kit" could not be installed on

25   his toilets without purchasing additional products, such as new water supply lines,

26   that were not included in the "free" repair kit.

27        121.   Mr. Ede was billed a total of $1,042.65 by M&L Plumbing for

28   additional supplies and labor costs associated with the installation of the repair kits.

122.   At the time Mr. Ede purchased his Kohler toilets with the Flushmate System, Flushmate had already received many reports of the Flushmate vessel leaking and exploding.

123.   The facts regarding the history of explosions and failures of the Flushmate System were material to any decision by Mr. Ede to purchase the Kohler toilets.  These material facts concerning the safety risks associated with the Flushmate System should have been disclosed.

124.   Had Flushmate and Kohler disclosed the known history of exploding Flushmate Systems, Mr. Ede would not have purchased any toilet containing a Flushmate System on behalf of himself, his family, or his customers.

**Q.** **Plaintiff Emily Williams' Experience**

125.   Plaintiff Emily Williams, a California resident, owns a Gerber toilet that contains the recalled Flushmate System.  The toilet was installed by Rosenberg Plumbing on or about September 4, 2001 at a cost of $400.00.

126.   On or about July 26, 2012, Ms. Williams contacted Flushmate about the Flushmate Recall.   She inquired about obtaining the Flushmate repair kit.  The "repair kit" comes with a metal U-Band, external regulator, and installation instructions.  Ms. Williams could not install the "repair kit."

127.   At the time Ms. Williams purchased her Gerber toilet with the Flushmate System, Flushmate had already received many reports of the Flushmate vessel leaking and exploding, none of which were disclosed to Ms. Williams or her plumber.

128.   The facts regarding the history of explosions and failures of the Flushmate System were material to any decision by Ms. Williams to purchase the Gerber toilet.  These material facts concerning the safety risks associated with the Flushmate System should have been disclosed.

129.   Had Flushmate and Gerber disclosed the known history of exploding Flushmate Systems, Ms. Williams would not have purchased any toilet containing

1  the Flushmate System.

2     **R.**  <u>**Plaintiff Bruce Pritchard's Experience**</u>

3    130. Plaintiff Bruce Pritchard, a California resident, owns a Mansfield toilet

4  equipped with the Flushmate System. Mr. Pritchard had his Mansfield toilet

5  installed in approximately 2008.

6    131. Following the Flushmate Recall, Mr. Pritchard contacted Flushmate to

7  obtain a repair kit.  Mr. Pritchard tried, but was unable to install the repair kit on his

8  own. Mr. Pritchard will have to incur labor costs associated with having a plumber

9  install the repair kit and/or the purchase of a new toilet.

10    132. Mr. Pritchard was deciding between two different toilets for

11  installation at his residence. At the time he installed the Mansfield toilet equipped

12  with the Flushmate System, Flushmate had already received numerous reports of

13  the Flushmate vessel leaking and exploding.

14    133. The facts regarding the history of explosions and failures of the

15  Flushmate System were material to any decision by Mr. Pritchard to install the

16  Mansfield toilet.  These material facts concerning the safety risks associated with

17  the Flushmate System should have been disclosed.

18    134. Had Flushmate and Mansfield disclosed the defects and known history

19  of exploding Flushmate Systems, Mr. Pritchard would have selected the toilet

20  which did not come with the safety risks associated with the Flushmate System.

21     **S.**  <u>**Plaintiff Jean Steiner's Experience**</u>

22    135. Plaintiff Jean Steiner, an Arizona resident, owns a Kohler toilet

23  equipped with the Flushmate System.  Ms. Steiner purchased her Kohler toilet in or

24  about August 2009 from Home Depot.

25    136. Ms. Steiner became aware of the Flushmate Recall when she received

26  a Safety Recall Notice in the mail in or about September 2012.  Ms. Steiner went

27  online and obtained information regarding the "repair kit" offered by Flushmate.

28  Ms. Steiner immediately realized that the "repair kit" was insufficient to remedy the

1    defects associated with the Flushmate System.

2        137.   Ms. Steiner contacted Flushmate and informed it that she would not

3    accept the repair kit and wanted a replacement pressure vessel pursuant to the terms

4    of her Flushmate warranty.  The Flushmate representative informed her that they

5    would not replace the pressure vessel and she would have to speak with a manager

6    about her request.

7        138.   After repeated requests, Flushmate finally agreed to send someone to

8    Ms. Steiner's residence to install the "repair kit."  However, Flushmate continues to

9    deny Ms. Steiner's request to have the Flushmate System replaced.

10       139.   Ms. Steiner believes the "repair kit" does not remedy the defects

11   associated with the Flushmate System and is still prone to seam weld separation

12   and leaking.

13       140.   At the time Ms. Steiner purchased her Kohler toilet with the Flushmate

14   System, Flushmate had already received many reports of the Flushmate vessel

15   leaking and exploding.

16       141.   The facts regarding the history of explosions and failures of the

17   Flushmate System were material to any decision by Ms. Steiner to purchase the

18   Kohler toilet.  These material facts concerning the safety risks associated with the

19   Flushmate System should have been disclosed.

20       142.   Had Flushmate and Kohler disclosed the known history of exploding

21   Flushmate Systems, Ms. Steiner would not have purchased any toilet containing the

22   Flushmate System.

23   **V.    STATUTE OF LIMITATIONS**

24       143.   **Discovery Rule.**  Prior to failing and leaking, the defective nature of

25   the Flushmate System is latent and not perceptible to Plaintiffs and Class Members.

26   Plaintiffs did not become aware that they had suffered loss of money, property, and

27   damages caused by the defective Flushmate System until they were made aware of

28   the Flushmate Recall in the months following the issuance of the June 21, 2012

1   recall notice.

2       144.   **Fraudulent Concealment Tolling.**  Any applicable statutes of

3   limitation have been tolled by Defendants knowing and active concealment of the

4   facts as alleged herein.  Plaintiffs and Class Members without any fault or lack of

5   diligence on their part have been kept ignorant by Defendants of vital information

6   essential to the pursuit of these claims.  Plaintiffs and members of the proposed

7   class could not reasonably have discovered the problems associated with the

8   Flushmate System on their own.  Flushmate's initial Product Advisory stated that

9   only a small number of Flushmate Systems manufactured in 1997 and 1998 had

10  "developed a leak at, or separation of, the joint between the upper and lower vessel

11  halves" resulting in a "rapid release of pressurized water." The current product

12  recall discloses 304 explosions and 14 personal injuries resulting from Flushmate

13  Systems manufactured between October 14, 1997 and February 29, 2008.  None of

14  the explosions were disclosed by Flushmate or the toilet manufacturers named

15  herein to their customers.  The Product Advisory issued by Flushmate on July 24,

16  2000 said nothing about toilet tanks exploding even though those facts were known

17  to Flushmate and presumably the toilet manufacturers.  Had the true facts been

18  disclosed by Defendants, Plaintiffs and the Class would not have purchased a toilet

19  with a Flushmate System.

20      145.   **Estoppel.**  Defendants are estopped from relying on any statutes of

21  limitation in defense of this action.  For the reasons described in paragraphs 162-

22  167 below, Defendants were under a continuous duty to disclose to Plaintiffs and

23  the proposed class the true character, quality and nature of the Flushmate System,

24  especially because the problems associated with the Flushmate System pose

25  unreasonable safety risks.  Defendants knowingly and affirmatively misrepresented

26  and actively concealed the true character, quality, and nature of the Flushmate

27  System, and the risks of explosions and leaks.  Plaintiffs reasonably relied upon

28  Defendants' knowing and affirmative representations and/or active concealment.

1    Had the true facts been disclosed, Plaintiffs and the Class would not have purchased

2    any toilet with the Flushmate System.  Honest disclosures by Defendants of the true

3    facts would have resulted in a substantial reduction in sales.  This was known to

4    Defendants which is precisely the reason the information was concealed from their

5    customers.

6        146.   Given the choice between a toilet with the Flushmate System, and its

7    known safety risks and propensity to explode, and a gravity toilet with no risk of

8    exploding, no class member would have purchased a toilet with the Flushmate

9    System.

10   **VI.   DAMAGES ALLEGATIONS AND MEASURES OF RESTITUTION**

11       147.   As a result of Defendants' actions as heretofore alleged, Plaintiffs and

12   the Class have suffered actual loss including, without limitation:

13       148.   The difference in market value between toilets with the risk of

14   explosion and the resulting unreasonable safety and property damage risk, and

15   toilets which posed no such risks; Plaintiffs allege that this difference is the full

16   price of the toilet;

17       149.   The cost of replacing the toilets owned by Plaintiffs and Class

18   members which contain the Flushmate System; these amounts are necessary to

19   return Plaintiffs and the Class to the position they would have enjoyed had they not

20   purchased the toilets containing the defective Flushmate System in reliance on the

21   representations made by Defendants; and

22       150.   Plaintiffs have been damaged by, among other things, the cost of

23   hiring a licensed plumber or other third party to install the "repair kit" and/or cost to

24   remove and replace the Flushmate System, as well as the reasonable value of

25   installing the "repair kit."

26   **VII.  CLASS ACTION ALLEGATIONS**

27       151.   Plaintiffs bring this action as a class action pursuant to Federal Rule of

28   Civil Procedure 23, on behalf of themselves and all others similarly situated

1  (the "Class").

2       152.   The Class which Plaintiff seek to represent in this action is defined as

3  follows:

4       **Nationwide Flushmate Class**: All persons and entities who own toilets

5       containing a Series 503 Flushmate® III Pressure-Assist Flushing System

6       manufactured from  October 14, 1997 and February 29, 2008.

7       **Nationwide Fraud Sub-Class**: All persons and entities who own toilets

8       containing the Series 503 Flushmate® III Pressure-Assist Flushing System

9       manufactured from October 14, 1997 and February 29, 2008 that were

10      purchased after the date Flushmate was on notice that said product was

11      defective.

12      **CLRA Sub-Class**: All consumers who own toilets containing the Series 503

13      Flushmate® III Pressure-Assist Flushing System manufactured from

14      October 14, 1997 and February 29, 2008 that were purchased after the date

15      Flushmate was on notice that said product was defective.

16      153.   The following persons shall be excluded from the Class:

17  (1) American Standard Brands AS America, Inc., Flushmate, Gerber Plumbing

18  Fixtures, LLC, Kohler Co., Mansfield Plumbing Products, LLC, Sloan Valve

19  Company, and their subsidiaries and affiliates; (2) all persons who make a timely

20  election to be excluded from the proposed Class; and (3) the judge(s) to whom this

21  case is assigned and any immediate family members thereof.

22      154.   Plaintiffs reserve the right to modify or amend the Class definition, as

23  appropriate.

24      155.   Certification of Plaintiffs' claims for class-wide treatment is

25  appropriate because Plaintiffs can prove the elements of their claims on a class wide

26  basis using the same evidence as would be used to prove those elements in

27  individual actions alleging the same claims, and because this case meets the

28  requirements of Federal Rule of Civil Procedure 23.

1    156.   **Numerosity Under Rule 23(a)(1)**.  The members of the Class are so

2    numerous that individual joinder of all the members is impracticable.  The

3    Flushmate Recall involves over 2.3 million toilets sold throughout the United

4    States.  There are hundreds of thousands of Class Members who have been

5    damaged by Defendants' conduct, as alleged herein.

6    157.   **Commonality and Predominance Under Rule 23(a)(2) and (b)(3)**.

7    This action involves common questions of law and fact, which predominate over

8    any questions affecting individual class members, including, but not limited to, the

9    following.

10          a.      Whether Defendants violated California's Unfair Competition

11   Law, Bus. & Prof. Code § 17200, et seq., by, among other things, engaging in

12   unfair, unlawful, or fraudulent practices;

13          b.      Whether Defendants violated California's Unfair Competition

14   Law, Bus. & Prof. Code § 17200, *et seq.* by, among other things, falsely advertising

15   that their Flushmate System was of a certain standard, quality, and grade when in

16   fact, it was not;

17          c.      Whether the Flushmate System is subject to premature failure in

18   advance of its useful life, and not suitable for use as a long-term plumbing product;

19          d.      Whether Defendants knew or should have known that toilets

20   containing the Flushmate System were defective;

21          e.      Whether Defendant Flushmate had a duty to Plaintiffs and the

22   Class to disclose to purchasers of the Flushmate System that the Flushmate System

23   had a propensity to explode and shatter the toilet tank;

24          f.      Whether the Flushmate System involved an unreasonable safety

25   risk to owners/users.

26          g.      Whether Defendants had knowledge at the time of sale, that the

27   Flushmate System posed an unreasonable safety risk;

28          h.      Whether Defendants' had a duty to disclose to Plaintiffs and

- 30 -

1    members of the Class that the Flushmate System posed an unreasonable safety risk;

2              i.     Whether Defendants had a duty to disclose to purchasers at the

3    time of sale that toilets containing the Flushmate System had exploded and caused

4    property damage;

5              j.     Whether Defendant Flushmate's false representations and

6    concealment of the defective nature of the Flushmate System was knowing,

7    intentional, reckless, and/or malicious.

8              k.     Whether Defendant Flushmate falsely represented that their

9    Flushmate System was of a certain standard, quality, and grade, when in fact, they

10   were not;

11             l.     Whether Defendant Toilet Manufacturers falsely represented

12   that their toilets containing the Flushmate System were of a certain standard,

13   quality, and grade, when in fact, they were not;

14             m.     Whether Defendant Flushmate concealed material information

15   regarding the true characteristics and defective nature of their products;

16             n.     Whether Defendants breached their express warranties to

17   Plaintiffs and the Class.

18             o.     Whether Defendants breached their implied warranties to

19   Plaintiffs and the Class.

20             p.     Whether Defendant Flushmate violated California's Consumer

21   Legal Remedies Act (California Civil Code §§ 1750, *et seq*.), when they concealed

22   or failed to disclose either through their advertising, warranties and other express

23   representations, the defective nature of Flushmate System, and represented, through

24   their advertising, warranties and other express representations that the Flushmate

25   System had characteristics that they did not actually have;

26             q.     Whether Defendants Gerber and Kohler violated California's

27   Consumer Legal Remedies Act (California Civil Code §§ 1750, *et seq*.), when they

28   concealed or failed to disclose either through their advertising, warranties and other

1   express representations, the defective nature of their toilets equipped with the

2   Flushmate System, and represented, through their advertising, warranties and other

3   express representations that their toilets equipped with the Flushmate System had

4   characteristics that they did not actually have;

5          r.      Whether Defendants have been unjustly enriched as a result of

6   the conduct complained of herein;

7          s.      Whether Plaintiffs and the Class are entitled to equitable relief,

8   including but not limited restitution.

9          t.      Whether Plaintiffs and the Class are entitled to actual, statutory,

10   punitive, exemplary, and/or other forms of damages, and/or other monetary relief

11   and, if so, in what amount;

12      158.   **Typicality Under Rule 23(a)(3)**. The named Plaintiffs' claims are

13   typical of the claims of the Class because, among other things, Plaintiffs, like all

14   class members, own toilets containing the Flushmate System, or purchased

15   residences or commercial property in which the defective toilets were installed and

16   marketed and sold by Defendants, and were damaged as a result.  The universally

17   defective nature of the Flushmate System renders each class member's claims, legal

18   theory, and injury common and typical.

19      159.   **Adequacy of Representation Under Rule 23(a)(4)**. Plaintiffs are

20   adequate representatives of the Class because their interests do not conflict with the

21   interests of the proposed Class.  Plaintiffs have retained counsel competent and

22   experienced in complex class actions involving building products and product

23   liability, and intends to prosecute this action vigorously.  The interests of the Class

24   will be fairly and adequately protected by Plaintiffs and their counsel.

25      160.   **Superiority Under Rule 23(b)(3)**.  A class action is superior to all

26   other available means for the fair and efficient adjudication of this controversy in

27   that:

28

1          a.      The prosecution of separate actions by individual members of

2    the Class would create a foreseeable risk of inconsistent or varying adjudications

3    which would establish incompatible results and standards for Defendants;

4          b.      Adjudications with respect to individual members of the Class

5    would, as a practical matter, be dispositive of the interests of the other members not

6    parties to the individual adjudications or would substantially impair or impede their

7    ability to protect their own separate interests;

8          c.      Class action treatment avoids the waste and duplication inherent

9    in potentially thousands of individual actions, and conserves the resources of the

10   courts; and

11        161.   The claims of the individual class members are relatively small

12   compared to the burden and expense that would be required to individually litigate

13   their claims against Defendants, so it would be impracticable for the members of

14   the Class to individually seek redress for Defendants' wrongful conduct.  Even if

15   the members of the Class could afford individual litigation, the court system could

16   not.  Individualized litigation creates a potential for inconsistent or contradictory

17   judgments, and increases the delay and expense to all parties and the court system.

18   By contrast, the class action device presents far fewer management difficulties, and

19   provides the benefits of single adjudication, economy of scale, and comprehensive

20   supervision by a single court.

21        162.   **Class Notice (Central District Local Rule 23-2.2(g))**.  Plaintiffs

22   cannot be certain of the form and manner of class notice they will propose until the

23   class is finally defined and some discovery concerning the identity of Class

24   members is undertaken.  Based on the experience of their counsel in previous cases,

25   however, Plaintiffs anticipate that notice by mail will be given to all Class members

26   who can be identified specifically and that this notice will be supplemented by

27   notice published in appropriate periodicals, notice published on the Internet and by

28   press releases and similar communications to relevant industry and trade groups.

Among other things, notice will be given to all retail or wholesale outlets to whom the Defendant Toilet Manufacturers sold their toilets for distribution and sale to the consuming public as well as plumbers and contractors throughout the United States. Further, the cost of notice, whether after class certification, settlement, or post-trial should be borne by Defendants.

## VIII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Fraudulent Concealment/Intentional Misrepresentation)

### (Against Flushmate)

163.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

164.   Flushmate knowingly concealed and intentionally failed to disclose to Plaintiffs and Class Members the fact that the Flushmate System sold to was defective and susceptible to leaks and weld separation which could cause the toilet tank to explode posing an unreasonable safety risk.

165.   From at least 2000 or before, Flushmate was aware that the Flushmate System posed an objective, identifiable safety risk to purchasers/users.

166.   Flushmate had a duty to disclose these material facts about the Flushmate System from at least 2000, to the present, due to the health, safety, and property damage risks posed to purchasers and others.

167.   Plaintiffs and Class Members relied upon such omissions and suffered actual damages because they were unaware of the safety risks posed by the defects with the Flushmate System and would not have purchased any toilet containing the Flushmate System had they been aware of these material undisclosed facts.

168.   A safety consideration as fundamental as whether the tank in your toilet might leak or explode is material to Plaintiffs and Class Members, and was concealed by Flushmate to induce Plaintiffs and their agents, representatives, builders, and installers, and Class Members to purchase the Flushmate System

1    and/or toilets containing a Flushmate System.

2         169.   At all relevant times, Flushmate had exclusive knowledge of these

3    material facts not known to Plaintiffs and Class Members, actively concealed these

4    facts from the Plaintiffs and Class Members, and made representations concerning

5    the safety and reliability of the Flushmate Systems which were materially

6    misleading in light of the facts it suppressed.

7         170.   Plaintiffs and Class Members would not have purchased any toilet

8    containing the Flushmate System had Flushmate disclosed the known, identifiable

9    safety risks and risks of leaks and property damage.  Throughout the class period,

10   there were numerous other toilets on the market that did not pose the unreasonable

11   safety risks of toilets that had a known propensity to explode.

12        171.   As a proximate result of Flushmate's material omissions of fact as

13   alleged herein, Plaintiffs and Class Members have been damaged in an amount to

14   be proven at trial.

15                    **SECOND CLAIM FOR RELIEF**

16                **(Violation of Unfair Competition Law)**

17                     **(Against All Defendants)**

18        172.   Plaintiffs incorporate by reference each allegation set forth in the

19   preceding paragraphs.

20        173.   Pursuant to Bus. & Prof. Code § 17200, "unfair competition shall

21   mean and include any unlawful, unfair or fraudulent business act or practice and

22   unfair, deceptive, untrue or misleading advertising."

23        174.   Defendants' actions, as alleged herein, constitute deceptive, unfair,

24   fraudulent, and unlawful practices committed in violation of the Bus. & Prof. Code

25   § 17200, et seq.

26        175.   All of the conduct, failures to disclose, and misrepresentations alleged

27   herein occurred in the course of Defendants' business and were part of a pattern or

28   generalized course of conduct.

176.   Defendants' deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Plaintiffs, or Plaintiffs' agents, representatives, or builders/installers, and Class Members to purchase toilets with the Flushmate System for use and installation in their homes and other structures.

177.   Plaintiffs and Class Members reasonably and justifiably relied on Defendants' deceptive, unfair, fraudulent, and unlawful conduct alleged herein. Members of the public were certain to be deceived because Defendants failed to disclose the Flushmate System's known defects and history of exploding and the related unreasonable risks to safety and property, and the fact that numerous people had been injured as a result of explosions.  A reasonable customer would not expect a toilet to explode under any circumstances and would expect that the toilet would last for decades.  Plaintiffs and Class Members would not have purchased any toilet containing the Flushmate System had this material information been disclosed.

178.   As a direct and proximate cause of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered injury-in-fact, lost money, and lost property, in that they would not have purchased toilets in which the recalled Flushmate Systems are or were installed but for Defendants' material omissions in connection with the marketing, advertising, and sale of the Flushmate System.

179.   Further, Defendant Flushmate has or will require Plaintiffs and Class Members to incur costs to install the "repair kit."  Defendants have instructed Plaintiffs and Class Members to immediately turn off the water supply to the toilet and stop using the Flushmate System.

180.   Flushmate refuses to pay for the cost of the installation of their repair kit.  Plaintiffs and the Class are entitled to repair or replacement at Defendants' sole expense.

181.   Pursuant to Bus. & Prof. Code §§ 17203, 17204, Plaintiffs and Class

1   Members seek to recover from Defendants restitution of earnings, profits,

2   compensation and benefit obtained as a result of the practices that are unlawful

3   under Bus. & Prof. Code § 17200 et seq., and other appropriate relief, according to

4   proof.

5   **THIRD CLAIM FOR RELIEF**

6   **(Breach of Express Warranty)**

7   **(Against Flushmate)**

8       182.   Plaintiffs incorporate by reference each allegation set forth in the

9   preceding paragraphs.

10      183.   In order to promote and induce the purchase of its products, Defendant

11  Flushmate expressly warranted to Initial Purchasers, Plaintiffs and Class Members,

12  by advertisement, literature, and other means, that the Flushmate System vessel

13  came with a "lifetime warranty" in order to promote and induce purchase of the

14  Flushmate System.

15      184.   Flushmate brought itself into privity of contract with the ultimate

16  purchasers and consumers of the Flushmate System, Plaintiffs and Class Members,

17  by extending this express warranty.

18      185.   Flushmate intended the express warranties to be for the benefit of

19  Plaintiffs and Class Members, who are the owners of the properties where the

20  toilets containing the Flushmate System are installed. Flushmate supplied

21  Defendant Toilet Manufacturers with the Flushmate System to be installed in toilets

22  ultimately purchased by Plaintiffs and Class Members, or their agents. The express

23  warranty would be of no economic value unless the ultimate owner of Flushmate

24  System, Plaintiffs and Class Members, received the benefit of such warranties.

25      186.   These express warranties formed part of the basis of the bargain

26  between Flushmate, Defendant Toilet Manufacturers, and Plaintiffs and Class

27  Members.

28      187.   Flushmate expressly warranted that the Flushmate System would be

1    free of defects in materials and workmanship and provided a lifetime warranty on

2    the Flushmate vessel which is the subject of the Safety Recall Notice.

3        188.   Flushmate also expressly promised "to replace any part of this product

4    that proves, upon our inspection…to be defective in material or workmanship."

5        189.   Flushmate breached their express warranty by refusing to provide

6    replacement pressure vessels to Plaintiffs and Class Members.

7        190.   Flushmate has admitted the Flushmate System is defective by

8    instructing consumers to turn off the water supply to the toilet and immediately stop

9    using the Flushmate System as part of their Safety Recall Notice.

10       191.   As a result of Flushmate's breaches of its express warranties, Plaintiffs

11   and Class Members have been damaged in an amount equal to the market value of

12   the pressure vessels and such other amounts to be proven at trial. Any purported

13   limitations on the damages recoverable under the warranty, and other conditions,

14   requirements, and limitations purportedly required under the warranty are

15   unconscionable, non-compliant with statutory requirements, and otherwise

16   unenforceable.

17       192.   Flushmate received timely notice of the breach of warranty alleged

18   herein by reason of its own knowledge of the defective Flushmate System, the

19   assertion by Plaintiffs and Class Members of claims, this Complaint, and notice

20   mailed on August 30, 2012.  Indeed, Flushmate acted preemtively by generating the

21   first notice itself, by which it advised purchasers of the defect, and by which it

22   purported to circumscribe the relief it was willing to provide to purchasers,

23   anticipatorily repudiating and breaching its obligation to replace the defective

24   pressure vessel, and any further obligations beyond such relief.  Instead, Flushmate

25   demands that all toilets with the Flushmate System bet turned off, at least until the

26   mandatory "repair kit" is installed at the expense of Plaintiffs and Class Members.

27       193.   By reason of the foregoing, Plaintiffs, on behalf of themselves and all

28   others similarly situated, demand judgment against Flushmate for damages,

1   including compensatory, incidental and consequential damages (excepting damages

2   for personal injuries) for itself and each member of the Class.

3                      **FOURTH CLAIM FOR RELIEF**

4                      **(Breach of Express Warranty)**

5       **(Against Defendants American Standard, Gerber, Kohler, Mansfield)**

6           194.   Plaintiffs incorporate by reference each allegation set forth in the

7   preceding paragraphs.

8           195.   In order to promote and induce the purchase of their products,

9   Defendant Toilet Manufacturers  expressly warranted to Initial Purchasers,

10  distributors, plumbing contractors, Plaintiffs and Class Members, by advertisement,

11  literature, and other means, that their toilets equipped with the Flushmate System

12  would be "free of defects in materials and workmanship" and that they would repair

13  or replace any defective products.

14          196.   Defendant Toilet Manufacturers breached their express warranties by

15  refusing to replace the toilets and/or the defective Flushmate Systems which cannot

16  be repaired by the installation of the "repair kit."

17          197.   Defendant Toilet Manufacturers intended the express warranties were

18  for the benefit of Plaintiffs and Class Members, the owners of the properties where

19  the toilets containing the Flushmate System are installed.  The express warranties

20  would be of no economic value unless the ultimate owner of the toilets containing

21  the Flushmate System, Plaintiffs and Class Members, received the benefit of such

22  warranties.

23          198.   These express warranties formed part of the basis of the bargain

24  between Defendant Toilet Manufactures  and Plaintiffs and Class Members.

25          199.   As a result of Defendant Toilet Manufacturers breach of their express

26  warranties, Plaintiffs and Class Members have been damaged in an amount to be

27  proven at trial. Any purported limitations on the damages recoverable under the

28  warranty, and other conditions, requirements, and limitations purportedly required

1    under the warranty are unconscionable, non-compliant with statutory requirements,

2    and otherwise unenforceable.

3        200.   American Standard received timely notice of the breach of warranty

4    alleged herein by reason of its own knowledge of the defective Flushmate System,

5    the assertion by Plaintiffs UDC and Pelka and Class Members of claims, this

6    Complaint, and notice mailed on July 19, 2012.

7        201.   Gerber received timely notice of the breach of warranty alleged herein

8    by reason of its own knowledge of the defective Flushmate System, the assertion by

9    Plaintiff Williams and Class Members of claims, this Complaint, and notice mailed

10   on August 30, 2012.

11       202.   Defendant Kohler received timely notice of the breach of warranty

12   alleged herein by reason of its own knowledge of the defective Flushmate System,

13   the assertion by Plaintiffs and Class Members of claims, this Complaint, and notice

14   mailed on August 24, 2012.

15       203.   Defendant Mansfield received timely notice of the breach of warranty

16   alleged herein by reason of its own knowledge of the defective Flushmate System,

17   the assertion by Plaintiffs and Class Members of claims, and this Complaint.

18       204.   By reason of the foregoing, Plaintiffs, on behalf of themselves and all

19   others similarly situated, demands judgment against Defendant Toilet

20   Manufacturers for revocation of acceptance and damages, including compensatory,

21   incidental and consequential damages (excepting damages for personal injuries) for

22   themselves and each member of the Class.

23                        **FIFTH CLAIM FOR RELIEF**

24                       **(Breach of Implied Warranty)**

25       **(Against Flushmate, American Standard, Kohler, Gerber, Mansfield)**

26       205.   Plaintiffs incorporate by reference each allegation set forth in the

27   preceding paragraphs.

28       206.   The sale of the Flushmate System between Flushmate and Defendant

1    Toilet Manufacturers, and the sales by Defendant Toilet Manufacturers, included

2    warranties implied in the law that the Flushmate System, and the toilets containing

3    the Flushmate System, were merchantable and fit for the ordinary purpose for

4    which such products were sold (the "Implied Warranties").

5         207.   Flushmate and Defendant Toilet Manufacturers breached the Implied

6    Warranties in that toilets containing the Flushmate system are (1) not fit for use as a

7    flushing system in toilets installed in homes and other structures, and (2) not of a

8    merchantable quality because the plastic vessel used in the pressure-assisted

9    flushing system is admitted by Flushmate to be defective, dangerous, and unusable,

10   and poses a known, objective, identifiable safety risk to Plaintiffs and Class

11   Members, in that it can leak/burst at or near the vessel weld seam releasing stored

12   pressure, causing the toilet tank lid to blow off and shatter the tank, and in fact is so

13   dangerous that Flushmate itself had advised owners to turn off the water supply to

14   their toilets.  The defective product has resulted in personal injuries and property

15   damage on numerous occasions and poses an ongoing unreasonable safety risk.

16        208.   Flushmate has admitted that the Flushmate System poses an

17   unreasonable safety risk, has recalled the Flushmate System, and has instructed all

18   owners of toilets with the Flushmate System to turn off the water supply to the

19   toilet and not use the toilet until such time as the repair kit is installed.  Flushmate

20   has refused and continues to refuse to pay for the cost of installing the repair kit

21   notwithstanding Flushmate's admission that without the repair kit the toilets are

22   unfit for use of the unreasonable safety risk.  Moreover, the repair kit does not

23   adequately remedy the breach in any event, and Plaintiffs and Class Members are

24   entitled to all available remedies under the Commercial Code including revocation

25   of acceptance, and damages.

26        209.   As a direct and proximate result of Flushmate's and Defendant Toilet

27   Manufacturers' breaches of the Implied Warranties, Plaintiffs and Class Members

28   have been damaged in an amount to be proven at trial.

- 41 -

## SIXTH CLAIM FOR RELIEF

### (Consumer Legal Remedies Act)

### (Against Flushmate, Gerber, and Kohler)

210.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

211.   The Flushmate Systems are "goods" as defined by Civil Code § 1761(a).

212.   Flushmate, Gerber, Kohler and Doe Defendants are "persons" as defined by Civil Code § 1761(c).

213.   Plaintiffs Fred Ede, III, Emily Williams, and Class Members are "consumers" as defined by Civil Code § 1761(d) who purchased toilets containing the Flushmate System for personal, family, and household purposes.

214.   Plaintiffs' and the Class Members' purchase of toilets containing the Flushmate System are "transactions" as defined by Civil Code § 1761(e).

215.   The Consumers Legal Remedies Act ("CLRA"), Civil Code § 1770, et seq., deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer as unlawful:

      a.   Representing that goods…have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5).

      b.   Representing that goods…are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

216.   By failing to disclose and concealing the seam weld defects associated with the Flushmate System and the physical injury associated therewith, Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7) when they represented, through

1    their advertising and other express representations, that toilets containing the

2    Flushmate System had benefits or characteristics that they did not actually have,

3    and when they falsely represented that toilets containing the Flushmate System

4    were of a certain standard or quality, when they were not.

5          217.   Defendants' unfair and deceptive acts or practices occurred repeatedly

6    in Defendants' trade or business, were capable of deceiving a substantial portion of

7    the purchasing public, and imposed a serious safety risk to the public.

8          218.   The risk of injury and property damage associated with the defect in

9    the Flushmate System is the type of unreasonable risk that imposes a duty to

10   disclose under California law.

11         219.   Had Plaintiffs and Class Members known about the seam weld defects

12   and propensity of the pressure vessels to leak and break apart, shattering the tanks,

13   and posing the risk of serious physical injury and property damage at the time they

14   purchased toilets containing the Flushmate System, Plaintiffs and Class Members

15   would not have purchased the toilets.  As a result of their reliance on Defendants'

16   omissions and/or misrepresentation, owners of the toilets containing the Flushmate

17   System have suffered ascertainable loss of money and property.

18         220.   Defendants' deceptive practices were specifically designed to induce

19   Plaintiffs and Class Members to purchase their products, and imposed an

20   unreasonable safety risk to Plaintiffs and Class Members.

21         221.   Defendants were under a duty to Plaintiffs and Class Members to

22   disclose the defective seam welds and unreasonable safety risks associated with the

23   Flushmate System because:

24              a.    Defendants were in a superior position to know the true state of

25                    facts about the safety defects associated with the Flushmate

26                    System;

27              b.    Plaintiffs and the Class Members could not reasonably have

28                    been expected to learn or discover that the Flushmate System

- 43 -

had a dangerous safety defect until manifestation of the failure;

     c.    Defendants received hundreds of reports of toilets equipped with the Flushmate System exploding resulting in physical injury and property damage, posing a public safety risk; and

     d.    Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn about or discover the safety defect.

222.   By failing to disclose the seam weld defects in the Flushmate System and associated safety risks, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

223.   The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase a toilet containing the Flushmate System.  Had Plaintiffs and other Class Members known about the propensity for the toilets to explode, they would not have purchased any toilet containing the Flushmate System.

224.   Plaintiffs and Class Members are reasonable consumers who would not expect their toilets to explode.  That is a reasonable and objective consumer expectation.

225.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and Class Members have been harmed and seek actual damages including consequential damages, punitive damages, attorneys' fees and costs, and such other relief as the court deems proper.

226.   Plaintiff Fred Ede served Defendants with notice of their violations of the CLRA by serving notice by certified mail on their agents for service of process and their corporate offices, on August 24, 2012 pursuant to Civil Code § 1782.  A copy of the notices are attached hereto as **Exhibit A.** Defendants failed to provide appropriate relief for their violation of the CLRA within 30 days of the date of the

1   notification letter.

2       227.   Plaintiff Emily Williams served Defendants with notice of their

3   violations of the CLRA by serving notice by certified mail on their agents for

4   service of process and their corporate offices, on August 30, 2012 pursuant to Civil

5   Code § 1782.  A copy of the notices are attached hereto as **Exhibit B.** Defendants

6   failed to provide appropriate relief for their violation of the CLRA within 30 days

7   of the date of the notification letter.

8       228.   Venue is proper pursuant to Civil Code § 1780(d) because Defendants

9   do business in this county.  Attached hereto as **Exhibit C** is the Declaration of

10   Emily Williams, establishing this Court as the proper venue for this action.

11   Attached hereto as **Exhibit D** is the Declaration of Fred Ede, III, establishing this

12   Court as the proper venue for this action.

13                        **SEVENTH CLAIM FOR RELIEF**

14          **(Breach of Express Warranty - Magnuson-Moss Warranty Act)**

15                          **(Against Flushmate)**

16       229.   Plaintiffs incorporate by reference each allegation set forth in the

17   preceding paragraphs.

18       230.   The Flushmate System is a consumer product as defined in 15 U.S.C. §

19   2301(1).

20       231.   Plaintiffs Maralee Pelka, Fred Ede, Emily Williams, Bruce Pritchard,

21   Jean Steiner, and the Class are consumers as defined in 15 U.S.C.

22   § 2301(3).

23       232.   Defendant Flushmate is a supplier and warrantor as defined in 15

24   U.S.C. § 2301(4) and (5).

25       233.   Defendant Flushmate provided Plaintiffs and Class Members with

26   "written warranties" within the meaning of 15 U.S.C. § 2301(6).

27       234.   Defendant Flushmate has breached the express written warranty by

28   refusing to honor the express warranty to replace, free of charge, any defective

1     pressure vessel.

2         235.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), the warrantor may

3 not assess the consumer for any costs the warrantor or his representatives incur in

4 connection with the required remedy of a warranted product…[I]f any incidental

5 expenses are incurred because the remedy is not made within a reasonable time or

6 because the warrantor imposed an unreasonable duty upon the consumer as a

7 condition of securing remedy, then the consumer shall be entitled to recover

8 reasonable incidental expenses which are so incurred in any action against the

9 warrantor." (Emphasis added.)  Various other conditions, requirements, and

10 limitations purportedly required under the warranty are similarly non-compliant

11 with statutory requirements and unenforceable.

12         236.   Defendants were afforded reasonable opportunities to cure their

13 breaches of written warranties and failed to do so.

14         237.   Despite repeated demands by Plaintiffs and Class Members for

15 Flushmate to pay the labor costs and incidental expenses associated with the

16 repair/replacement of the Flushmate System, and the installation of the Flushmate

17 "repair kit," Flushmate has refused to do so.

18         238.   As a direct and proximate result of Flushmate's breach of its implied

19 warranties and express written warranties, and Flushmate's refusal to pay the labor

20 costs and incidental expenses associated with the repair and/or replacement of the

21 Flushmate System, Flushmate has violated the statutory rights due Plaintiffs and the

22 Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.,

23 damaging Plaintiffs and the Class in an amount to be proven at trial.

24 **EIGHTH CLAIM FOR RELIEF**

25 **(Breach of Implied Warranty - Magnuson-Moss Warranty Act)**

26 **(Against Flushmate and Home Depot)**

27         239.   Plaintiffs incorporate by reference each allegation set forth in the

28 preceding paragraphs.

240.   Plaintiff Steiner and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

241.   Defendants Flushmate and Home Depot are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

242.   The toilets equipped with the Flushmate System are consumer products as defined in 15 U.S.C. § 2301(1).

243.   Defendants Flushmate and Home Depot provided Plaintiff Steiner and Class Members with  implied warranties within the meaning of 15 U.S.C. § 2301(6).

244.   Defendants Flushmate and Home Depot breached their implied warranties by selling Flushmate Systems, and toilets containing Flushmate Systems, that were not merchantable nor fit for their intended purpose.

245.   As a direct and proximate result of Defendants' breach of their implied warranty, refusal to replace the Flushmate vessel and/or toilet, and refusal to pay the labor costs and incidental expenses associated with the repair and/or replacement of the Flushmate System, Defendants have violated the statutory rights due Plaintiff Steiner and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, damaging Plaintiff Steiner and Class Members in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

**(Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)**

**(Against Against Flushmate, American Standard, Gerber, Kohler, Mansfield)**

246.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

247.   Under California's Song-Beverly Consumer Warranty Act, Civ. Code § 1792 et seq., every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable.

248.   The Flushmate System and the toilets in which it was incorporated are consumer goods within the meaning of the statute.

249.   Defendants Flushmate and the Defendant Toilet Manufacturers are "manufacturers" and/or "retail sellers" within the meaning of the statute.

250.   Plaintiffs and Class Members purchased toilets with a Flushmate System in the State of California.

251.   By operation of law, Flushmate and the Defendant Toilet Manufacturers impliedly warranted to Plaintiffs and Class Members who purchased a toilet containing a Flushmate System in the State of California that the Flushmate System and the toilets containing the Flushmate systems were of merchantable quality and fit for the ordinary purposes for which they are used.

252.   Flushmate and the Defendant Toilet Manufacturers refuse to recognize or honor their implied warranties as the defective Flushmate System and the toilets in which they were incorporated were not of merchantable quality and failed to perform  the ordinary purposes for which they were intended.

253.   As a direct and proximate result of Flushmate and Defendant Toilet Manufacturers' breaches of the implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

**(Breach of Express Warranty Under Song-Beverly Consumer Warranty Act)**

**(Against Flushmate, American Standard, Gerber, Kohler, Mansfield)**

254.   The Flushmate Systems and the toilets in which they are incorporated are consumer goods within the meaning of California's Song-Beverly Consumer Warranty Act.

255.   Defendants Flushmate and the Defendant Toilet Manufacturers are "manufacturers" and/or "retail sellers" within the meaning of the statute.

256.   Plaintiffs and Class Members purchased toilets with the Flushmate System within the State of California.

257.   In order to promote and induce the purchase of their products, Flushmate expressly warranted to Plaintiffs and Class Members by advertisement, literature, and other means, that the Flushmate System would be free of defects in materials and workmanship.  Similarly, in order to promote and induce the purchase of its products, Defendant Toilet Manufacturers expressly warranted to Plaintiffs and Class Members, by advertisement, literature, and other means, that their toilets equipped with the Flushmate System would be free of defects in materials and workmanship and that they would repair or replace any defective products.

258.   Flushmate and the Defendant Toilet Manufactures breached their express warranties by refusing to replace the toilets and/or the defective Flushmate Systems which cannot be repaired by the installation of the "repair kit." Any purported limitations on the damages recoverable under the warranty, and other conditions, requirements, and limitations purportedly required under the warranty are unconscionable, non-compliant with statutory requirements, and otherwise unenforceable.

259.   As a result of Flushmate's and Defendant Toilet Manufacturers' breach of their express warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are entitled to relief under the statute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray that the Court certify the Class, as defined hereinabove, enter judgment against Defendants and in favor of Plaintiffs and Class Members, and award the following relief:

1.      An Order certifying this action as a Class Action (and certifying any appropriate subclasses), appointing Plaintiffs as Class Representatives and their counsel of record jointly as Class Counsel;

2.      For restitutionary relief consisting of:

1           a.     An accounting against the Defendants for all sums collected

2     from Plaintiffs and Class Members for the purchase of toilets with a defective

3     Flushmate System;

4           b.     The imposition of a constructive trust for all such sums;

5           c.     For restitution and/or disgorgement of revenues, earnings,

6     profits, compensation, and benefits which were received by Defendants as a result

7     of such unlawful business acts or practices, according to proof;

8         3.     Injunctive relief;

9           a.     A declaration that Defendants are financially responsible for

10    notifying all Class Members;

11        4.     For the cost or reasonable value of the installation of the repair kit;

12        5.     Actual damages, punitive damages, and such other relief as provided

13    by the law;

14        6.     Pre-judgment and post-judgment interest on such monetary relief;

15        7.     For Plaintiffs' attorneys' fees;

16        8.     For costs of suit; and

17        9.     All other relief to which Plaintiffs and Class Members may be entitled

18    at law or in equity and which the Court deems appropriate.

19    Dated:     October 5, 2012                    Respectfully submitted,

20                                                               BIRKA-WHITE LAW OFFICES

21

22                                                               By

23                                                                    DAVID M. BIRKA-WHITE
                                                                     Attorneys for Plaintiffs
24                                                                   *United Desert Charities, Maralee*
                                                                     *Pelka, Fred Ede III, Emily Williams,*
25                                                                   *Bruce Pritchard, and Jean Steiner*

26

27

28

1

## JURY DEMAND

2       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs,

3  individually and on behalf of all others similarly situated, hereby demand a jury

4  trial.

5  Dated:     October 5, 2012           Respectfully submitted,

6                                       BIRKA-WHITE LAW OFFICES

7

8                                       By:

9                                       _____
                                        DAVID M. BIRKA-WHITE
10                                      Attorneys for Plaintiffs
                                        *United Desert Charities, Maralee*
11                                      *Pelka, Fred Ede III, Emily Williams,*
                                        *Bruce Pritchard, and Jean Steiner*

12

13  28126\3293736.4

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# BIRKA-WHITE LAW OFFICES

The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                                          dbw@birka-white.com

August 24, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Flushmate
30075 Research Drive
New Hudson, MI 48165

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

      Re:    **Flushmate® III Pressure-Assist Flushing System**

To Whom It May Concern:

      Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq.*, and specifically § 1782(a)(1)(2), Plaintiff Fred Ede, III, on behalf of himself and all others similarly situated, hereby notifies you that Flushmate, a division of Sloan Valve Company ("Flushmate"), violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

1.    Flushmate represented that their Flushmate System had benefits or characteristics that it did not actually have. Civ. Code § 1770(a)(5); and

2.    Flushmate represented that Flushmate System was of a particular standard or quality when it was of another. Civ. Code § 1770(a)(7).

      Specifically, Flushmate represented in marketing materials that their Flushmate System was "designed with continuous improvements to be the most reliable, consistent, and trouble-free system available," as well as "No Leaks," "No Callbacks," "Easier to maintain," and complied with the provisions of the Uniform Plumbing Code ("UPC") and American Society of Sanitary Engineering ("ASSE") Standard 1037-90. These representations are not true. The materials used to manufacture the pressurized vessels were substandard and adversely affect the performance of

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 24, 2012
Page 2 of 3

the Flushmate System.  The Flushmate System threatens injury and public safety in that it can
burst at or near the vessel weld seam releasing stored pressure.  This pressure can lift the tank lid
and shatter the tank, posing impact or laceration hazards to consumers and property damage.
Flushmate became aware of the Flushmate System defect as early as July 2000, if not sooner, but
nonetheless continued to sell the Flushmate System without disclosing the defect or risk to allow
consumers to make an informed decision whether or not to purchase a toilet containing the
Flushmate System.

        This notice applies to all toilets which incorporate the Flushmate System including, but
not limited to, American Standard, Crane, Eljer, Gerber, Kohler, Mansfield, St. Thomas, and
Western, as well as persons who purchased the Flushmate System vessel only from such retailers
as Home Depot and Lowes. Additionally, the notice program to consumers and owners of toilets
with Flushmate Systems provided pursuant to the voluntary recall of the Flushmate System in
conjunction with the United States Consumer Product Safety Commission ("CPSC") and Health
Canada is grossly inadequate.  A consumer with the product is oftentimes unaware of the dangers
until there is an actual failure, and the notice program inadequately reaches the affected class of
owners who are at risk of personal injury and property damage.

        Fred Ede was made aware of the defect with the Flushmate System after learning about
the Flushmate recall.  Mr. Ede owns six Kohler toilets at his properties in Fresno, California and
Shaver Lake, California.  One of the toilets containing the Flushmate System exploded causing
extensive property damage.  Mr. Ede replaced the Kohler toilet and has five other Kohler toilets
containing the Flushmate System that are part of the recall.  While the pressure vessels were
allegedly manufactured between October 1997 and February 2008, Mr. Ede purchased a Kohler
toilet approximately a year and half ago which contained one of the recalled Flushmate Systems.
Mr. Ede contacted Kohler and asked that the toilets be replaced, and Kohler refused.

        Furthermore, the "repair kit" offered by Flushmate is inadequate in that it does not repair
the design defect and improperly alters the appearance and operation of the Kohler toilet in an
effort to compensate for the defect.  It is also unrealistic and inappropriate to require consumers
to install the "repair kit."  The entire Flushmate System needs to be replaced by a qualified
plumber, paid for by Kohler or Flushmate.  There is also the additional inconvenience of having
an inoperable toilet until the proper repair or replacement is completed.

        Mr. Ede on behalf of himself and all others similarly situated, hereby demands that
Flushmate: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems
utilized in toilets manufactured between January 1, 1997 and the present; and (2) provide notice
to consumers of the product performance issues in this letter and of their right to present a claim.
Demand is made on Flushmate to remedy these defects and reimburse all owners who have
replaced the defective products within thirty (30) days of receipt of this letter.  If we do not hear
from you within this time period, we will assume that you will not take the corrective action
requested.

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 24, 2012
Page 3 of 3

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.   All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all toilets manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.   All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.   All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.   Any complaints from any source concerning defective Flushmate System;

5.   All documents which reflect the sale of the Flushmate System referenced above in the United States, including manufacturing dates and model numbers;

6.   All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Kohler, Flushmate, or their suppliers; and

7.   All listing agreements, testing records, and quality control records related to the Flushmate System and its compliance with ASSE 1037.

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

David M. Birka-White

DBW/mw

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Flushmate
   30075 Research Drive
   New Hudson, MI 48165

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Dennis Chad_   ☐ Agent   ☐ Addresse

B. Received by ( Printed Name )   C. Date of Delive
_Dennis Chad_   8/22/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandis
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   7010 3090 0000 3915 7805

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-15

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Sloan Valve Company
   10500 Seymour Avenue
   Franklin Park, IL 60131

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Jose Barajas_   ☐ Agent   ☐ Addresse

B. Received by ( Printed Name )   C. Date of Delive
Jose Barajas   8/29/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandis
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   7010 3090 0000 3915 7829

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-15

# BIRKA-WHITE LAW OFFICES
The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                                          dbw@birka-white.com

August 24, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Herbert V. Kohler, Jr.
Kohler Co.
444 Highland Drive
Kohler, WI 53044

      Re:    **Flushmate® III Pressure-Assist Flushing System**

Dear Mr. Kohler:

Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq*., and specifically § 1782(a)(1)(2), Plaintiff Fred Ede, III, on behalf of himself and all others similarly situated, hereby notifies you that Kohler violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

1.    Kohler represented that their toilet system with Flushmate had benefits or characteristics that they did not actually have. Civ. Code § 1770(a)(5).

2.    Kohler represented that their toilet system with Flushmate was of a particular standard or quality when they were of another. Civ. Code § 1770(a)(7).

Specifically, Kohler represented in marketing materials that their toilets with the Flushmate System were of good quality, fit for their intended use, and complied with American Society of Mechanical Engineers ("ASME") Standard A112.19.2. These representations and warranties are not true. The materials used to manufacture the pressurized vessels contained within the Kohler toilets were substandard and adversely affect the performance of the entire flushing system. The Flushmate System also threatens injury and public safety in that they can

BIRKA-WHITE LAW OFFICES

Kohler Co.
August 24, 2012
Page 2 of 3

burst at or near the vessel weld seam releasing stored pressure.  This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage.

The toilets manufactured using the Flushmate System have failed or will fail in advance of the useful life.  Kohler knew or should have known that their toilets with the Flushmate System did not conform to these representations.  Flushmate, and in turn, Kohler, were aware of this defect as early as July 2000, but nonetheless continued to sell toilets with the Flushmate System without disclosing the defects.

Fred Ede was made aware of the defect with the Flushmate System after learning about the Flushmate recall.  Mr. Ede owns six Kohler toilets at his properties in Fresno, California and Shaver Lake, California.  One of the toilets containing the Flushmate System exploded causing extensive property damage.  Mr. Ede replaced the Kohler toilet and has five other Kohler toilets containing the Flushmate System that are part of the recall.  While the pressure vessels were allegedly manufactured between October 1997 and February 2008, Mr. Ede purchased a Kohler toilet approximately a year and half ago which contained one of the recalled Flushmate Systems.  Mr. Ede contacted Kohler and asked that the toilets be replaced, and Kohler refused.

Additionally, the notice program provided pursuant to the voluntary recall of the Flushmate System in conjunction with the United States Consumer Product Safety Commission ("CPSC") and Health Canada is grossly inadequate.  A consumer with the product is unaware of the dangers until there is an actual failure, and the notice program inadequately reaches the affected class of owners who are at risk of personal injury and property damage.  While the pressure vessels were allegedly manufactured between October 1997 and February 2008, Mr. Ede purchased a Kohler toilet in 2010 which contained one of the recalled Flushmate Systems.

Mr. Ede on behalf of himself and all others similarly situated, hereby demands that Kohler: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems utilized in Kohler toilets manufactured between January 1, 1997 and the present; and (2) provide notice to consumers of the product performance issues in this letter and of their right to present a claim.  Demand is made on Kohler to remedy these defects and reimburse all owners who have replaced the defective products within thirty (30) days of receipt of this letter.  If we do not hear from you within this time period, we will assume that you will not take the corrective action requested.

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.    All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all Kohler toilets

BIRKA-WHITE LAW OFFICES

Kohler Co.
August 24, 2012
Page 3 of 3

        manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.     All advertisements disseminated in California discussing or concerning the Kohler toilets referenced above;

3.     All materials disseminated to consumers, retailers, and/or distributors that discuss or concern the Kohler toilets referenced above;

4.     Any product advisory notices, technical bulletins, or other information received by Kohler regarding any vessel weld leak or separation issues with the Flushmate System described above;

5.     Any claims or complaints from any source concerning defective Kohler toilets with the Flushmate System;

6.     All documents showing the number of Kohler toilets referenced above that were sold throughout the United States, including manufacturing dates and model numbers;

7.     All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Kohler, Flushmate, or their suppliers; and

8.     All testing records related to the compliance the Kohler toilets containing the Flushmate System with ASME A112.19.2.

       If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

                           Sincerely,

                           David M. Birka-White

DBW/mw

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Bri Dietrich_  ☐ Agent  ☐ Addressee<br><br>B. Received by ( Printed Name )  C. Date of Delivery<br>_Sevan D. Htrich_  8-27-12 |
| 1. Article Addressed to:<br><br>Herbert V. Kohler, Jr.<br>Kohler Co.<br>444 Highland Drive<br>Kohler, WI 53044 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
|  | 3. Service Type<br>☑ Certified Mail    ☐ Express Mail<br>☐ Registered       ☐ Return Receipt for Merchandise<br>☐ Insured Mail     ☐ C.O.D.<br><br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label)    7010 3090 0000 3915 7812 | |
| PS Form 3811, February 2004        Domestic Return Receipt | 102595-02-M-1540 |

# EXHIBIT B

# BIRKA-WHITE LAW OFFICES
The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                        dbw@birka-white.com

August 30, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Flushmate
30075 Research Drive
New Hudson, MI 48165

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

  **Re:**  <u>Flushmate® III Pressure-Assist Flushing System</u>

To Whom It May Concern:

  Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq.*, and specifically § 1782(a)(1)(2), Plaintiff Emily Williams, on behalf of herself and all others similarly situated, hereby notifies you that Flushmate, a division of Sloan Valve Company ("Flushmate"), violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

  1.  Flushmate represented that their Flushmate System had benefits or characteristics that it did not actually have. Civ. Code § 1770(a)(5); and

  2.  Flushmate represented that Flushmate System was of a particular standard or quality when it was of another. Civ. Code § 1770(a)(7).

  Specifically, Flushmate represented in marketing materials that their Flushmate System was "designed with continuous improvements to be the most reliable, consistent, and trouble-free system available," as well as "No Leaks," "No Callbacks," "Easier to maintain," and complied with the provisions of the Uniform Plumbing Code ("UPC") and American Society of Sanitary Engineering ("ASSE") Standard1037-90. These representations are not true. The materials used to manufacture the pressurized vessels were substandard and adversely affect the performance of

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 30, 2012
Page 2 of 3

the Flushmate System.  The Flushmate System threatens injury and public safety in that it can burst at or near the vessel weld seam releasing stored pressure.  This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage. Flushmate became aware of the Flushmate System defect as early as July 2000, if not sooner, but nonetheless continued to sell the Flushmate System without disclosing the defect or risk to allow consumers to make an informed decision whether or not to purchase a toilet containing the Flushmate System.  The Flushmate System contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product, and this letter constitutes a notice of breach of warranty both express and implied.

     This notice applies to all toilets which incorporate the Flushmate System including, but not limited to, American Standard, Crane, Eljer, Gerber, Kohler, Mansfield, St. Thomas, and Western, as well as persons who purchased the Flushmate System vessel only from such retailers as Home Depot and Lowes. Additionally, the notice program to consumers and owners of toilets with Flushmate Systems provided pursuant to the voluntary recall of the Flushmate System in conjunction with the United States Consumer Product Safety Commission ("CPSC") and Health Canada is grossly inadequate.  A consumer with the product is oftentimes unaware of the dangers until there is an actual failure, and the notice program inadequately reaches the affected class of owners who are at risk of personal injury and property damage.

     Emily Williams, an elderly California resident, recently became aware that the Gerber toilet installed at her property contains the defective Flushmate System.  The serial number on her Flushmate System is 042301-F3G-1683.  The toilet was installed by Rosenberg Plumbing on or about September 4, 2001.  Ms. Williams is unable to install the Flushmate "repair kit" on her own and will have to hire a plumber.  There is also the additional inconvenience of having an inoperable toilet until the proper repair or replacement is completed.  It is unrealistic and inappropriate to require consumers to handle such repairs and installations on their own, and there is no legal basis to require consumers to assume the obligation to either personally install the "repair kit" or pay for the installation.   In Ms. Williams' case, the repair kit is not even capable of installation because the external regulator is too long to reattach the water supply line. Furthermore, the "repair kit" offered by Flushmate is inadequate in that it does not repair the design defect and improperly alters the appearance and operation of the Gerber toilet in an effort to compensate for the defect.  The entire toilet needs to be replaced by a qualified plumber, paid for by Gerber or Flushmate.

     Ms. Williams on behalf of herself and all others similarly situated, hereby demands that Flushmate: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems utilized in toilets manufactured between January 1, 1997 and the present; and (2) provide notice to consumers of the product performance issues in this letter and of their right to present a claim. Demand is made on Flushmate to remedy these defects and reimburse all owners who have replaced the defective products within thirty (30) days of receipt of this letter.  If we do not hear

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 30, 2012
Page 3 of 3

from you within this time period, we will assume that you will not take the corrective action requested.

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.  All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all toilets manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.  All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.  All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.  Any complaints from any source concerning defective Flushmate System;

5.  All documents which reflect the sale of the Flushmate System referenced above in the United States, including manufacturing dates and model numbers;

6.  All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Gerber, Flushmate, or their suppliers; and

7.  All listing agreements, testing records, and quality control records related to the Flushmate System and its compliance with ASSE 1037.

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

David M. Birka-White

DBW/mw

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Jose Baca_        ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Jose Barajas                      9-5-12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Certified Mail       ☐ Express Mail
☐ Registered           ☐ Return Receipt for Merchandise
☐ Insured Mail         ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7010 3090 0000 3915 7836

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Flushmate
30075 Research Drive
New Hudson, MI 48165

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Duncan_           ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Duncan                            9/4

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Certified Mail       ☐ Express Mail
☐ Registered           ☐ Return Receipt for Merchandise
☐ Insured Mail         ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7010 3090 0000 3915 7843

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# BIRKA-WHITE LAW OFFICES

The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                                      dbw@birka-white.com

August 30, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Gerber Plumbing Fixtures, LLC
2500 Internationale Parkway
Woodridge, IL 60517

Gerber Plumbing Fixtures, LLC
c/o Corporation Service Company
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

      Re:    **Flushmate® III Pressure-Assist Flushing System**

To Whom It May Concern:

Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq.*, and specifically § 1782(a)(1)(2), Plaintiff Emily Williams, on behalf of herself and all others similarly situated, hereby notifies you that Gerber Plumbing Fixtures, LLC ("Geber") violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

    1.    Gerber represented that their toilets containing the Flushmate System had benefits or characteristics that it did not actually have. Civ. Code § 1770(a)(5); and

    2.    Gerber represented that their toilets containing the Flushmate System was of a particular standard or quality when it was of another. Civ. Code § 1770(a)(7).

Specifically, Gerber represented in marketing materials that their toilets with the Flushmate System were of good quality, fit for their intended use, complied with American Society of Mechanical Engineers ("ASME") Standard A112.19.2 and Uniform Plumbing Code ("UPC"). These representations and warranties are not true. The materials used to manufacture

BIRKA-WHITE LAW OFFICES

Gerber Plumbing Fixtures, LLC
August 30, 2012
Page 2 of 3

the pressurized vessels contained within the Gerber toilets were substandard and adversely affect the performance of the entire flushing system. The Flushmate System also threatens injury and public safety in that they can burst at or near the vessel weld seam releasing stored pressure. This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage. Gerber knew or should have known that their toilets with the Flushmate System did not conform to these representations. Flushmate, and in turn, Gerber, were aware of this defect as early as July 2000, but nonetheless continued to sell toilets with the Flushmate System without disclosing the defects. The Flushmate System contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product, and this letter constitutes a notice of breach of warranty both express and implied.

Emily Williams, an elderly California resident, recently became aware that the Gerber toilet installed at her property contains the defective Flushmate System. The serial number on her Flushmate System is 042301-F3G-1683. The toilet was installed by Rosenberg Plumbing on or about September 4, 2001. Ms. Williams is unable to install the Flushmate "repair kit" on her own and will have to hire a plumber. There is also the additional inconvenience of having an inoperable toilet until the proper repair or replacement is completed. It is unrealistic and inappropriate to require consumers to handle such repairs and installations on their own, and there is no legal basis to require consumers to assume the obligation to either personally install the "repair kit" or pay for the installation. In Ms. Williams' case, the repair kit is not even capable of installation because the external regulator is too long to reattach the water supply line. Furthermore, the "repair kit" offered by Flushmate is inadequate in that it does not repair the design defect and improperly alters the appearance and operation of the Gerber toilet in an effort to compensate for the defect. The entire toilet needs to be replaced by a qualified plumber, paid for by Gerber or Flushmate.

Ms. Williams on behalf of herself and all others similarly, hereby demands that Gerber: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems utilized in toilets manufactured between January 1997 and the present; and (2) provide notice to consumers of the product performance issues in this letter and of their right to present a claim. Demand is made on Gerber to remedy these defects and reimburse all owners who have paid to repair or replace the defective products within thirty (30) days of receipt of this letter. If we do not hear from you within this time period, we will assume that you will not take the corrective action requested.

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.     All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all Gerber toilets manufactured between January 1997 and the present which contain a Flushmate System;

BIRKA-WHITE LAW OFFICES

Gerber Plumbing Fixtures, LLC
August 30, 2012
Page 3 of 3

2.   All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.   All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.   Any complaints from any source concerning Gerber toilets and the defective Flushmate System;

5.   All documents which reflect the sale of toilets containing the Flushmate System referenced above in the United States, including manufacturing dates and model numbers.

6.   All documents showing the number of Gerber toilets referenced above that were sold throughout the United States, including manufacturing dates and model numbers;

7.   All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Gerber, Flushmate, or their suppliers; and

8.   All testing records related to the compliance of the Gerber toilets containing the Flushmate System with ASME A112.19.2.

       If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

                                    Sincerely,

                                    David M. Birka-White

DBW/mw

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gerber Plumbing Fixtures, LLC
2500 Internationale Parkway
Woodridge, IL 60517

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☒ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

Annie Das    9/4/12

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☒ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7010 3090 0000 3915 7867

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gerber Plumbing Fixtures, LLC
c/o Corporation Service Company
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _C. Buckley Condie_  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
   (Transfer from service label)

7010 3090 0000 3915 7850

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

# EXHIBIT C

1  David M. Birka-White (State Bar No. 85721)
   dbw@birka-white.com
2  Mindy M. Wong (State Bar No. 267820)
   mwong@birka-white.com
3  BIRKA-WHITE LAW OFFICES
   411 Hartz Avenue, Suite 200
4  Danville, CA  94526
   Telephone:  (925) 362-9999
5  Facsimile:  (925) 362-9970

6  Attorneys for Plaintiffs
   *United Desert Charities, Maralee Pelka,*
7  *Fred Ede III, Emily Williams, Bruce Pritchard,*
   *and Jean Steiner*

8

9              **UNITED STATES DISTRICT COURT**

10      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  UNITED DESERT CHARITIES,          Case No.  CV12-06878 SJO (SHx)
    MARALEE PELKA, FRED EDE III,
12  EMILY WILLIAMS, BRUCE             *The Honorable S. James Otero*
    PRITCHARD, and JEAN STEINER,
13  on behalf of themselves and all others   **DECLARATION OF EMILY**
    similarly situated,               **WILLIAMS**
14
                                      Action Filed:   August 9, 2012
15              Plaintiffs,

16  v.

17  FLUSHMATE, a division of SLOAN
    VALVE COMPANY, AMERICAN
18  STANDARD BRANDS AS
    AMERICA, INC., KOHLER CO.,
19  GERBER PLUMBING FIXTURES,
    LLC, MANSFIELD PLUMBING
20  PRODUCTS, LLC, HOME DEPOT,
    U.S.A., INC., and DOES 1-10,
21  inclusive,

22              Defendants.

23

24

25

26

27

28

                                      DECLARATION OF
                                      EMILY WILIAMS

1        I, EMILY WILLIAMS, declare as follows:

2        1.    I am a Plaintiff and proposed class representative in this case.  I have

3   personal knowledge of the matters set forth below, except as to those matters stated

4   herein which are based on information and belief, which matters I believe to be

5   true.  If called to testify, I could and would testify competently to these matters

6   herein included.

7        2.    I am informed and believe that venue is proper in this court under Civil

8   Code § 1780(c) based on the fact that Defendant Flushmate, a division of Sloan

9   Valve Company, and Gerber Plumbing Fixtures, LLC, are doing business in the

10  County of Los Angeles.

11       I declare under penalty of perjury under the laws of the State of California

12  that the foregoing is true and correct.

13       Executed this 3rd day of October, 2012, at South San Francisco, California.

14

15                          EMILY WILLIAMS

16

17

18

19

20

21

22

23

24

25

26

27

28

                        - 1 -                    DECLARATION OF
                                                EMILY WILIAMS

# EXHIBIT D

1   David M. Birka-White (State Bar No. 85721)
    dbw@birka-white.com
2   Mindy M. Wong (State Bar No. 267820)
    mwong@birka-white.com
3   BIRKA-WHITE LAW OFFICES
    411 Hartz Avenue, Suite 200
4   Danville, CA  94526
    Telephone:  (925) 362-9999
5   Facsimile:  (925) 362-9970

6   Attorneys for Plaintiffs
    *United Desert Charities, Maralee Pelka,*
7   *Fred Ede III, Emily Williams, Bruce Pritchard,*
    *and Jean Steiner*

8

9                **UNITED STATES DISTRICT COURT**

10           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  | UNITED DESERT CHARITIES, | Case No. CV12-06878 SJO (SHx) |
    | MARALEE PELKA, FRED EDE III, | |
12  | EMILY WILLIAMS, BRUCE | *The Honorable S. James Otero* |
    | PRITCHARD, and JEAN STEINER, | |
13  | on behalf of themselves and all others | **DECLARATION OF FRED EDE, III** |
    | similarly situated, | |
14  | | Action Filed:   August 9, 2012 |
    |                 Plaintiffs, | |
15  | | |
    | v. | |
16  | | |
    | FLUSHMATE, a division of SLOAN | |
17  | VALVE COMPANY, AMERICAN | |
    | STANDARD BRANDS AS | |
18  | AMERICA, INC., KOHLER CO., | |
    | GERBER PLUMBING FIXTURES, | |
19  | LLC, MANSFIELD PLUMBING | |
    | PRODUCTS, LLC, HOME DEPOT, | |
20  | U.S.A., INC., and DOES 1-10, | |
    | inclusive, | |
21  | | |
    |                 Defendants. | |
22

23

24

25

26

27

28

                                    DECLARATION OF FRED EDE, III

1    I, FRED EDE, III, declare as follows:

2        1.    I am a Plaintiff and proposed class representative in this case. I have

3    personal knowledge of the matters set forth below, except as to those matters stated

4    herein which are based on information and belief, which matters I believe to be

5    true. If called to testify, I could and would testify competently to these matters

6    herein included.

7        2.    I am informed and believe that venue is proper in this court under Civil

8    Code § 1780(c) based on the fact that Defendants Flushmate, a division of Sloan

9    Valve Company and Kohler Co. are doing business in the County of Los Angeles.

10        I declare under penalty of perjury under the laws of the State of California

11    that the foregoing is true and correct.

12        Executed this 4 day of October, 2012, at Fresno, California.

13

14        FRED EDE, III

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    DECLARATION OF FRED EDE, III