FILED
CLERK, U.S. DISTRICT COURT

FEB - 7 2013

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

1 | David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
2 | Mindy M. Wong (State Bar No. 267820)
mwong@birka-white.com
3 | BIRKA-WHITE LAW OFFICES
411 Hartz Avenue, Suite 200
4 | Danville, CA 94526
Telephone: (925) 362-9999
5 | Facsimile: (925) 362-9970

6 | Robert J. Nelson (State Bar No. 132797)
rnelson@lchb.com
7 | Kristen Law Sagafi (State Bar No. 222249)
klaw@lchb.com
8 | Jordan Elias (State Bar No. 228731)
jelias@lchb.com
9 | LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
10 | 275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
11 | Telephone: (415) 956-1000
Facsimile: (415) 956-1008

12

Attorneys for Plaintiffs
13 | *United Desert Charities,*
*Fred Ede, III, Emily Williams, Bruce Pritchard,*
14 | *and Jean Steiner*

15 | **UNITED STATES DISTRICT COURT**

16 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17 | UNITED DESERT CHARITIES, FRED EDE, III, EMILY WILLIAMS, BRUCE PRITCHARD, and JEAN STEINER, on behalf of themselves and all others similarly situated, | Case No. CV12-06878 SJO (SHx) |
| 18 | | *The Honorable S. James Otero* |
| 19 | | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| 20 | Plaintiffs, | |
| 21 | v. | **JURY DEMAND** |
| 22 | SLOAN VALVE COMPANY, AMERICAN STANDARD BRANDS AS AMERICA, INC., KOHLER CO., GERBER PLUMBING FIXTURES, LLC, MANSFIELD PLUMBING PRODUCTS, LLC, HOME DEPOT, U.S.A., INC., and DOES 1-10, inclusive, | Action Filed: August 9, 2012 |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | Defendants. | |
| 28 | | |

1079318.1

Plaintiffs UNITED DESERT CHARITIES, FRED EDE, III, EMILY WILLIAMS, BRUCE PRITCHARD, and JEAN STEINER ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## I.   **INTRODUCTION**

1.      This is a class action for damages, restitution, and injunctive relief filed on behalf of Plaintiffs and all persons or entities who own toilets equipped with a Series 503 Flushmate® III Pressure-Assist Flushing System (the "Flushmate System") manufactured by defendant Sloan Valve Company ("Sloan") between October 14, 1997 and February 29, 2008.  The Flushmate System is currently the subject of a nationwide Consumer Product Safety Commission ("CPSC") product recall (the "Recall").  The Recall affects more than 2.3 million toilets.

2.      The Flushmate System is unreasonably dangerous to consumers because of a defect in its pressure vessel that can cause the vessel to rupture and the toilet to explode.  Sloan has instructed owners of toilets containing the Flushmate System ("Flushmate Toilets") to turn off the supply of water to the toilet immediately in order to avoid physical injury and property damage.

3.      Sloan has not publicized the Recall adequately.  Many owners of Flushmate Toilets have not received notice of the Recall.  Even if owners have received notice of the Recall, Sloan has offered them only a "repair kit" (the "Repair Kit") that does not remedy the defect in the Flushmate System and is expensive for them to install.  The Repair Kit only increases the expense to consumers of owning a Flushmate Toilet and provides them with a false sense of security which dissuades them from replacing their Flushmate Toilets.

4.      Sloan expressly warranted that the Flushmate System was free from defects and promised to replace any Flushmate tanks that proved defective.  Sloan breached its express warranty and violated California law in failing to pay for replacement tanks and the labor required to install them.  Instead, Sloan has offered only the inadequate Repair Kit.

5.     Sloan and the Manufacturer Defendants breached the statutory implied warranty of merchantability in California because they manufactured and brought to market toilet products that were unfit for their ordinary and intended purpose.

6.     Plaintiffs and members of the proposed Class (the "Class") have also been damaged by Sloan's misrepresentations and omissions concerning the defect in the Flushmate System.

7.     The Consumer Product Safety Commission reported that when the federal government mandated disclosure of the toilet defect in June of 2012, Sloan had already "received 304 reports of the product bursting, resulting in property damage and 14 impact or laceration injuries."  Until forced to do so, Sloan intentionally failed to notify owners or otherwise disclose the hazard.

8.     Each Plaintiff detrimentally relied on recommendations made by plumbers, contractors or other specialists who would have recommended against the purchase of Flushmate Toilets had Sloan properly disclosed the defect in the Flushmate System and the seriousness of its consequences.  Sloan's misrepresentations and omissions were communicated to Plaintiffs and the Class by these advisors.

9.     Sloan could have avoided injury to Plaintiffs and the Class by disclosing the nature and severity of the defect in the Flushmate System when it became aware of the defect, or by providing effective notice of the Recall and providing and paying for replacement of the defective product.  Sloan did none of these things, resulting in substantial injury to Plaintiffs and the Class.

## II.   **PARTIES**

10.     Plaintiff United Desert Charities ("UDC") is a California non-profit corporation located in Palmdale, California.  UDC owns seven Flushmate Toilets manufactured by American Standard which are subject to the Recall.  One of these toilets failed, leaked, and had to be replaced.

1        11.    Plaintiff Fred Ede, III ("Ede") is a resident of Fresno, California.  Ede

2    owns six Flushmate Toilets manufactured by Kohler which are installed at his

3    residences.  The Flushmate System in each of his six toilets is subject to the Recall.

4        12.    Plaintiff Emily Williams ("Williams") is a resident of South San

5    Francisco, California.  Williams purchased a Flushmate Toilet manufactured by

6    Gerber for her residence.  The Flushmate System in her toilet is subject to the

7    Recall.

8        13.    Plaintiff Bruce Pritchard ("Pritchard") is a resident of Emerald Hills,

9    California.  Pritchard acquired a Flushmate Toilet manufactured by Mansfield for

10   his residence.  The Flushmate System in his toilet is subject to the Recall.

11       14.    Plaintiff Jean Steiner ("Steiner") is a resident of Desert Hills, Arizona.

12   Steiner purchased from Home Depot a Flushmate Toilet manufactured by Kohler

13   for her residence.  The Flushmate System in her toilet is subject to the Recall.

14       15.    Sloan is a Delaware corporation with its principal place of business in

15   Franklin Park, Illinois.  Sloan manufactures the Flushmate System at a division in

16   New Hudson, Michigan.

17       16.    AS America, Inc., doing business in California as American Standard

18   Brands AS America, Inc. ("American Standard"), is a Delaware corporation with its

19   principal place of business in Piscataway, New Jersey.

20       17.    Kohler Co. ("Kohler") is a Delaware corporation with its principal

21   place of business in Kohler, Wisconsin.

22       18.    Gerber Plumbing Fixtures, LLC ("Gerber") is a Delaware corporation

23   with its principal place of business in Woodridge, Illinois.

24       19.    Mansfield Plumbing Products, LLC ("Mansfield") is a Delaware

25   corporation with its principal place of business in Perrysville, Ohio.

26       20.    Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation

27   with its principal place of business in Atlanta, Georgia.  Home Depot claims to be

28   the world's largest home improvement specialty retailer and operates more than

1    5,000 stores, with stores in all 50 states.  Home Depot sold toilets containing the

2    Flushmate System throughout the United States.

3         21.    Defendants American Standard, Kohler, Gerber and Mansfield

4    (collectively, the "Manufacturer Defendants") manufacture and sell Flushmate

5    Toilets.

6         22.    Plaintiffs are unaware of the true names and capacities of the

7    Defendants sued herein as DOES 1 through 10, and therefore sue these Defendants

8    by such fictitious names.  Plaintiffs will amend this complaint to allege their true

9    names and capacities when they are ascertained.  Plaintiffs are informed and believe

10   that each of the fictitiously-named Defendants is responsible in some manner for

11   the occurrences herein alleged and that damages suffered by Plaintiffs and the

12   proposed class, were proximately caused by their conduct.

13        23.    Plaintiffs are informed and believe that all Defendants, including the

14   fictitious DOE Defendants 1 through 10, were at all relevant times acting as actual

15   agents, conspirators, ostensible agents, partners, alter egos and/or joint venturers

16   and employees of all other Defendants and that all acts alleged herein occurred

17   within the course and scope of that agency, employment, partnership, and/or

18   enterprise, and with the express and/or implied permission, knowledge, consent,

19   authorization and ratification of their co-Defendants.

20   **III.    <u>JURISDICTION AND VENUE</u>**

21        24.    This Court has jurisdiction over this action pursuant to the Class

22   Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which:

23   (1) there are at least 100 Class members, (2) the combined claims of Class members

24   exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and (3) some

25   Plaintiffs and Class members are citizens of California and Defendants are citizens

26   of other states.

27        25.    This Court has personal jurisdiction over Defendants because

28   Defendants purposefully availed themselves of the privilege of conducting business

- 4 -

1    activities within the State of California by advertising, selling, and warranting the

2    toilets and the defective Flushmate System to Plaintiffs and the Class, and

3    maintained systematic and continuous business contacts with the State of California

4    and this District, which make the exercise of jurisdiction by this Court permissible

5    under traditional notions of fair play and substantial justice.

6          26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and

7    (b)(2) because Defendants are residents of this District within the meaning of

8    § 1391(d) and a substantial part of the events, misrepresentations and/or omissions

9    giving rise to Plaintiff UDC's claims occurred in the Central District of California.

10   **IV.    FACTUAL ALLEGATIONS**

11         **A.    The Flushmate System**

12         27.    Between October 14, 1997 and February 29, 2008, Sloan

13   manufactured over 2.3 million Flushmate Systems that were incorporated into

14   Flushmate Toilets sold to Plaintiffs and the Class between October 1997 and the

15   present (the "Class Period").

16         28.    The Flushmate System differs from traditional, gravity-fed flushing

17   systems in that the water flushed is under pressure.  The Flushmate System includes

18   a plastic tank or "vessel" located in a toilet's water storage tank.  The vessel is

19   comprised of two plastic halves that are "welded" together.  The vessel stores water

20   under pressure that is released when the toilet is flushed.  Pressure in the water

21   supply line to the Flushmate System compresses and pressurizes air inside the

22   vessel.  When the toilet is flushed, the compressed air forces water into the toilet

23   bowl which "pushes" waste out.  Vessels in the Flushmate System are under

24   constant high pressure.

25         29.    Flushmate Toilets are a premium product and are considerably more

26   expensive than traditional, gravity-fed toilets.  Distributors, contractors and

27   plumbers advised consumers to pay the premium based on their belief that the

28   Flushmate System was more effective than traditional toilets and saved water.

30.    These benefits were not realized because the Flushmate System is defective.  Pressure in the vessel exerts forces on the seam weld greater than the weld can withstand, leading to weld separations and a sudden release of pressure. The release of pressure can lift the lid off the toilet's water storage tank and shatter the tank.  This explosion can result in serious property damage and personal injury.

31.    True and correct copies of photographs of failed Flushmate Toilets are attached as **Exhibit A**.

32.    The Flushmate System fails suddenly and without warning. Consumers only become aware of severity of the problem if they actually experience the failure firsthand, at which point they have already suffered property damage and/or physical injury.

33.    When the owner is not present at the time the Flushmate Systems fails, the property damage can be particularly severe.

34.    Flushmate Toilets are unsafe and unmerchantable.  They have either already failed or are substantially certain to fail before the end of their useful lives.

**B.    The Product Advisories**

35.    Sloan has known since at least 2000 that the Flushmate System leaks and explodes, resulting in property damage and serious bodily injury, but never advised consumers or plumbing professionals of this fact.  Instead, on July 24, 2000, Sloan issued a Product Advisory notice entitled, "Flushmate® II and III Vessel Weld Leak Or Separation."  The Product Advisory was posted on the Flushmate website no later than October 2000.  A true and correct copy of this Product Advisory is attached as **Exhibit B**.

36.    The Product Advisory states that "a very small number" of Flushmate II and III units developed leaks, or separation of the joints in the vessels that are accompanied by the rapid release of the pressurized water contained in the vessel. The Product Advisory was revised in 2003 in a manner not material to the claims

1   stated herein.  A true and correct copy of this revised Product Advisory is attached

2   as **Exhibit C**.

3         37.   Sloan did not disclose in the Product Advisory Notices or elsewhere

4   the seriousness of the problems with the Flushmate System or the fact that

5   Flushmate Toilets have exploded, resulting in personal injury and property damage.

6   Sloan's public statements concerning the problems with the Flushmate System were

7   intended to, and did, conceal from its customers, plumbing professionals and the

8   public the severity of the defect in the Flushmate System.

9         38.   Sloan also took pains to obscure even the Product Advisory.  For

10  example, the "Product Advisory" link on the Flushmate website appears as a tab

11  below the "Where to Buy" link.  A true and correct copy of this website is attached

12  as **Exhibit D**.

13        **C.**   **The Product Recall**

14        39.   On June 21, 2012, the CPSC issued the Recall affecting Flushmate

15  Systems manufactured between October 14, 1997 and February 29, 2008.

16        40.   According to the CPSC, at the time of the Recall, Sloan had received

17  304 reports that the Flushmate System had exploded, resulting in serious property

18  damage and fourteen impact or laceration injuries.  In fact, however, more than

19  304 Flushmate Toilets had exploded at the time of the Recall.  Certain owners of

20  such toilets (*e.g*., Plaintiffs UDC and Ede) did not notify Sloan of the explosions.

21        41.   The notice issued in connection with the Recall (the "Recall Notice")

22  is entitled:  "Flushmate Recalls Flushmate® III Pressure-Assisted Flushing System

23  Due to Impact and Laceration Hazards."  A true and correct copy of this Recall

24  Notice is attached as **Exhibit E**.

25        42.   The Recall Notice states:  "**Hazard:**  The system can burst at or near

26  the vessel weld seam releasing stored pressure.  This pressure can lift the tank lid

27  and shatter the tank, posing impact or laceration hazards to consumers and property

28  damage."

- 7 -

43.     The Recall Notice further states:  "Consumers should stop using recalled products immediately unless otherwise instructed.  It is illegal to resell or attempt to resell a recalled consumer product. . . . Consumers should immediately turn off the water supply to the recalled Flushmate III unit and stop using the system.  Consumers should contact the firm to determine if their Flushmate III serial number is included in the recall and to request a free Repair Kit."

44.     The Recall Notice was not disseminated adequately; many owners of the Flushmate System have not received notice of the Recall.  A much broader, larger, and more robust notice program is required to alert owners of Flushmate Toilets.

45.     The Recall Notice is misleading to consumers.  It incorrectly suggests that the Repair Kit provides an effective remedy for the defect in the Flushmate System and that consumers can safely and effectively install the Repair Kit without the assistance of a plumbing professional.  Neither suggestion is true.

46.     The Recall Notice is also misleading because it does not advise consumers that Flushmate Systems manufactured during the time frame covered by the Recall (October 14, 1997 to February 29, 2008) were included in toilets sold after February 2008.

**D.     The "Repair Kit"**

47.     Although Sloan advises consumers to turn off the water supply to the toilet immediately and stop using their toilets, Sloan will not replace the defective Flushmate System.  Instead, Sloan compels Plaintiffs and the Class to install a "Repair Kit," something that they lack the skills to do and that, in any event, does nothing to fix the defect.

48.     The Repair Kit includes two components.  The first component is a U-shaped metal strap described as the "U-Band."  Sloan instructs the owner to install the U-Band around the pressure vessel.  The only purpose of the U-band is to restrain the movement of the two halves of the pressure vessel when it fails.

49.     The second component of the Repair Kit is an "external regulator." The external regulator reduces the water pressure from the water supply line to the pressure vessel, thereby limiting the force of a toilet explosion.  The reduction in water pressure produced by the external regulator deprives the Flushmate System of much of the "power assist" which justifies the higher price of a Flushmate Toilet.

50.     The instructions that come with the Repair Kit do not state that the contents of the Repair Kit can or will fix the problem and prevent toilet failures; rather, the instructions state only that the contents will "minimize the possibility for injury and property damage due to Flushmate III unit separation[.]"  A true and correct copy of these Repair Kit instructions is attached as **Exhibit F**.

51.     The Repair Kit fails to prevent the vessel weld from separating, and hence fails to prevent leaks and/or explosions.  Even if installed as directed, neither the "U-Band" nor the "external regulator" included in the Repair Kit forecloses the possibility that the toilet will burst, leak, and/or cause floods, resulting in damage to persons and property.

52.     The Repair Kit cannot be installed in many toilets due to the restricted available space, shape of the toilet and length of the existing water line.

53.     Even where the Repair Kit can be installed, its installation requires plumbing tools and skills that few owners possess.  The installation can and should be performed only by a qualified plumber.  In the Recall Notice, Sloan failed to advise consumers that they cannot install the Repair Kit by themselves.  Nor does Sloan offer to pay for its installation.  Sloan has consistently refused to pay for the installation of the Repair Kit, even when consumers complain.

54.     As detailed below, Sloan's written warranty states that it will replace any defective tank.  Similarly, the Product Advisories recommended "the replacement of the unit to assure proper function of the unit and avoid damage to the toilet fixture, any collateral damage, or the possibility of personal injury."  In administering claims under the Recall, Sloan consistently refuses to replace the tank

it expressly agreed to replace and which it recommended consumers replace to avoid the risk of explosion, injury, and property damage.

55.     The poorly-designed Repair Kit, Sloan's refusal to pay the labor costs associated with the repair or replacement of the Flushmate System, and the inadequate recall notice program undermine the purpose and impact of the Recall. The Recall does not provide an adequate remedy to owners of Flushmate Toilets.

**E.     Sloan's Misrepresentations and Omissions Concerning the Flushmate System**

56.     The Flushmate lifetime warranty (the "Warranty Document") states that the Flushmate System is "free of defects in material and workmanship" (the "Express Warranty").

57.     A true and correct copy of the Warranty Document is attached as **Exhibit G**.

58.     This Warranty Document can be found (1) on the inside of the toilet tank; (2) on the Flushmate website; and (3) in the 503 Series Owner's Manual.

59.     The Warranty Document has been displayed on the Flushmate website from at least 1998 through the present.

60.     The Owner's Service Manual for the 503 Series has been displayed on the Flushmate website from approximately 1999 through the present.

61.     The representation that the Flushmate System is "free of defects in material and workmanship" is false because the Flushmate System is defective.  As described above, the weld binding the two halves of the storage tank is not strong enough to withstand the pressure in the pressure vessels, causing leaks and explosions.  From at least 2000 forward, Sloan knew that this representation was false.

62.     Sloan was obligated to disclose that: (1) the Flushmate System had exploded, causing serious property damage and personal injury; (2) the Repair Kit does not cure the defect in the Flushmate System; and (3) the only effective remedy

1    for the defect is to replace the Flushmate System with a non-defective replacement

2    or to replace the Flushmate Toilet.

3          63.     Sloan was obligated to disclose these facts to Plaintiffs and the Class

4    because: (1) the defect in the Flushmate System posed an unreasonable safety risk;

5    (2) disclosure was necessary to qualify affirmative representations made concerning

6    the Flushmate System in order to make such representations non-misleading; and

7    (3) Sloan was uniquely in possession of the facts it did not disclose, knew that such

8    facts were not available to Plaintiffs and the Class and knew that such facts would

9    be highly material to any prospective purchaser or owner of a Flushmate Toilet.

10          64.     Instead of disclosing these facts, since at least 2000 Sloan has engaged

11   in a practice of deceptive material misrepresentations and omissions in connection

12   with the marketing, advertising, and sale of the Flushmate System.  Had Sloan

13   disclosed the known history of leaks and explosions and the risks and consequences

14   of such leaks and explosions, including the risk of serious laceration injuries due to

15   impact and the risk of flooding to the property, Plaintiffs and the Class would not

16   have purchased any toilet containing the Flushmate System.

17          **F.     Reliance by Consumers on Representations and Omissions Made
             by Sloan to the Distribution Chain**

18

19          65.     Almost all purchasers of Flushmate Toilets rely on contractors,

20   plumbing equipment dealers and others (collectively, "Advisors") to advise them

21   concerning the advantages and disadvantages of purchasing a particular type and

22   brand of toilet.

23          66.     Sloan knows Advisors will recommend the Flushmate System only if

24   they are convinced it is reliable and safe.  Sloan undertook a broad-based and

25   effective advertising and promotion campaign that was designed to – and did –

26   convince Advisors that the Flushmate System was reliable.  At all times during the

27   pendency of this campaign, Sloan was aware that the Flushmate System was not

28

- 11 -

1 reliable, having received numerous reports and complaints of explosions and

2 damaging leaks resulting from the failure of Flushmate Toilets.

3      67.    Sloan's advertising and promotion campaign was directed both to

4 Advisors and to persons higher up the distribution chain who inform the Advisors

5 concerning the merits of particular products.  Sloan intended that all statements it

6 made concerning the reliability of the Flushmate System be communicated down

7 the distribution chain to the Advisors and ultimately to consumers.

8      68.    In order to sell the Flushmate System, Sloan first had to convince the

9 Manufacturer Defendants to incorporate the Flushmate System into Flushmate

10 Toilets.  Sloan knew that Advisors and their customers assume that the

11 Manufacturer Defendants would not produce Flushmate Toilets if the Flushmate

12 System were unsafe or unreliable.

13      69.    If the Manufacturer Defendants had been aware of either (1) the falsity

14 of Sloan's representation that the Flushmate System was "free of defects in material

15 and workmanship" or (2) that the Flushmate System had leaked, exploded and

16 caused personal injury and property damage, they would not have incorporated the

17 Flushmate System into Flushmate Toilets.  If the Manufacturer Defendants had not

18 incorporated the Flushmate System into their products, neither Plaintiffs nor the

19 Class would have suffered the harm described herein.

20      70.    In addition to persuading the Manufacturer Defendants to purchase the

21 Flushmate System, Sloan needed to convince persons farther down the distribution

22 chain of the advantages and reliability of the Flushmate System.  The distribution

23 chain consists of the Manufacturer Defendants, their manufacturer representatives,

24 distributors, plumbing supply vendors, contractors, plumbers and others who either

25 are, or have direct access to, Advisors.

26      71.    Sloan employed public relations and marketing professionals to

27 disseminate broadly information about the purported reliability of Flushmate

28 Toilets.  For example, Sloan employed the Interline Group to undertake a series of

promotional initiatives (which Interline described as "advertising, public relations, website development, sales and marketing support, technical writing, packaging and promotional materials and direct mail") to educate "the residential and light commercial marketplace about pressure-assist technology as a water-saving alternative to gravity toilets" and "*dispel myths about the undependability of low-consumption toilets*."  (Emphasis added.)

72.    Interline undertook these initiatives – including creation of a "micro-site," case studies, advertisements and technical materials – for the purpose of convincing participants in the distribution chain, including Advisors, that Flushmate Toilets are dependable high-end toilet products that should be recommended to end-users in the market for a new toilet.

73.    Follow-up surveys conducted by Interline demonstrated that, as a result of its marketing campaign, the "public is more aware of pressure-assist technology and that they're more willing to buy these water-conserving toilets, *especially when the toilets are proven to be more reliable*."  (Emphasis added.)

74.    A true and correct copy of these Interline statements is attached as **Exhibit H**.

75.    Sloan's public relations efforts and material omissions persuaded manufacturers to manufacture Flushmate Toilets and Advisors to promote their sale to end-users.  Throughout the Class Period, every level in the distribution chain relied upon the material misrepresentations and omissions by Sloan regarding the defect.

76.    This reliance pervaded all transactions throughout the Class Period relating to Flushmate Systems and Flushmate Toilets.

77.    If the Advisors had been aware of either (1) the falsity of Sloan's representation that the Flushmate System was "free of defects in material and workmanship" or (2) that the Flushmate System had leaked, exploded and caused

- 13 -

1  personal injury and property damage, they would have recommended that Plaintiffs
2  and the Class not purchase Flushmate Toilets.

3      78.    If the Advisors had recommended against purchasing Flushmate
4  Toilets, Plaintiffs and the Class would not have purchased them.  The reliance by
5  Plaintiffs and the Class on the Advisors was reasonable because the Advisors are in
6  the business of advising consumers concerning the purchase of toilets.

7          **G.    Defendants' Breach of the Implied Warranty of Merchantability**

8      79.    The Legislature provided that "every sale of consumer goods that are
9  sold at retail in this state shall be accompanied by the manufacturer's and the retail
10  seller's implied warranty that the goods are merchantable."  Civ. Code § 1792.
11  This statutory warranty does not require vertical privity between the plaintiff and
12  the manufacturer or seller.[1]  The Legislature intended that Plaintiffs and the Class
13  could enforce Sloan's implied warranty of merchantability whether or not they were
14  in privity with Sloan.

15     80.    In addition, Plaintiffs and the Class are third party beneficiaries of the
16  warranties between Sloan and the Manufacturer Defendants.  Sloan and the
17  Manufacturer Defendants intended that all implied warranties made by Sloan
18  concerning the Flushmate System would be for the benefit of Plaintiffs and the
19  Class.  This intent is evidenced, *inter alia*, in the written warranties of the
20  Manufacturer Defendants, which provide that "[f]or warranty issues related to
21  Flushmate, [Plaintiffs and the Class should] contact" Sloan (the "Gerber
22  Warranty").  A true and correct copy of the Gerber Warranty is attached as
23  **Exhibit I**.

24     81.    Consistent with Defendants' intent, Plaintiff Ede was told by Kohler
25  to contact Sloan regarding the problems with his Flushmate Toilets.  Further, when

26

27  [1] *E.g.*, *Keegan v. American Honda Motor Co., Inc*., 838 F.Supp.2d 929, 946-47
   (C.D. Cal. 2012).

28

1    the Manufacturer Defendants sell Flushmate Toilets, they ensure that literature

2    related to the Flushmate System, separate from their own materials relating to the

3    toilet, is supplied to consumers.

4            82.    The implied warranties made by Sloan to the Manufacturer Defendants

5    would be of no economic value to them unless Plaintiffs and the Class received the

6    benefit of such warranties.  The Manufacturer Defendants are not users of

7    Flushmate Toilets.  The economic benefit of implied warranties made by Sloan to

8    the Manufacturer Defendants depends on the ability of consumers who buy their

9    products to obtain redress from Sloan if the warranties are breached.  Since the

10   Manufacturer Defendants refer their customers to Sloan to address issues related to

11   the Flushmate System, it is in the best interests of the Manufacturer Defendants that

12   Plaintiffs and the Class be able to enforce these warranties.  Under *Gilbert*

13   *Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65, 145 Cal.Rptr. 448

14   (1978), the implied warranties made by Sloan to the Manufacturer Defendants are

15   enforceable by Plaintiffs and the Class.

16           **H.    Plaintiffs' Experiences and Reliance on Advisors**

17           83.    All Plaintiffs relied to their detriment on recommendations made by

18   plumbers, contractors, or other specialists.  Such Advisors would not have

19   recommended that Plaintiffs purchase Flushmate Toilets if Sloan had disclosed the

20   defects in the Flushmate System or its history of explosions and leakage.

21           84.    Each Plaintiff was exposed to Sloan's material misrepresentations and

22   omissions through Advisors.  These Advisors transmitted material

23   misrepresentations and omissions from higher up on the distribution chain to

24   Plaintiffs and the Class in the form of expert recommendations.

25                 **i.    UDC**

26           85.    UDC owns seven Flushmate Toilets manufactured by American

27   Standard which are used by hundreds of members of the public every week.  UDC

28

- 15 -

1  did not become aware of any problems with Flushmate Toilets until approximately
2  July 2012, when it learned of the Recall.

3        86.    UDC purchased and installed its seven Flushmate Toilets as part of a
4  building remodel which took place in late 2003 or early 2004.  UDC hired Gary
5  Fisher Construction, with which it had a longstanding relationship, as its general
6  contractor for the project.

7        87.    Gary Fisher told UDC that commercial building codes for the City of
8  Palmdale required low-water consumption toilets.  Gary Fisher informed UDC that
9  the Flushmate Toilets would meet the new building codes, and recommended them.

10       88.    The Flushmate Toilets recommended by Gary Fisher were premium
11  toilets.  The cost of the toilets exceeded UDC's estimated budget for the bathroom
12  remodeling.  However, Gary Fisher assured UDC that the toilets satisfied building
13  code requirements and had a powerful flush.  UDC trusted Gary Fisher and had no
14  reason to question his judgment and recommendation to install the Flushmate
15  Toilets.

16       89.    UDC had daily meetings with Gary Fisher throughout the six-month
17  construction project.  At no point did Mr. Fisher inform UDC that Flushmate
18  Toilets had any history of leaks or explosions.

19       90.    Had UDC been informed of Sloan's history of causing personal injury
20  and property damage, UDC would not have installed Flushmate Toilets.  There
21  were many other low-consumption toilets on the market which did not pose any
22  risk of personal injury or property damage.

23       91.    To date, one of UDC's Flushmate Toilets has exploded and caused
24  damage to the bathroom floor, requiring the replacement of floor tiles as well as the
25  toilet itself.

26       92.    UDC was not aware that the defective Flushmate System caused this
27  failure, and did not notify Sloan concerning the exploded toilet.  Thus, UDC's toilet

28

1    is not included in the 304 explosions of which Sloan reported having received

2    notice, as part of the Recall.

3        93.    Because of risk to the public, UDC will have to replace all of its

4    Flushmate Toilets.

5                    **ii.    Ede**

6        94.    Ede owns six Flushmate Toilets manufactured by Kohler which were

7    installed in two properties in California, including his primary residence.  Ede is a

8    licensed plumbing contractor and the primary owner of M&L Plumbing, Inc.

9        95.    Ede purchased his Flushmate Toilets from Ferguson Enterprises

10   ("Ferguson"), one of the largest wholesale plumbing distributors in the nation.  Ede

11   has had a longstanding relationship with Ferguson and has purchased plumbing

12   supply products from Ferguson for many years.  Ede trusted the judgment of

13   Ferguson sales personnel because of their experience and knowledge concerning

14   the performance of plumbing products.

15       96.    At no time did Ferguson inform Ede that Flushmate Toilets had leaked

16   or exploded.  Had Ferguson or any other person informed Ede that Flushmate

17   Toilets had leaked, exploded and caused both personal injury and property damage,

18   Ede never would have installed the Flushmate Toilets at his home.

19       97.    Had Ferguson or any other person informed Ede that Flushmate

20   Toilets had leaked, exploded and caused both personal injury and property damage,

21   Ede would have recommended to his clients that they not install a Flushmate Toilet.

22       98.    During the winter of 2011, one of Ede's toilets exploded, causing

23   property damage as a result of flooding.  Ede paid for and installed a new toilet to

24   replace the irreparably damaged toilet.

25       99.    Ede contacted a manufacturing representative for Kohler, Zurier

26   Company.  The person at Zurier with whom Ede spoke told Ede that Zurier had

27   never been advised by any representative of Kohler that any of the Flushmate

28   Toilets had experienced any explosions.

                                - 17 -

1079318.1

100.   Ede did not notify Sloan concerning this exploded toilet; thus, Ede's exploded toilet is not included in the 304 explosions of which Sloan reported having received notice, as part of the Recall.

101.   Ede did not become aware of the Recall or the risk of explosion until he was notified of the Recall by an acquaintance in July or August of 2012.

102.   Ede contacted Kohler about the Recall and was informed by Kohler that he should contact Sloan.

103.   Ede then contacted Sloan to learn more about the Recall.  He was directed to turn off the water supply to his toilets immediately and told that Sloan would provide Repair Kits for the toilets.

104.   When Ede inquired about who was going to pay for the labor to install the Repair Kits, he was told that Sloan would not pay the cost of installing the Repair Kits.

105.   Ede has installed a large number of toilets with the Flushmate System. He found the installation of the Repair Kit to be beyond the skills of most homeowners.  He also learned that the Repair Kit could not be installed in his toilets without purchasing additional products, such as new water supply lines, that were not included in the "free" Repair Kit.

106.   Ede incurred nearly one thousand dollars in expenses for additional supplies and labor required to install the Repair Kits at his residences.

### iii.   Williams

107.   Williams owns a Flushmate Toilet manufactured by Gerber.

108.   Williams hired Rosenberg Plumbing to install a new toilet.  Rosenberg was recommended to her and had done previous work for her at her home. Williams knew Rosenberg Plumbing to be honest and reliable.  Williams told Rosenberg that she wanted a high-quality toilet that flushed well.  Williams trusted Rosenberg and requested Rosenberg select her toilet.

- 18 -

109.   Rosenberg selected a Flushmate Toilet.  Rosenberg informed Williams that it was a "good toilet" that would meet her needs.  The toilet was significantly more expensive than a traditional gravity-flush toilet.

110.   Had Rosenberg Plumbing informed Williams that there was any risk that the Flushmate Toilet would leak or explode, Williams never would have installed the Flushmate Toilet in her home.

111.   On or about July 26, 2012, Williams contacted Sloan about the Recall and received a Repair Kit.  Sloan refused to pay the cost of a plumber to install the Repair Kit.  Williams tried to install the Repair Kit but could not install it.  A plumber installed her Repair Kit.

### iv.   <u>Pritchard</u>

112.   Pritchard owns a Flushmate Toilet manufactured by Mansfield.

113.   Pritchard installed the Flushmate Toilet as part a Free Toilet Replacement Program in approximately 2008.  Under this program, residents exchanged their traditional gravity toilets for low-water consumption toilets paid for by Redwood City, California.  Redwood City officials gave Pritchard the option of the Flushmate Toilet or an alternative low-water consumption gravity toilet from another toilet manufacturer.

114.   At no time did any representative of Redwood City inform Pritchard that the Flushmate Toilet had a history of explosions or carried a risk of personal injury and property damage.

115.   Had Pritchard been aware that the Flushmate Toilet had a known risk of leaks and explosions, he never would have installed the Flushmate Toilet.

116.   Following the Recall, Pritchard contacted Sloan and obtained a Repair Kit.  Pritchard was unable to install the Repair Kit.

### v.   <u>Steiner</u>

117.   Steiner owns a Flushmate Toilet manufactured by Kohler.  She purchased her toilet on or about October 7, 2007, from Home Depot.

- 19 -

118.   At the time of her purchase, Steiner was looking to replace a gravity toilet in her home.  Partly because of her experience with her daughter's toilet, which flushed fast, Steiner went to Home Depot to find a toilet with an effective flushing mechanism to replace her older toilet.

119.   Steiner ordered a Flushmate Toilet manufactured by Kohler based on the recommendation of a Home Depot sales representative, who seemed to be very knowledgeable about toilets and the Flushmate Toilet in particular.  Steiner relied on Home Depot's judgment in selecting a toilet that would best suit her needs.

120.   Had Home Depot or its management or employees informed Steiner that there was any risk of the Flushmate Toilet leaking or exploding, Steiner never would have purchased the Flushmate Toilet for her home as there were other toilets available that did not carry that risk.

121.   Steiner became aware of the Recall when she received a Recall Notice in the mail in or about September 2012.  Steiner went online and obtained information concerning the Repair Kit being offered by Sloan.  Steiner soon realized that the Repair Kit was insufficient to remedy the defects in the Flushmate System.

122.   Steiner contacted Sloan and informed it that she would not accept the Repair Kit, requesting instead a replacement pressure vessel pursuant to the terms of Sloan's Express Warranty covering defects in the Flushmate System.  However, the Sloan representative informed Steiner that Sloan would not replace her Flushmate System and she would have to speak with a manager.

123.   After repeated requests, Sloan sent a licensed plumber to Steiner's residence to install the Repair Kit.  Now that the Repair Kit has been installed, the Flushmate Toilet no longer flushes effectively.  Sloan continues to deny Steiner's request to have the Flushmate System replaced.

124.   Steiner believes the Repair Kit does not remedy the defect in the Flushmate System and that her Flushmate Toilet remains prone to seam weld separation and leaking.

**I.     Flushmate Toilets Built by Manufacturer Defendants**

125.   During the Class Period, the Manufacturer Defendants manufactured and sold Flushmate Toilets.  These toilets include, without limitation:

     a.     American Standard: Cadet 16 ½" Elongated ADA Toilet, Model No. 2467.016, Cadet Elongated Front Toilet, Model No. 2462.016, Yorkville Elongated Front Toilet, Model No. 2876.016, and Glenwall Elongated Toilet, Model No. 2093.100;

     b.     Kohler: Highline Pressure Assist and Pressure Lite, Wellworth Pressure Assist and Pressure Lite, and Barrington Pressure Assist that flush 1.4 gallon and 1.6 gallon toilets;

     c.     Gerber: Maurice one-piece toilet (Model No. 21-012), Ultra-Flush™ Handicap Elongated Toilet (Model No. 21-318), Ultra-Flush™ Elongated Back Outlet Toilet (Model No. 21-310), Ultra-Flush™ Round Front Toilet (Model No. 21-302), and Ultra-Flush™ Elongated Front Toilet (Model No. 21-312);

     d.     Mansfield: QUANTUM™ Elongated Front, Back Outlet Toilet 149-123, QUANTUM™ Elongated Front Toilet 147-123, QUANTUM™ Round Front Toilet 146-123, and QUANTUM™ Elongated Front Smart-Height Toilet 148-123.

**V.     STATUTE OF LIMITATIONS**

126.   **Discovery Rule.**  The defective nature of the Flushmate System is latent and not perceptible to Plaintiffs and the Class.  Plaintiffs did not become aware that they had suffered losses caused by the defective Flushmate System until they were made aware of the Recall in the months following the issuance of the Recall Notice.

- 21 -

127.   **Fraudulent Concealment Tolling.**  Any applicable statutes of limitation have been tolled by Sloan's knowing and active concealment of facts as alleged herein.  Without any fault or lack of diligence on their part, Plaintiffs and the Class have been kept ignorant by Sloan of vital information essential to the pursuit of these claims.  Plaintiffs and the Class could not reasonably have discovered the problems associated with the Flushmate System on their own.

128.   **Estoppel.**  Sloan is estopped from relying on any statutes of limitation in defense of this action.  For the reasons described in paragraph 63, Sloan was under a continuous duty to disclose to Plaintiffs and the Class the true character, quality and nature of the Flushmate System, especially because the problems associated with the Flushmate System pose unreasonable safety risks.  Sloan knowingly and affirmatively misrepresented and actively concealed the true character, quality, and nature of the Flushmate System and the risk of explosions and leaks.  Plaintiffs and the Class reasonably relied upon Sloan's active concealment of these facts.  Had the true facts been disclosed, Plaintiffs and the Class would not have purchased any toilet with the Flushmate System.

## VI.   DAMAGES ALLEGATIONS AND MEASURES OF RESTITUTION

129.   As a result of the facts heretofore alleged, Plaintiffs and the Class have suffered actual loss in one or more of the following amounts:

a.   The difference in market value between Flushmate Toilets and toilets which are not defective.  Plaintiffs allege that this difference is the full price of the Flushmate Toilet.

b.   The cost of replacing the Flushmate Toilets or the Flushmate Systems, and any other amounts necessary to return Plaintiffs and the Class to the position they would have enjoyed had they not purchased Flushmate Toilets.

c.   The cost of hiring a licensed plumber or other third party to install the Repair Kit.

- 22 -

1079318.1

1   VII.   **CLASS ACTION ALLEGATIONS**

2        130.   Plaintiffs bring this action as a class action pursuant to Federal Rule of

3   Civil Procedure 23, on behalf of themselves and all others similarly situated

4   (the "Class").

5        131.   The Classes that Plaintiffs seek to represent in this action are defined

6   as follows:

7        **The Nationwide Purchaser Class**: All persons in the United States who

8        purchased toilets containing a Series 503 Flushmate® III Pressure-Assist

9        Flushing System manufactured from October 14, 1997 to February 29, 2008.

10            **The Nationwide Home Depot Purchaser Subclass**: All persons in

11            the United States who purchased from Home Depot, U.S.A., Inc.,

12            toilets containing a Series 503 Flushmate® III Pressure-Assist

13            Flushing System manufactured from October 14, 1997 to February 29,

14            2008.

15       **The California Recall Class**: All persons and entities in California who own

16       toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing

17       System manufactured from October 14, 1997 to February 29, 2008.

18            **The California Purchaser Subclass**: All persons in California who

19            purchased toilets containing a Series 503 Flushmate® III Pressure-

20            Assist Flushing System manufactured from October 14, 1997 to

21            February 29, 2008.

22            **The California Consumer Subclass**: All persons who purchased

23            toilets in California containing a Series 503 Flushmate® III Pressure-

24            Assist Flushing System manufactured from October 14, 1997 to

25            February 29, 2008 who are consumers within the meaning of the Song-

26            Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, and the

27            Consumer Legal Remedies Act, Cal. Civ. Code § 1761.

28

- 23 -

132.   The following persons are excluded from the Class: (1) all Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the Class; and (3) the judge(s) to whom this case is assigned and any immediate family members thereof.

133.   Plaintiffs reserve the right to modify or amend the definition of the Class as appropriate.

134.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims and because this case meets the requirements of Federal Rule of Civil Procedure 23.

135.   **Numerosity Under Rule 23(a)(1)**.  The members of the Class are so numerous that individual joinder of all the members is impracticable.  There are hundreds of thousands of Class members who have been damaged by Defendants' conduct.

136.   **Commonality and Predominance Under Rule 23(a)(2) and (b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common questions include, without limitation:

a.     Whether Sloan violated California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*, by, among other things, engaging in unfair, unlawful, or fraudulent practices;

b.     Whether Sloan violated California's Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.*, by falsely advertising that its Flushmate System was of a certain standard, quality, and grade when in fact, it was not;

c.     Whether the Flushmate System is subject to premature failure in advance of its useful life, and not suitable for use as a long-term plumbing product;

- 24 -

1           d.     Whether Sloan knew or should have known that the Flushmate

2   System was defective;

3           e.     Whether the Flushmate System involved an unreasonable safety

4   risk to owners/users;

5           f.     Whether Sloan had a duty to disclose that toilets containing the

6   Flushmate System had exploded and caused property damage;

7           g.     Whether Sloan's false representations and concealment of the

8   defective nature of the Flushmate System were done with the intent to deceive

9   Plaintiffs and the Class;

10          h.     Whether Sloan's false representations and concealment of the

11  defective nature of the Flushmate System were done with the intent to induce

12  Plaintiffs and the Class to rely upon them;

13          i.     Whether Sloan breached its express warranties to Plaintiffs and

14  the Class;

15          j.     Whether Defendants breached their implied warranties to

16  Plaintiffs and the Class;

17          k.     Whether Plaintiffs and the Class are entitled to equitable relief,

18  including restitution; and

19          l.     Whether Plaintiffs and the Class are entitled to restitution or

20  damages and, if so, in what amount;

21      137.  **Typicality Under Rule 23(a)(3)**.  The named Plaintiffs' claims are

22  typical of the claims of the Class because, among other things, Plaintiffs, like all

23  Class members, purchased and/or own Flushmate Toilets.  The uniformly defective

24  nature of the Flushmate System renders each class member's claims, legal theory,

25  and injury common and typical.

26      138.  **Adequacy of Representation Under Rule 23(a)(4)**.  Plaintiffs are

27  adequate representatives of the Class because their interests do not conflict with the

28  interests of the proposed Class.  Plaintiffs have retained counsel competent and

1   experienced in complex class actions involving building products and product

2   liability, and intend to prosecute this action vigorously.  The interests of the Class

3   will be fairly and adequately protected by Plaintiffs and their counsel.

4       139.   **Superiority Under Rule 23(b)(3)**.  A class action is superior to all

5   other available means for the fair and efficient adjudication of this controversy in

6   that:

7           a.    The prosecution of separate actions by individual members of

8   the Class would create a foreseeable risk of inconsistent or varying adjudications,

9   which would establish incompatible results and standards for Defendants;

10          b.    Adjudications with respect to individual members of the Class

11  would, as a practical matter, be dispositive of the interests of the other members not

12  parties to the individual adjudications or would substantially impair or impede their

13  ability to protect their own separate interests;

14          c.    Class action treatment avoids the waste and duplication inherent

15  in potentially thousands of individual actions and conserves the resources of the

16  courts; and

17      140.   The claims of the individual class members are relatively small

18  compared to the burden and expense that would be required to litigate their claims

19  against Defendants individually, so it would be impracticable for the members of

20  the Class to seek redress for Defendants' wrongful conduct.  Even if the members

21  of the Class could afford individual litigation, the court system could not.

22  Individualized litigation creates a potential for inconsistent or contradictory

23  judgments, and increases the delay and expense to all parties and the court system.

24  By contrast, the class action device presents far fewer management difficulties, and

25  provides the benefits of single adjudication, economy of scale, and comprehensive

26  supervision by a single court.

27      141.   **Class Notice (Central District Local Rule 23-2.2(g))**.  Plaintiffs

28  cannot be certain of the form and manner of class notice they will propose until the

class is finally defined and some discovery concerning the identity of Class members is undertaken.  Based on the experience of their counsel in previous cases, however, Plaintiffs anticipate that notice by mail will be given to all Class members who can be identified specifically and that this notice will be supplemented by notice published in appropriate periodicals, notice published on the Internet and by press releases and similar communications to relevant industry and trade groups. Among other things, notice will be given to all retail or wholesale outlets in the United States to which the Manufacturer Defendants sold their toilets, in addition to plumbers and contractors.  The cost of notice, whether after class certification, settlement, or trial, should be borne by Defendants.

## VIII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Fraudulent Concealment / Intentional Misrepresentation)
### (Against Sloan)

142.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

143.   Sloan represented falsely that the Flushmate System was free of defects in material and workmanship.

144.   Sloan knew that this representation was false at the time it was made.

145.   Sloan knowingly concealed and intentionally failed to disclose to Plaintiffs and the Nationwide Purchaser Class the fact that the Flushmate System was deficient and susceptible to leaks and explosions which posed an unreasonable safety risk.

146.   For the reasons set forth in paragraph 63, Sloan owed a duty to Plaintiffs and the Nationwide Purchaser Class to disclose these material facts about the Flushmate System.

147.   In making the misrepresentations and omissions alleged herein, Sloan intended to deceive Plaintiffs and the members of the Nationwide Purchaser Class.

- 27 -

148.    In making the misrepresentations and omissions alleged herein, Sloan intended that Plaintiffs and the members of the Nationwide Purchaser Class rely on such misrepresentations and omissions.

149.    Plaintiffs and the members of the Nationwide Purchaser Class were unaware of the falsity of the representations and of the omitted facts.  Plaintiffs and the members of the Nationwide Purchaser Class reasonably and justifiably relied to their detriment upon such misrepresentations and omissions.

150.    Had Plaintiffs and the members of the Nationwide Purchaser Class been aware of the true state of affairs concerning the Flushmate Toilets, they would not have purchased any Flushmate Toilets.

151.    As a proximate result of Sloan's material misrepresentations and omissions, Plaintiffs and the members of the Nationwide Purchaser Class have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Violation of the Unfair Competition Law)
### (Against Sloan)

152.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

153.    Pursuant to Bus. & Prof. Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

154.    Sloan's actions alleged herein in connection with the sale of the Flushmate System and the Recall constitute unfair, deceptive, fraudulent, and unlawful practices committed in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

155.    Sloan's conduct was unlawful because Sloan violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5) and (a)(7), the Song-Beverly

- 28 -

1    Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1793.2, and the Magnuson-

2    Moss Warranty Act, 15 U.S.C. §§ 2301(6), 2301(7), and 2304(d)(1).

3        156.   Sloan's conduct was unfair because Sloan acted unscrupulously in a

4    manner that is substantially injurious to consumers.  In particular: (1) Sloan

5    concealed information concerning the danger posed by its defective product and

6    continued to sell the product even after it was made aware of the danger; (2) notice

7    of the Recall was inadequate and therefore failed to disclose adequately the risks

8    posed by the defective Flushmate System to the California Recall Class; (3) the

9    Repair Kit does not address the defect adequately; (4) offering the Repair Kit lulls

10   the members of the California Recall Class into a false sense of security by

11   promising to protect them from the defects in the Flushmate System when it does

12   not; (5) Sloan requires the members of the California Recall Class to install the

13   Repair Kit at their own expense; and (6) since the Recall Notice describes only

14   Flushmate Systems manufactured in a particular time frame, and some members of

15   the California Recall Class purchased Flushmate Toilets covered by the Recall

16   months or years after the manufacture of the defective Flushmate Systems,

17   members of the California Recall Class were misled concerning whether their

18   Flushmate Toilets are affected by the Recall.

19       157.   All of this conduct of Sloan has no utility or countervailing benefit,

20   other than to attempt to avoid liability.

21       158.   Plaintiffs and the members of the California Recall Class could not

22   reasonably have avoided injury as a result of Sloan's unfair conduct.

23       159.   Sloan's conduct was also fraudulent.  Members of the California

24   public were certain to be deceived because Sloan failed to disclose the Flushmate

25   System's known defects, history of exploding and the related risks to safety and

26   property.  A reasonable customer would not expect a toilet to explode or leak under

27   any circumstances and would expect that the toilet would last for decades.

28   Plaintiffs and the members of the California Recall Class would not have purchased

1   any Flushmate Toilet but for the fraudulent, deceptive and unlawful conduct of

2   Sloan.

3        160.   Sloan's conduct in connection with the Recall is also fraudulent in

4   that: (1) although Sloan advises owners that the Repair Kit repairs the defect in the

5   Flushmate System, Sloan knows that it does not; (2) the Recall lulls members of the

6   California Recall Class into a false sense of security by promising to protect them

7   from the defects in the Flushmate System when it does not; (3) the Recall Notice

8   states that the Repair Kit is "free" when it is not because members of the California

9   Recall Class cannot install the Repair Kit and must incur expense having the Repair

10  Kit installed professionally; and (4) since the Recall Notice describes only

11  Flushmate Systems manufactured in a particular time frame, and some members of

12  the California Recall Class purchased Flushmate Toilets covered by the Recall

13  months or years after the manufacture of the defective Flushmate Systems,

14  members of the California Recall Class were misled concerning whether their

15  Flushmate Toilets are affected by the Recall.

16       161.   As a result of Sloan's fraudulent conduct in connection with the

17  Recall, members of the California Recall Class have incurred risk and expense that

18  they should not have incurred, have failed to take action to replace their defective

19  toilets and have not insisted that Sloan replace either the defective Flushmate

20  System or the Flushmate Toilet into which it was installed.

21       162.   All of Sloan's unfair conduct, failures to disclose, and

22  misrepresentations alleged herein occurred in the course of Sloan's business and

23  were part of a pattern or generalized course of conduct.

24       163.   Sloan's deceptive, unfair, fraudulent, and unlawful conduct alleged

25  herein was specifically designed to and did induce Plaintiffs and members of the

26  California Recall Class or their agents to purchase toilets with the Flushmate

27  System for use and installation in their homes and other structures.  Further, such

28  conduct was designed to and either has caused or will cause consumers to be

- 30 -

unaware of the Recall, to expend money to install the inadequate Repair Kit, to expend additional sums to remedy the defects not cured by the Repair Kit, and to defer effective action to end the risk of personal injury associated with the defective Repair Kit.

164.   As a direct and proximate cause of Sloan's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the California Recall Class have suffered injury-in-fact and have lost money or property.

### THIRD CLAIM FOR RELIEF
**(Consumer Legal Remedies Act)**
**(Against Sloan)**

165.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

166.   Flushmate Systems are "goods" as defined by Civil Code § 1761(a).

167.   Sloan is a "person" as defined by Civil Code § 1761(c).

168.   Plaintiffs Ede, Williams and Pritchard, and the members of the California Consumer Subclass, purchased Flushmate Toilets for personal, family and household purposes and are therefore "consumers" as defined by Civil Code § 1761(d).

169.   Such purchases by Plaintiffs and the California Consumer Subclass are "transactions" as defined by Civil Code § 1761(e).

170.   Under the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1770, *et seq.*, the following are unfair methods of competition and unfair or deceptive acts or practices:

a.   "Representing that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Civil Code § 1770(a)(5).

- 31 -

b.   "Representing that goods . . . are of a particular standard, quality, or grade, . . . if they are of another."  Civil Code § 1770(a)(7).

171.   For the reasons stated in paragraph 63, Sloan owed a duty to Plaintiffs and the California Consumer Subclass to disclose the defects in, and the unreasonable safety risks associated with, the Flushmate System.

172.   The falsity of the Express Warranty and the defects and unreasonable safety risks concealed by Sloan are material, because a reasonable consumer would consider them to be important in deciding whether or not to purchase a Flushmate Toilet.  A reasonable customer would not expect a toilet to explode under any circumstances and would expect it to last for many years.

173.   Had Plaintiffs and the members of the California Consumer Subclass known the facts Sloan concealed or that the Express Warranty was false, they would not have purchased a Flushmate Toilet.

174.   By making the Express Warranty, failing to disclose and concealing the defects in the Flushmate System, and thereby causing physical injury and property damage, Sloan engaged in unfair competition and unfair and deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7).

175.   Sloan's unfair and deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk to the public.

176.   As a proximate result of Sloan's unfair and deceptive acts and practices, Plaintiffs and the members of the California Consumer Subclass have been harmed.  Plaintiffs and the members of the California Consumer Subclass seek actual damages, punitive damages, and attorneys' fees and costs according to proof at trial.

177.   On August 24, 2012, Ede served Sloan with notice of its violation of the CLRA pursuant to Civil Code § 1782 by certified mail to its agent for service of

- 32 -

process and its corporate offices.  A copy of this notice is attached hereto as **Exhibit J**.  Sloan failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of this notice.

178.   On August 24, 2012, Williams served Sloan with notice of its violation of the CLRA pursuant to Civil Code § 1782 by certified mail to its agent for service of process and its corporate offices.  A copy of this notice is attached hereto as **Exhibit K**.  Sloan failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of this notice.

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty)
### (Against Sloan)

179.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

180.   In connection with the sale of Flushmate System, Sloan made the Express Warranty.

181.   Sloan promised in the Warranty Document "to replace any part of this product that proves, upon our inspection . . . to be defective in material or workmanship."

182.   Sloan breached the Express Warranty by selling the defective Flushmate System.  Sloan breached the terms of the Warranty Document by, *inter alia*, refusing to provide and install replacement pressure vessels to Plaintiffs and the Nationwide Purchaser Class.

183.   As a result of Sloan's breaches, Plaintiffs and the Nationwide Purchaser Class have been damaged in an amount to be proven at trial.

184.   Sloan received timely notice of the breach of warranty alleged herein by reason of Plaintiffs Ede, Williams, and Steiner's notice to it and its own knowledge of the defects in Flushmate System.

185.   In addition, notice of the breach of warranty to Sloan was – and remains – futile.  Accordingly, persons who have not given notice under the terms of the Express Warranty should not now be required to do so.  Sloan is clearly on notice of the existence of the alleged defect in light of the Recall.  The purpose of notice is to give Sloan the opportunity to repair and replace the defective Flushmate System.  By the Recall, Sloan has acknowledged that the Flushmate System has a defect that necessitates a retrofit and has instructed owners of the Flushmate System to cease using their Flushmate Toilets until it is retrofitted.  Despite the Recall and despite having received notice of the defect from Plaintiffs and other members of the Nationwide Purchaser Class, Sloan has consistently refused to provide a sufficient retrofit or to pay the cost associated with the retrofit.

186.   There is, therefore, no genuine purpose in providing additional notice to Sloan and, insofar as such notice is determined to be a condition to enforcement of the Express Warranty, performance of that condition should be excused as futile.

## FIFTH CLAIM FOR RELIEF
**(Breach of Express Warranty Under Song-Beverly Consumer Warranty Act)**
**(Against Sloan)**

187.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

188.   Flushmate Systems are "consumer goods" within the meaning of Civil Code § 1791(a).

189.   Sloan is a "manufacturer" within the meaning of Civil Code § 1791(j).

190.   Plaintiffs Ede, Williams and Pritchard, and the members of the California Consumer Subclass, purchased Flushmate Toilets within the State of California.

191.   Sloan expressly made the Express Warranty and agreed that it would repair or replace any defective products.

- 34 -

192.   In violation of Civil Code § 1793.2, Sloan breached the Express Warranty by selling Flushmate Systems that were defective and refusing to replace the toilets and/or the defective Flushmate Systems which cannot be repaired by the installation of the Repair Kit.

193.   As a result of Sloan's breach of the Express Warranties, Plaintiffs and the California Consumer Subclass have been damaged in an amount to be proven at trial and are entitled to relief under the statute.

## SIXTH CLAIM FOR RELIEF
### (Breach of Express Warranty – Magnuson-Moss Warranty Act)
### (Against Sloan)

194.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

195.   The Flushmate System is a consumer product as defined in 15 U.S.C. § 2301(1).

196.   Plaintiffs and the members of the Nationwide Purchaser Class are consumers as defined in 15 U.S.C. § 2301(3).

197.   Sloan is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

198.   Sloan provided Plaintiffs and the Nationwide Purchaser Class with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

199.   Sloan has breached the Express Warranty by refusing to honor the express warranty to replace, free of charge, any defective pressure vessel.

200.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover

- 35 -

1  reasonable incidental expenses which are so incurred in any action against the

2  warrantor."

3      201.  Despite repeated demands by Plaintiffs and members of the

4  Nationwide Purchaser Class that Sloan pay the labor costs and incidental expenses

5  associated with repairing or replacing the Flushmate System, and with installing the

6  Repair Kit, Sloan has refused to do so.  Sloan's refusal to provide an adequate

7  repair or replacement and to pay for its installation violates 15 U.S.C. § 2304(d)(1).

8      202.  Sloan was afforded a reasonable opportunity to cure its breach of the

9  Express Warranty, but failed to do so.

10     203.  Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be

11  provided until after Plaintiffs have been appointed Class Representatives.

12     204.  As a direct and proximate result of Sloan's breach of its express

13  written warranties, Plaintiffs and the members of the Nationwide Purchaser Class

14  have been damaged in an amount to be proven at trial.

15

16               **SEVENTH CLAIM FOR RELIEF**
    **(Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)**

17  **(Against Sloan, American Standard, Kohler, Gerber, and Mansfield)**

18     205.  Plaintiffs incorporate by reference each allegation set forth in the

19  preceding paragraphs.

20     206.  Under the Song-Beverly Consumer Warranty Act, Civ. Code § 1792,

21  *et seq.*, every sale of consumer goods in the State of California is accompanied by

22  both a manufacturer's and a retail seller's implied warranty that the goods are

23  merchantable (the "Implied Warranty").

24     207.  Sloan and the Manufacturer Defendants breached the Implied

25  Warranty by selling Flushmate Systems and Flushmate Toilets that were not of

26  merchantable quality and that failed to perform the tasks for which they were

27  intended.

28

- 36 -

208. Flushmate Toilets are not of a merchantable quality because the plastic vessel used in the pressure-assisted flushing system is defective, dangerous, and unusable, and poses a known, objective, identifiable safety risk to Plaintiffs and the California Consumer Subclass.  In particular, the Flushmate System can leak or burst at or near the vessel weld seam releasing stored pressure and causing the toilet tank lid to blow off and shatter the tank.  As a result, the Flushmate System is not fit for ordinary use as a flushing mechanism.

209. Flushmate Systems and Flushmate Toilets are "consumer goods" within the meaning of the Song-Beverly statute.

210. Sloan and the Manufacturer Defendants are "manufacturers" within the meaning of the statute.

211. Plaintiffs Ede, Williams and Pritchard, and the members of the California Consumer Subclass, purchased toilets with a Flushmate System in the State of California.

212. Plaintiffs and the California Consumer Subclass can enforce the Implied Warranty whether or not they are in privity with any Defendant.  Civil Code § 1792 provides that "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Civil Code § 1792 does not require privity of contract to enforce the Implied Warranty.  Plaintiffs and the California Consumer Subclass can also enforce the Implied Warranty because they are the intended beneficiaries of the Implied Warranty that Sloan made to the Manufacturer Defendants when it sold them Flushmate Systems.

213. As a direct and proximate result of Defendants' breaches of the statutory Implied Warranty, Plaintiffs and the members of the California Consumer Subclass have been damaged in an amount to be proven at trial.

1079318.1

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty)**
**(Against Home Depot)**

214.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

215.   When it sold Flushmate Toilets, Home Depot extended an implied warranty to the members of the Nationwide Home Depot Purchaser Subclass that the toilet products were merchantable and fit for the ordinary purpose for which such products were sold.  Persons who purchased a toilet from Home Depot are entitled to the benefit of their bargain: a safe toilet that will not leak or explode.

216.   Home Depot breached this implied warranty in that Flushmate Toilets are (1) not fit for ordinary use, and (2) not of a merchantable quality.

217.   The Flushmate Toilets that Home Depot sold created an unreasonable safety risk.  These sales transactions were for products that need to be repaired or replaced.

218.   As a direct and proximate result of Home Depot's breach of the implied warranty of merchantability, Plaintiffs and the members of the Nationwide Home Depot Purchaser Subclass have been damaged in an amount to be proven at trial.

**NINTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty – Magnuson-Moss Warranty Act)**
**(Against Sloan and Home Depot)**

219.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

220.   Plaintiffs and the members of the Nationwide Purchaser Class and Nationwide Home Depot Purchaser Subclass are consumers as defined in 15 U.S.C. § 2301(3).

1079318.1

221. Defendant Sloan is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

222. Defendant Home Depot is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

223. Flushmate Systems and Flushmate Toilets are consumer products as defined in 15 U.S.C. § 2301(1).

224. Sloan extended an implied warranty to Plaintiffs and the members of the Nationwide Purchaser Class by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in Flushmate Systems.

225. Sloan breached this implied warranty by selling Flushmate Systems that were neither merchantable nor fit for their intended purpose.

226. Home Depot extended an implied warranty to Steiner and the members of the Nationwide Home Depot Purchaser Subclass by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in Flushmate Toilets.

227. Home Depot breached this implied warranty by selling Flushmate Toilets that were neither merchantable nor fit for their intended purpose.

228. Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives.

229. Plaintiff Steiner notified Home Depot of its breach of warranty on October 5, 2012. A true and correct copy of the letter Steiner sent Home Depot is attached as **Exhibit L**.

230. As a direct and proximate result of Sloan and Home Depot's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs, the Nationwide Purchaser Class, and the Nationwide Home Depot Purchaser Subclass have been damaged in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TENTH CLAIM FOR RELIEF
### (**Negligence in Administering Recall, CACI 1223**)
### (**Against Sloan**)

231.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

232.   Sloan acted negligently in its administration of the Recall by: (1) failing to retrofit the Flushmate System and to pay the full cost of the retrofit; and (2) providing inadequate notice of the Recall.  As a result of this negligence, some Class members are still unaware of the Recall, and those that are aware of it are still exposed to an unreasonable risk of personal injury and property damage.

233.   Sloan knew or reasonably should have known that Flushmate Toilets have a dangerous propensity to explode or leak when used in a reasonably foreseeable manner.

234.   In administering the Recall, Sloan did not do everything reasonably within its power to prevent injury to Plaintiffs and the California Recall Class resulting from the defect in the Flushmate System.

235.   First, Sloan failed to publicize the Recall in a manner sufficient to make Plaintiffs and the California Recall Class aware of it.  For example, Ede – a plumbing contractor – did not become aware of the Recall until he was advised of it by an acquaintance.  A reasonable manufacturer who intended to ameliorate the safety risks posed by its products would have ensured that all owners of the product receive notice of the Recall.

236.   Nor does the Recall Notice disclose that Flushmate Systems manufactured during the time period covered by the Recall might have been sold months or even years later.  As a result, persons who acquired Flushmate Toilets after the time period covered by the Recall were misled into believing that their toilets are not included in the Recall even though they are.

237.   Second, Sloan has neglected to retrofit Flushmate Toilets fully and adequately.  The Repair Kit does not correct the defect in the Flushmate System in that it fails to prevent the vessel weld from separating, and hence fails to prevent leaks and/or explosions.  Even if installed as directed, neither the U-Band nor the external regulator included in the Repair Kit forecloses the possibility that the toilet will burst, leak, and/or cause floods, resulting in damage to persons and/or property.  Toilets in which the Repair Kit has been installed remain unsafe.

238.   The Repair Kit cannot even be installed in many of the defective Flushmate Toilets on account of limited space, the shape of the toilet, and/or the length of the existing water line.

239.   Sloan knew or should have known that its Repair Kit is inadequate to repair the dangerous flushing mechanism and cannot even be installed in some of the defective toilets.  There is a foreseeable, continuing risk of harm to owners who install this retrofit.

240.   A reasonable manufacturer under the same or similar circumstances would have fully retrofitted the unsafe toilets, by, for example, replacing the defective tanks at no cost to the owner.

241.   Although a plumber is usually required to install Sloan's Repair Kit in the toilets for which installation is possible, Sloan does not and will not reimburse toilet owners for the services of a plumber.

242.   A reasonable manufacturer under the same or similar circumstances would have paid for all procedures necessary to make each toilet safe.

243.   Plaintiffs and the California Recall Class suffered harm as a result of Sloan's negligent failure to give proper notice of the Recall and retrofit the defective Flushmate System, and its insistence that Plaintiffs and the California Recall Class bear the cost of making such toilets safe.  As a result of its inadequate recall campaign, Sloan has unreasonably exposed Plaintiffs and the California

1079318.1

1  Recall Class to a continuing risk of injury and has unreasonably transferred to toilet

2  owners the cost and burden of ensuring that the Flushmate Toilets are safe.

3      244.  Sloan's failure to provide adequate notice of the Recall and to retrofit

4  effectively the defective Flushmate System was a substantial and foreseeable cause

5  of harm to Plaintiffs and the members of the California Recall Class.

6                    **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly

8  situated, pray that the Court certify the Classes as defined herein, enter judgment

9  against Defendants and in favor of Plaintiffs and the Class, and award the following

10 relief:

11                    **(Against All Defendants)**

12  1.   Actual damages according to proof;

13  2.   Costs of suit;

14  3.   Costs of notice to the Class; and

15  4.   All other relief to which Plaintiffs and the Class may be entitled at law

16 or in equity and which the Court deems appropriate.

17                    **(Against Sloan)**

18  5.   Restitution of all sums paid by Plaintiffs and the Class for the

19 Flushmate System;

20  6.   An injunction:

21      a.   Requiring Sloan to give full and fair notice of the Recall

22 sufficient to ensure the receipt of such notice by all consumers entitled to benefits

23 thereunder; and

24      b.   To provide and pay for an effective retrofit of the defects in the

25 Flushmate System;

26  7.   Punitive damages as provided by the law;

27  8.   Pre-judgment interest as allowed by law; and

28  9.   Attorneys' fees.

1

2    Dated:    February 7, 2013              Respectfully submitted,

3                                           BIRKA-WHITE LAW OFFICES

4

5                                           By: /s/ David M. Birka-White

6                                               DAVID M. BIRKA-WHITE
                                                Attorneys for Plaintiffs
7                                               *United Desert Charities, Fred Ede III,*
                                                *Emily Williams, Bruce Pritchard, and*
8                                               *Jean Steiner*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 43 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial.

Dated:     February 7, 2013

Respectfully submitted,

BIRKA-WHITE LAW OFFICES


By*: /s/ David M. Birka-White*

DAVID M. BIRKA-WHITE
Attorneys for Plaintiffs
*United Desert Charities, Fred Ede III, Emily Williams, Bruce Pritchard, and Jean Steiner*

- 44 -

# EXHIBIT A







# EXHIBIT B

This section is designed to provide you with current information regarding the overall performance of your Flushmate unit. Our number one concern is the quality of our product and your over all satisfaction. If you are having a problem with your unit please see the Owner's Manual section in the Help Area. Otherwise the topics listed below identify specific conditions regarding the Flushmate system. If you do not see the condition listed that you are experiencing please email your concern to Customer Service.

| Specific Conditions: | Issue Date: |
|---|---|
| Flushmate Groaning Noise During Flushing | July 24, 2000 |
| Flushmate II and III Vessel Weld Leak or Separation | July 24, 2000 |
| Flushmate III Lower Supply Shank Leak | June 19, 2000 |

.



©1999 Sloan FLUSHMATE®
to contact webmaster: webmaster@flushmate.com

*FLUSHMATE® II and III VESSEL WELD LEAK OR SEPARATION - JULY 24, 2000*

### Description of the Problem

- A very small number of Flushmate II and III units have developed a leak at, or separation of, the joint between the upper and lower vessel halves.
- The leak is in the form of a fine stream originating at the flange between the vessel halves, sometimes accompanied by a hissing noise.
- The separation is accompanied by the rapid release of the pressurized water contained in the vessel.

### Affected Product

- The affected Flushmate II products were manufactured between April 1997 and July 1997.
- The affected Flushmate III products were manufactured between January 1998 and April 1998.

### Immediate Action to be Taken

Sloan Flushmate recommends the replacement of the unit to assure proper function of the unit and avoid damage to the toilet fixture, any collateral damage, or the possibility of personal injury.

- If there is evidence of water leaking from the weld joint, immediately turn off the water supply to the toilet and flush it. Contact Flushmate Consumer Service or call 1-800-533-3460 for support.
- Complete the product serial number inquiry as described below. Replacement of affected product will be coordinated by the Flushmate Consumer Service Department.

### Support Provided by FLUSHMATE

- All contacts with Flushmate regarding this advisory should be through Consumer Service or call 1-800-533-3460.
- Flushmate will provide the replacement Flushmate II or III at no charge.

If you own a Flushmate unit and it resembles either of the two units shown below and you wish to check the unit's serial number(s) to see if it falls within the affected range please click on the unit that best resembles your Flushmate unit.



*FLUSHMATE* II



*FLUSHMATE* III

If you have any questions regarding this notice please email us at info@flushmate.com or call: (800) 533-3450.

# EXHIBIT C

SEE FLUSHMATE III
RECALL 2012

*Product Advisory*

## FLUSHMATE® II and III VESSEL WELD LEAK OR SEPARATION

July 24, 2000

REV. JUNE 31, 2003

If you own a Flushmate unit and it resembles either of the two units shown below and you wish to check the unit's serial number(s) to see if it falls within the affected range, please click on the unit that best resembles your Flushmate unit.



*FLUSHMATE* II



*FLUSHMATE* III

### Description of the Problem

- A very small number of Flushmate II and III units have developed a leak at, or separation of, the joint between the upper and lower vessel halves.
- The leak is in the form of a fine stream originating at the flange between the vessel halves, sometimes accompanied by a hissing noise.
- The separation is accompanied by the rapid release of the pressurized water contained in the vessel.

### Affected Product

- The affected Flushmate II and Flushmate III products were manufactured in limited production runs in 1997 and 1998. If you think that you own either of these units, click on the unit above that best resembles your Flushmate unit.
- The affected Flushmate III products were manufactured between January 1998 and April 1998 and the individual days of May 4, 1998 and May 13, 1998. As a precautionary measure, the limited number of units produced in 1997 will also be removed from service.

### Immediate Action to be Taken

Flushmate recommends the replacement of the unit to assure proper function of the unit and avoid damage to the toilet fixture, any collateral damage, or the possibility of personal injury.

- If there is evidence of water leaking from the weld joint, immediately turn off the water supply to the toilet and flush it. Contact Flushmate Consumer Service or call 1-800-533-3460 for support.
- Complete the product serial number inquiry as described below. Replacement of affected product will be coordinated by the Flushmate Consumer Service Department.

### Support Provided by FLUSHMATE

- All contacts with Flushmate regarding this advisory should be through Consumer Service or call 1-800-533-3460.
- Flushmate will provide the replacement Flushmate II or III at no charge.

If you have any questions regarding this notice please call: (800) 533-3450.

# EXHIBIT D



HOME

**FLUSHMATE®**



**FLUSHMATE®**
Pressure Assist Toilet Operating System

How It Works

See It Work

Benefits

Models

Where To Buy

Help Area

Document Library

Press Room

Testimonials

Warranty / Registration

Product Advisory

Installation

Contacts

## PERFORMANCE, WATER CONSERVATION, QUALITY

The move toward water conservation has forever altered toilet performance. People continue to use old buying practices when selecting a toilet and become dissatisfied when their expectations are not met.

**Sloan FLUSHMATE® pressure-assist technology offers the only true high-performance, low consumption alternative** to meet consumer expectations. This is why every leading toilet manufacturer offers a toilet with Sloan FLUSHMATE® inside. It's also why you'll find FLUSHMATE® inside low consumption toilets in virtually every market, from hotels to schools to commercial buildings and in your home.

The FLUSHMATE® Pressure-Assist vessel is a component inside of a specially designed toilet that harnesses the pressure from the water supply line to provide the energy needed to complete the flush. **The FLUSHMATE® Pressure-Assist vessel cannot be retrofitted into a standard, gravity-fed toilet.**

In study after study toilets with FLUSHMATE® inside emerge as the clear winner in water-closet performance.



### Featured Installation of the Month



## Homewood Suites®, Landsdale PA

By installing 1-gallon-per-flush FLUSHMATE-equipped toilets at the Homewood Suites® in Landsdale, PA, owner Doug McBrearty says he was able to expand his hotel, which was made possible by the water conservation directly tied to his upgraded bathrooms. "I'll never buy anything but these," McBrearty says. "Water conservation is up and maintenance is down & both of these factors have exceeded planned results." - more info



FLUSHMATE®

A Division of Sloan Valve Company

©2003 Sloan *FLUSHMATE®*
to contact webmaster: webmaster@flushmate.com

Home | How It Works | See It Work | Benefits | Models | Where To Buy | Help Area
Document Library | Pressroom | Testimonials | Flushmate Warranty | Product Advisory | Installation | Contacts

# EXHIBIT E







# NEWS from CPSC and HC



Health Canada
www.hc-sc.gc.ca

U.S. Consumer Product
Safety Commission
www.cpsc.gov

---

FOR IMMEDIATE RELEASE
June 21, 2012
Release #12-201

**Firm's Recall Hotline: (800) 303-5123**
CPSC Recall Hotline: (800) 638-2772
CPSC Media Contact: (301) 504-7908
HC Media Contact: (613) 957-2983

## Flushmate Recalls Flushmate® III Pressure-Assisted Flushing System Due to Impact and Laceration Hazards

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission and Health Canada, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed. It is illegal to resell or attempt to resell a recalled consumer product.

**Name of Product:** Flushmate® III Pressure-Assist Flushing System

**Units:** About 2,330,600 in the U.S. and 9,400 in Canada

**Manufacturer:** Flushmate, of New Hudson, Mich., a division of Sloan Valve Company

**Hazard:** The system can burst at or near the vessel weld seam releasing stored pressure. This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage.

**Incidents/Injuries:** Flushmate has received 304 reports of the product bursting, resulting in property damage and 14 impact or laceration injuries.

**Description:** This recall is for Series 503 Flushmate® III Pressure Assist flushing systems installed inside toilet tanks. The recalled systems were manufactured from October 1997 to February 2008. The units are rectangular, black, two-piece vessels made of injection molded plastic. The date code/serial number is 16 characters long and is located on the label on the top of the Flushmate III. The first six numerals of the serial number are the date code. The date code range for this recall begins with 101497 (October 14, 1997) and continues through 022908 (February 29, 2008).

**Sold at:** The Home Depot and Lowe's stores, distributors and plumbing contractors nationwide for about $108, and sold to toilet manufacturers including American Standard, Crane, Eljer, Gerber, Kohler, Mansfield and St. Thomas.

**Manufactured in:** United States

**Remedy:** Consumers should immediately turn off the water supply to the recalled Flushmate III unit and stop using the system. Consumers should contact the firm to determine if their Flushmate III serial number is included in the recall and

to request a free repair kit.

**Consumer Contact:** For more information, contact Flushmate toll-free at (800) 303-5123 between 8 a.m. and 4:30 p.m. ET Monday through Friday or visit the firm's website at www.flushmate.com and http://recall.flushmate.com

**Note:** Health Canada's press release is available at http://cpsr-rspc.hc-sc.gc.ca/PR-RP/recall-retrait-eng.jsp?re_id=1633





---

The U.S. Consumer Product Safety Commission (CPSC) is still interested in receiving incident or injury reports that are either directly related to this product recall or involve a different hazard with the same product. Please tell us about your experience with the product on SaferProducts.gov

CPSC is charged with protecting the public from unreasonable risks of injury or death associated with the use of the thousands of consumer products under the agency's jurisdiction. Deaths, injuries, and property damage from consumer product incidents cost the nation more than $900 billion annually. CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed to a decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

Under federal law, it is illegal to attempt to sell or resell this or any other recalled product.

To report a dangerous product or a product-related injury, go online to: SaferProducts.gov, call CPSC's Hotline at (800) 638-2772 or teletypewriter at (301) 595-7054 for the hearing and speech impaired. Consumers can obtain this news release and product safety information at www.cpsc.gov. To join a free e-mail subscription list, please go to www.cpsc.gov/cpsclist.aspx.

# EXHIBIT F

# FLUSHMATE®

New Hudson, MI

# *FLUSHMATE® III* Repair Kit

## Things to know before you begin:



**WARNING**

### READ BEFORE YOU START

- To minimize the possibility for injury and property damage due to *FLUSHMATE III* unit separation, it is recommended that you install the Repair Kit IMMEDIATELY.
- This Repair Kit has been sent to you to repair your recalled *FLUSHMATE III* unit produced between October 14, 1997 and February 29, 2008.
- The repair should take less than 20 minutes.
- Read all instructions on both sides of this instruction sheet prior to starting the installation.

**IMPORTANT: TURN OFF THE WATER AND THEN FLUSH THE TOILET PRIOR TO INSTALLING THE REPAIR KIT.**

**If you have a right hand toilet, which means the flush mechanism is on the right side of the tank...**



**If you have a rigid supply line/tube and experience difficulty attaching the EXTERNAL REGULATOR (You may be required to install a flexible supply line/tube)...**



RIGID SUPPLY
LINE/TUBE

**... please contact *FLUSHMATE* Consumer Services at (800) 533-3460.**

If you have any questions, please contact *FLUSHMATE* at **800-533-3460** between 8AM to 4:30PM ET, Monday through Friday.

### EACH REPAIR KIT CONTAINS:



One (1)
U-BAND

Two (2) U-BAND
SCREWS

One (1)
EXTERNAL
REGULATOR

**TOOL NEEDED:** Phillips Screwdriver

***DO NOT use any types of sealants on threads, including Teflon® Tape, pipe liquid sealer, or plumber's putty.***

METAL
U-BAND

SCREWS

EXTERNAL
REGULATOR

Repair Kit parts are highlighted in blue for clarity.

**Installation Instructions on reverse side**

FLU9060IS  0712

# FLUSHMATE® III Repair Kit

Use the weblink or QR below to view the Installation Video for the Repair Kit. www.flushmate.com/recall/video



## READ BEFORE YOU START

- To minimize the possibility for injury and property damage due to *FLUSHMATE III* unit separation, it is recommended that you install the Repair Kit IMMEDIATELY.
- This Repair Kit has been sent to you to repair your recalled *FLUSHMATE III* unit produced between October 14, 1997 and February 29, 2008.
- The repair should take less than 20 minutes.
- Read all instructions on both sides of this instruction sheet prior to starting the installation.

**WARNING**  **IMPORTANT: TURN OFF THE WATER AND THEN FLUSH THE TOILET PRIOR TO INSTALLING THE REPAIR KIT.**

### IMPORTANT:

*Before you start, always turn off water and then flush toilet to release pressure before servicing the FLUSHMATE III unit, as noted in step 1 and 2.*

*DO NOT use any types of sealants on threads, including Teflon® Tape, pipe liquid sealer, or plumber's putty.*

## U-BAND Installation Instructions



1. Rotate handle of water supply stop clockwise to turn off water.

2. Flush toilet to release pressure.
3. Remove china tank lid and flush again to ensure pressure has been released.



4. Slide U-BAND under supply hose.
5. Position the U-BAND down around the right side of the *FLUSHMATE III* unit and guide the U-BAND so that it passes under the right side of the *FLUSHMATE III* unit.

Supply Hose

U-BAND



6. Gradually slide U-BAND toward the middle of the *FLUSHMATE III* unit. When aligned, U-BAND should be centered over inner screw holes as shown in the inset image.

MOUNT HERE



7. Align U-BAND hole with inner screw hole on back side of the *FLUSHMATE III* unit, as shown. Install screw, hand tight with screwdriver.
8. Position and secure other end of U-BAND to inner hole, front side. Install screw, hand tight with screwdriver.

### Corrective steps for leaks –

Make sure all connections are hand tight. If leak continues, turn off the water, flush the toilet to release pressure, disconnect the supply line, and then disconnect the EXTERNAL REGULATOR.

Next, reassemble (See steps 10 through 14).

You have completed the installation of the Repair Kit.



SCREWS

METAL U-BAND

EXTERNAL REGULATOR

Completed installation should look like illustration shown above. Repair Kit parts are highlighted in blue for clarity.

## EXTERNAL REGULATOR Installation Instructions



9. Disconnect the water supply line from the lower supply shank. Be prepared to collect a small amount of residual water from the supply line.

10. Make sure gasket is seated at base of threads in the EXTERNAL REGULATOR.
11. Thread EXTERNAL REGULATOR onto lower supply shank and hand tighten.

Gasket

12. Connect supply line to EXTERNAL REGULATOR, hand tighten.
13. Rotate handle of water supply stop counter-clockwise to fully open the water supply.

14. Check for leaks around threaded connections (If leak is present, see "Corrective steps for leaks").
15. Flush toilet. Replace lid.

## PAGE 2 OF 2

# EXHIBIT G

POINTS TO REMEMBER_____

# Safety Notice

- When servicing any component, the water supply should be turned OFF and the Actuator tripped to relieve the pressure in the Vessel.

- The Flush Valve Cartridge Assembly can be removed by inserting the handles of a pair of pliers into the top of the Cartridge and turning counter-clockwise.

- **NEVER** use corrosive disinfectants, bowl cleaners or deodorant blocks on *FLUSHMATE* ® Products or in the china tank.

The Sloan *FLUSHMATE* ® Flushometer-Tank System has been engineered to provide reliable performance year after year. However, if servicing is ever required, it is recommended that you follow the instructions included in this brochure. If you would like additional information or require technical assistance, write to us at the address below or call us toll free at 1-800-533-3450.

## ATTENTION OWNER
## THIS IS YOUR WARRANTY REGISTRATION

Sloan *FLUSHMATE* ® (the "Company"), warrants the *FLUSHMATE* ® flushometer tank operating system (the "unit"), to be free of defects in material and workmanship for a period of five (5) years from the date of installation and the Company promises to replace any part of this product that proves, upon our inspection and within five years from date of installation, to be defective in material or workmanship. All labor and transportation costs or charges incidental to warranty service are to be borne by the purchaser-user.

This warranty is subject to the following:

### Specific Conditions to Warranty

A Warranty Registration card has been fully completed and mailed by the purchaser (the "user") to the Company within thirty (30) days of the date of installation.

The unit has been subject to proper installation, operation and maintenance as outlined in the installation instructions that were supplied with the unit. Note carefully that this warranty is void if the unit is installed and operated subject to water supply line pressures greater than 125 psi (static) or less than 20 psi (static).

Service and repairs may only be performed by authorized representatives of the Company or by others upon specific approval by the Company. Unauthorized repairs or alterations shall specifically void the warranty.

Use of corrosive disinfectants, bowl cleaners or deodorant blocks on *FLUSHMATE* ® products or in the china tank will void this warranty. Proof of purchase is required.

### Exclusions

IN NO EVENT SHALL THE COMPANY BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, FOR DAMAGES RESULTING FROM IMPROPER INSTALLATION, OR FOR DAMAGES CAUSED BY NEGLECT, ABUSE OR ALTERATION. ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE ARE LIMITED TO A PERIOD OF FIVE (5) YEARS FROM DATE OF INSTALLATION.

Some states do not allow limitations on the duration of an implied warranty and some states do not allow exclusions or limitations regarding incidental or consequential damages, so the above limitations may not apply to you. This warranty gives you specific legal rights and you may have other rights which vary from state to state.

No person is authorized to change, add to, or create any warranty or obligation other than that set forth herein.

To obtain warranty service contact Consumer Services toll free **1-800-533-3450** (Outside North America, Call **248-446-5300**), visit our website or write to us at:

*FLUSHMATE* ®
**A DIVISION OF SLOAN VALVE CO.**
**30075 Research Drive**
**New Hudson, MI 48165 U.S.A.**
**1-800-533-3450 • 248-446-5300**
**http://www.flushmate.com**

Installation Date_____

Serial Number _____

**ATTENTION OWNER**
**THESE ARE THE TERMS OF YOUR WARRANTY**

Sloan *FLUSHMATE*® (the "Company") warrants the *FLUSHMATE*® (flushometer-tank) operating system (the "unit") to be free of defects in material and workmanship for a period of ten (10) years on the replacement components and a lifetime limited warranty on the *FLUSHMATE* tank from the date of installation and the Company promises to replace any part of this product that proves, upon our inspection and within ten years from date of installation, to be defective in material or workmanship. All labor and transportation costs or charges incidental to warranty service are to be borne by the purchaser-user.

This warranty is subject to the following:

**Specific Conditions to Warranty**

1. A Warranty Registration card has been fully completed and mailed by the purchaser (the "user") to the Company within thirty (30) days of the date of installation. Product may also be registered online at www.flushmate.com or by calling 800-533-3460.

2. The unit has been subject to proper installation, operation and maintenance as outlined in the installation instructions that were supplied with the unit. Note carefully that this warranty is voided if the unit is installed and operated subject to water supply line pressures greater than 125 psi (static) or less than 20 psi (static).

3. Service and repairs may only be performed by authorized representatives of the Company or by others upon specific approval by the Company. Unauthorized repairs or alterations shall specifically void the warranty.

4. USE OF PETROLEUM-BASED LUBRICANTS OR CORROSIVE CLEANING PRODUCTS CONTAINING CHLORINE, SUCH AS HOUSEHOLD BLEACH, DROP-IN BLOCKS OR TABLETS, OR DISINFECTANTS THAT ARE APPLIED INSIDE THE CHINA HOLDING TANK WILL VOID YOUR *FLUSHMATE*® WARRANTY.

5. Proof of purchase is required.

**Exclusions**

IN NO EVENT SHALL THE COMPANY BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, FOR DAMAGES RESULTING FROM IMPROPER INSTALLATION, OR FOR DAMAGES CAUSED BY NEGLECT, ABUSE OR ALTERATION. ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE ARE LIMITED TO A PERIOD OF TEN (10) YEARS FROM DATE OF INSTALLATION.

Some states do not allow limitations on the duration of an implied warranty and some states do not allow exclusions or limitations regarding incidental or consequential damages so the above limitations may not apply to you. This warranty gives you specific legal rights and you may have other rights which vary from state to state.

No person is authorized to change, add to, or create any warranty or obligation other than that set forth herein.

To obtain warranty service, contact Consumer Services toll free (USA & CANADA) **800-533-3460** or write to us at:

**FLUSHMATE®**
**A Division of Sloan Valve Company**
**ISO 9001 Quality System Certified**
**30075 Research Drive**
**New Hudson, MI 48165 U.S.A.**
**800-533-3460 248-446-5300**
**www.flushmate.com**

**Installation Date** _____

**Serial Number** _____

© *FLUSHMATE* Division

FLU6107.2  0804

GZJ KDKV'J ''

# interline

**Home   Our Work   Our System   Capabilities   Leadership   Blog Mix   Events   Guides   Conta**

**FLUSHMATE**

- Advertising
- Public Relations
- Website Development and Administration
- Sales and Marketing Support
- Technical Writing
- Packaging and Promotional Materials
- Direct Mail

<< Back to client list

FLUSHMATE manufactures pressure-assist toilet operating systems at its New Hudson, Michigan, production facility. The FLUSHMATE systems, available in 1.0- and 1.6-gallon-per-flush models, provide water-conserving and powerful flushing for light commercial and residential installations.

### Free Web CEU Events
Delighting Your Customer with Your Website
NEW!
Thu, Dec 13, 2012 2:00 PM – 3:00 PM CST

Staying in Front of Your Customers
Thu, Nov 29, 2012 11:00 AM – 12:00 PM CST

Making Sense of Social Media
Thu, Dec 6, 2012 11:00 AM – 12:00 PM CST

### Survival Guides
Learn survival skills that work to increase you business
from one of the leading business-to-business agencies.
Want more info? Find out here

### Jim on Research –
Why Jim says Research is a secret weapon

Advertising

Pricing and Produc





### Search Interline
Search for:

Search

Mouse over for more creative work

| Interline | AIM | MarketNet | Other Projects |
|---|---|---|---|
| Our Work | Identify It | Our work | kb-resource.com |
| Our System | Measure It | Our company | kb tweets |
| Capabilities | Track It | Online store | Shop MarketNet |
| Leadership | Use It | MarketNetNetwork | Webertfaucets.com |

Case 2:12-cv-06878-SJO-SH   Document 75   Filed 02/07/13   Page 69 of 86   Page ID #:1117



Home   Our Work   Our System   Capabilities   Leadership   Blog Mix   Events   Guides   Conta

## Microsite Covers the ABCs in Flushing Technology

**FLUSHMATE**



**Complete listing
of Flushmate
Case Studies**

○ **Microsite
Covers the
ABCs in
Flushing
Technology**



### PROBLEM:

FLUSHMATE, a division of Sloan Valve Company, needed to differentiate its pressure-assist toilet technology from conventional gravity-based toilets and dispel myths about the undependability of low-consumption toilets.

### SOLUTION:

Interline Creative Group's Web team developed a microsite—a customized, Internet-based page linked to FLUSHMATE's main Web site—aimed at educating the residential and light commercial marketplace about pressure-assist technology as a water-saving alternative to gravity toilets. The microsite also provides facts regarding how pressure-assist toilets, using either 1.0 or 1.6 gallons of water per flush, can operate more effectively than gravity-based toilets flushing with more water. The user-friendly microsite accomplishes this with easy-to-understand explanations of the technology, describing how and why it works, backed by animated demonstrations created by Interline's graphics professionals. Interline directed visitors to the microsite through a few different channels. Interline's media buyers placed newspaper ads in select markets, and public relations specialists wrote personalized letters to water district and municipality officials, press releases and news stories—all of which noted the microsite as a source for more information.



### RESULT:

The ads and stories, especially those promoting the plumbing rebates, were highly effective at driving people to the microsite. Traffic to FLUSHMATE's customer service call center increased 500%. Follow-up surveys have found that the public is more aware of pressure-assist technology and that they're more willing to buy these water-conserving toilets, especially when the toilets are proven to be more reliable.

**Free Web CEU Events**

Delighting Your Customer with Your Website NEW!
Thu, Dec 13, 2012 2:00 PM – 3:00 PM CST

Staying in Front of Your Customers
Thu, Nov 29, 2012 11:00 AM – 12:00 PM CST

Making Sense of Social Media
Thu, Dec 6, 2012 11:00 AM – 12:00 PM CST

**Survival Guides**

Learn survival skills that work to increase you business
from one of the leading business-to-business agencies.
Want more info? Find out here

**Jim on Research –**

Why Jim says Research is a secret weapon



**Search Interline**

Search for:

Searc

Case 2:12-cv-06878-SJO-SH   Document 75   Filed 02/07/13   Page 70 of 86   Page ID #:1118

| Our Work | Identify It | Our work | kb-resource.com |
|---|---|---|---|
| Our System | Measure It | Our company | kb tweets |
| Capabilities | Track It | Online store | Shop MarketNet |
| Leadership | Use It | MarketNetNetwork | Webertfaucets.com |
| Events | | | MarketNet Blog |

# EXHIBIT I

# GERBER®

# *VITREOUS CHINA WARRANTY*

### FIVE (5) YEAR LIMITED WARRANTY - VITREOUS CHINA

Gerber Plumbing Fixtures Corp. (Gerber) warrants to the original purchaser of this product that the vitreous china portion will be free from defects in material and workmanship under reasonable use for a period of five (5) years from the date of original purchase, as shown on the original consumer-purchaser's receipt.

### FIVE (5) YEAR LIMITED WARRANTY – PRESSURE VESSELS

Gerber warrants to the original purchaser of this product that any pressure vessel portion will be free from defects in material and workmanship under reasonable use for a period of five (5) years from the date of original purchase, as shown on the original consumer-purchaser's receipt if purchased on or after May 1, 1999.

### FIVE (5) YEAR LIMITED WARRANTY ON OTHER PARTS



Gerber warrants to the original consumer-purchaser of this product that all parts included in toilet tanks with Gerber branded trim components as original equipment will be free from defects in material and workmanship under reasonable use for a period of five (5) years from the date of original purchase.

Any components not mentioned above shall be covered to the extent indicated by the original equipment suppliers' warranties. All above mentioned products and parts installed in accepted commercial installations carry a one (1) year limited warranty.

Gerber agrees, at Gerber's option, to repair or replace these products or any parts thereof, which proves, upon inspection by Gerber, to be defective in material or workmanship during the above stated periods of warranty coverage.

Gerber will not be liable for any labor, shipping, freight, or any other charges incurred acting upon the above warranties. Installation or use of the product not in accordance with product instructions or improper use, abuse or neglect of, or accident to the product will void the above warranties. Damage to the finish or performance of any components caused by the use of cleaning solvents/chemicals or improper cleaning methods (i.e. in-tank bowl cleaners) will also void the above warranties.

If the Federal Consumer Product Warranties Act applies to the original purchaser of this product, then any implied warranties which may be applicable under state law, such as any implied warranty of merchantability or any implied warranty of fitness for a particular purpose, are limited to one (1) year.

**Other than as described above, Gerber disclaims any and all other warranties, express or implied, including any warranties of merchantability or fitness for a particular purpose. In no event shall Gerber be liable to anyone for incidental or consequential damages**.

The above warranties give you specific legal rights, and you may also have other rights which vary from state to state. Certain federal and state laws may limit or disallow disclaimers of incidental or consequential damages and/or limitations on implied warranties**.**

To obtain warranty service, contact your local dealer and/or contractor from whom you purchased this product or contact Gerber Plumbing Fixtures Corp., 4600 West Touhy, Lincolnwood, IL 60712. For warranty issues related to Flushmate®, contact Sloan Flushmate® at 800-533-3450. For warranty issues related to PF/2 pressure unit, contact W/C Technology Corporation at 888-732-9282.

*May 2002*

## GERBER®

PROFESSIONALLY MADE • PROFESSIONALLY SOLD • PROFESSIONALLY INSTALLED
Gerber Plumbing Fixtures Corp., 4600 W. Touhy Avenue, Lincolnwood, IL 60712-1699
(847) 675-6570, FAX 1-800-5GERBER (Illinois FAX (847) 675-5192)

china5-02.doc

# GERBER®

# *VITREOUS CHINA WARRANTY*

### FIVE (5) YEAR LIMITED WARRANTY - VITREOUS CHINA

Gerber Plumbing Fixtures LLC (Gerber) warrants to the original purchaser of this product that the vitreous china portion will be free from defects in material and workmanship under reasonable use for a period of five (5) years from the date of original purchase, as shown on the original consumer-purchaser's receipt.

### TEN (10) YEAR LIMITED WARRANTY – SLOAN FLUSHMATE®



Gerber warrants to the original purchaser of this product that any Sloan Flushmate® pressure vessel will be free from defects in material and workmanship under reasonable use for a period of ten (10) years from the date of original purchase, as shown on the original consumer-purchaser's receipt if purchased on or after November 1, 2004.

### FIVE (5) YEAR LIMITED WARRANTY ON OTHER PARTS

Gerber warrants to the original consumer-purchaser of this product that all parts not mentioned above included as original equipment will be free from defects in material and workmanship under reasonable use for a period of five (5) years from the date of original purchase.

Any components not mentioned above shall be covered to the extent indicated by the original equipment suppliers' warranties.   All above mentioned products and parts installed in accepted commercial installations carry a one (1) year limited warranty.

As the exclusive remedy for any breach of the above warranties, Gerber agrees, at Gerber's option, to repair or replace these products or any parts thereof, which proves, upon inspection by Gerber, to be defective in material or workmanship during the above stated periods of warranty coverage.

Gerber will not be liable for any labor, shipping, freight, or any other costs or charges incurred in connection with removal or replacement of the product or otherwise acting upon the above warranties, or for any costs associated with repair or replacement of any other personal property, building or installation materials.  Installation or use of the product not in accordance with product instructions or improper use, abuse or neglect of, or accident to the product, or moving the product from the location of its original installation will void the above warranties.  Damage to the finish or performance of any components caused by the use of cleaning solvents/chemicals or improper cleaning methods (i.e. in-tank bowl cleaners) will also void the above warranties.

If the Federal Consumer Product Warranties Act applies to the original purchaser of this product, then any implied warranties which may be applicable under state law, such as any implied warranty of merchantability or any implied warranty of fitness for a particular purpose, are limited to one (1) year.

**Other than as described above, Gerber disclaims any and all other warranties, express or implied, including any warranties of merchantability or fitness for a particular purpose. In no event shall Gerber be liable to anyone, including without limitation the original purchaser, for any damages for loss of business opportunities or profits or any business interruption or for any special, incidental or consequential damages**.

The above warranties give you specific legal rights, and you may also have other rights which vary from state to state. Certain federal and state laws may limit or disallow disclaimers of incidental or consequential damages and/or limitations on implied warranties**.**

To obtain warranty service, contact your local dealer and/or contractor from whom you purchased this product or contact Gerber Plumbing Fixtures LLC, 4600 West Touhy, Lincolnwood, IL  60712.  For warranty issues related to Flushmate®, contact Sloan Flushmate® at 800-533-3450.

*November 2004*

## GERBER®

PROFESSIONALLY MADE • PROFESSIONALLY SOLD • PROFESSIONALLY INSTALLED™
Gerber Plumbing Fixtures LLC, 4600 W. Touhy Avenue, Lincolnwood, IL 60712-1699
(847) 675-6570, FAX 1-800-5GERBER  (Illinois FAX (847) 675-5192)
www.gerberonline.com

17-145

# GZJ KDKV'L''

# BIRKA-WHITE LAW OFFICES

The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                           dbw@birka-white.com

August 24, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Flushmate
30075 Research Drive
New Hudson, MI 48165

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

      Re:    **Flushmate® III Pressure-Assist Flushing System**

To Whom It May Concern:

Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq.*, and specifically § 1782(a)(1)(2), Plaintiff Fred Ede, III, on behalf of himself and all others similarly situated, hereby notifies you that Flushmate, a division of Sloan Valve Company ("Flushmate"), violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

    1.    Flushmate represented that their Flushmate System had benefits or characteristics that it did not actually have. Civ. Code § 1770(a)(5); and

    2.    Flushmate represented that Flushmate System was of a particular standard or quality when it was of another. Civ. Code § 1770(a)(7).

Specifically, Flushmate represented in marketing materials that their Flushmate System was "designed with continuous improvements to be the most reliable, consistent, and trouble-free system available," as well as "No Leaks," "No Callbacks," "Easier to maintain," and complied with the provisions of the Uniform Plumbing Code ("UPC") and American Society of Sanitary Engineering ("ASSE") Standard 1037-90. These representations are not true. The materials used to manufacture the pressurized vessels were substandard and adversely affect the performance of

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 24, 2012
Page 2 of 3

the Flushmate System. The Flushmate System threatens injury and public safety in that it can
burst at or near the vessel weld seam releasing stored pressure. This pressure can lift the tank lid
and shatter the tank, posing impact or laceration hazards to consumers and property damage.
Flushmate became aware of the Flushmate System defect as early as July 2000, if not sooner, but
nonetheless continued to sell the Flushmate System without disclosing the defect or risk to allow
consumers to make an informed decision whether or not to purchase a toilet containing the
Flushmate System.

This notice applies to all toilets which incorporate the Flushmate System including, but
not limited to, American Standard, Crane, Eljer, Gerber, Kohler, Mansfield, St. Thomas, and
Western, as well as persons who purchased the Flushmate System vessel only from such retailers
as Home Depot and Lowes. Additionally, the notice program to consumers and owners of toilets
with Flushmate Systems provided pursuant to the voluntary recall of the Flushmate System in
conjunction with the United States Consumer Product Safety Commission ("CPSC") and Health
Canada is grossly inadequate. A consumer with the product is oftentimes unaware of the dangers
until there is an actual failure, and the notice program inadequately reaches the affected class of
owners who are at risk of personal injury and property damage.

Fred Ede was made aware of the defect with the Flushmate System after learning about
the Flushmate recall. Mr. Ede owns six Kohler toilets at his properties in Fresno, California and
Shaver Lake, California. One of the toilets containing the Flushmate System exploded causing
extensive property damage. Mr. Ede replaced the Kohler toilet and has five other Kohler toilets
containing the Flushmate System that are part of the recall. While the pressure vessels were
allegedly manufactured between October 1997 and February 2008, Mr. Ede purchased a Kohler
toilet approximately a year and half ago which contained one of the recalled Flushmate Systems.
Mr. Ede contacted Kohler and asked that the toilets be replaced, and Kohler refused.

Furthermore, the "repair kit" offered by Flushmate is inadequate in that it does not repair
the design defect and improperly alters the appearance and operation of the Kohler toilet in an
effort to compensate for the defect. It is also unrealistic and inappropriate to require consumers
to install the "repair kit." The entire Flushmate System needs to be replaced by a qualified
plumber, paid for by Kohler or Flushmate. There is also the additional inconvenience of having
an inoperable toilet until the proper repair or replacement is completed.

Mr. Ede on behalf of himself and all others similarly situated, hereby demands that
Flushmate: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems
utilized in toilets manufactured between January 1, 1997 and the present; and (2) provide notice
to consumers of the product performance issues in this letter and of their right to present a claim.
Demand is made on Flushmate to remedy these defects and reimburse all owners who have
replaced the defective products within thirty (30) days of receipt of this letter. If we do not hear
from you within this time period, we will assume that you will not take the corrective action
requested.

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 24, 2012
Page 3 of 3

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.      All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all toilets manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.      All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.      All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.      Any complaints from any source concerning defective Flushmate System;

5.      All documents which reflect the sale of the Flushmate System referenced above in the United States, including manufacturing dates and model numbers;

6.      All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Kohler, Flushmate, or their suppliers; and

7.      All listing agreements, testing records, and quality control records related to the Flushmate System and its compliance with ASSE 1037.

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

David M. Birka-White

DBW/mw

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Flushmate
30075 Research Drive
New Hudson, MI 48165

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____   ☐ Agent
                     ☐ Address

B. Received by ( *Printed Name*)     C. Date of Delive

_____   8/2/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☒ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandis
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☒ Yes

2. Article Number
   (Transfer from service label)    7010 3090 0000 3915 7805

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-15

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *Jose Barajas*   ☐ Agent
                   ☐ Address

B. Received by ( *Printed Name*)     C. Date of Delive

Jose Barajas    8/28/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandis
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (Transfer from service label)    7010 3090 0000 3915 7829

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-15

# EXHIBIT K

# BIRKA-WHITE LAW OFFICES

The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                           dbw@birka-white.com

August 30, 2012

## NOTICE OF VIOLATION OF
## CONSUMER LEGAL REMEDIES ACT ("CLRA")

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Flushmate
30075 Research Drive
New Hudson, MI 48165

Sloan Valve Company
10500 Seymour Avenue
Franklin Park, IL 60131

      Re:    **Flushmate® III Pressure-Assist Flushing System**

To Whom It May Concern:

      Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et. seq.*, and specifically § 1782(a)(1)(2), Plaintiff Emily Williams, on behalf of herself and all others similarly situated, hereby notifies you that Flushmate, a division of Sloan Valve Company ("Flushmate"), violated California Civil Code § 1770 by advertising and selling toilets equipped with a Series 503 Flushmate III pressure-assisted flushing system ("Flushmate System") which was defective and not in conformance with the representations to Plaintiff, thousands of California consumers, as well as consumers throughout the United States. This conduct includes, but is not limited to, the following violations of § 1770:

    1.    Flushmate represented that their Flushmate System had benefits or characteristics that it did not actually have. Civ. Code § 1770(a)(5); and

    2.    Flushmate represented that Flushmate System was of a particular standard or quality when it was of another. Civ. Code § 1770(a)(7).

      Specifically, Flushmate represented in marketing materials that their Flushmate System was "designed with continuous improvements to be the most reliable, consistent, and trouble-free system available," as well as "No Leaks," "No Callbacks," "Easier to maintain," and complied with the provisions of the Uniform Plumbing Code ("UPC") and American Society of Sanitary Engineering ("ASSE") Standard1037-90. These representations are not true. The materials used to manufacture the pressurized vessels were substandard and adversely affect the performance of

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 30, 2012
Page 2 of 3

the Flushmate System. The Flushmate System threatens injury and public safety in that it can burst at or near the vessel weld seam releasing stored pressure. This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage. Flushmate became aware of the Flushmate System defect as early as July 2000, if not sooner, but nonetheless continued to sell the Flushmate System without disclosing the defect or risk to allow consumers to make an informed decision whether or not to purchase a toilet containing the Flushmate System. The Flushmate System contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product, and this letter constitutes a notice of breach of warranty both express and implied.

This notice applies to all toilets which incorporate the Flushmate System including, but not limited to, American Standard, Crane, Eljer, Gerber, Kohler, Mansfield, St. Thomas, and Western, as well as persons who purchased the Flushmate System vessel only from such retailers as Home Depot and Lowes. Additionally, the notice program to consumers and owners of toilets with Flushmate Systems provided pursuant to the voluntary recall of the Flushmate System in conjunction with the United States Consumer Product Safety Commission ("CPSC") and Health Canada is grossly inadequate. A consumer with the product is oftentimes unaware of the dangers until there is an actual failure, and the notice program inadequately reaches the affected class of owners who are at risk of personal injury and property damage.

Emily Williams, an elderly California resident, recently became aware that the Gerber toilet installed at her property contains the defective Flushmate System. The serial number on her Flushmate System is 042301-F3G-1683. The toilet was installed by Rosenberg Plumbing on or about September 4, 2001. Ms. Williams is unable to install the Flushmate "repair kit" on her own and will have to hire a plumber. There is also the additional inconvenience of having an inoperable toilet until the proper repair or replacement is completed. It is unrealistic and inappropriate to require consumers to handle such repairs and installations on their own, and there is no legal basis to require consumers to assume the obligation to either personally install the "repair kit" or pay for the installation. In Ms. Williams' case, the repair kit is not even capable of installation because the external regulator is too long to reattach the water supply line. Furthermore, the "repair kit" offered by Flushmate is inadequate in that it does not repair the design defect and improperly alters the appearance and operation of the Gerber toilet in an effort to compensate for the defect. The entire toilet needs to be replaced by a qualified plumber, paid for by Gerber or Flushmate.

Ms. Williams on behalf of herself and all others similarly situated, hereby demands that Flushmate: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems utilized in toilets manufactured between January 1, 1997 and the present; and (2) provide notice to consumers of the product performance issues in this letter and of their right to present a claim. Demand is made on Flushmate to remedy these defects and reimburse all owners who have replaced the defective products within thirty (30) days of receipt of this letter. If we do not hear

BIRKA-WHITE LAW OFFICES

Flushmate
Sloan Valve Company
August 30, 2012
Page 3 of 3

from you within this time period, we will assume that you will not take the corrective action requested.

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.   All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all toilets manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.   All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.   All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.   Any complaints from any source concerning defective Flushmate System;

5.   All documents which reflect the sale of the Flushmate System referenced above in the United States, including manufacturing dates and model numbers;

6.   All documents which reflect the materials used to manufacture the Flushmate System from any source, including but not limited to Gerber, Flushmate, or their suppliers; and

7.   All listing agreements, testing records, and quality control records related to the Flushmate System and its compliance with ASSE 1037.

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

David M. Birka-White

DBW/mw

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X *Jose Barajas*  ☐ Agent  ☐ Addressee <br> B. Received by ( *Printed Name* )  C. Date of Delivery <br> Jose Barajas  9-5-12 |
| 1. Article Addressed to: <br><br> Sloan Valve Company <br> 10500 Seymour Avenue <br> Franklin Park, IL 60131 | D. Is delivery address different from item 1?  ☐ Yes <br> If YES, enter delivery address below:  ☐ No |
| | 3. Service Type <br> ☒ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7010 3090 0000 3915 7836 |
| PS Form 3811, February 2004  Domestic Return Receipt | 102595-02-M-1540 |

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X *Duncan*  ☐ Agent  ☐ Addressee <br> B. Received by ( *Printed Name* )  C. Date of Delivery <br> Duncan  9/4/12 |
| 1. Article Addressed to: <br><br> Flushmate <br> 30075 Research Drive <br> New Hudson, MI 48165 | D. Is delivery address different from item 1?  ☐ Yes <br> If YES, enter delivery address below:  ☐ No |
| | 3. Service Type <br> ☒ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7010 3090 0000 3915 7843 |
| PS Form 3811, February 2004  Domestic Return Receipt | 102595-02-M-1540 |

# EXHIBIT L

# BIRKA-WHITE LAW OFFICES
The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

DAVID M. BIRKA-WHITE                                                dbw@birka-white.com

October 5, 2012

## NOTICE OF BREACH OF WARRANTY

Home Depot U.S.A., Inc.
2455 Paces Ferry Northwest
Atlanta, GA 30339

      **Re:**    **Flushmate® III Pressure-Assist Flushing System**

To Whom It May Concern:

Jean Steiner, on behalf of herself and all others similarly situated, hereby notifies you that you are in breach of all warranties, express or implied, relating to the sale of any toilets equipped with the Series 503 Flushmate III pressure-assisted flushing system manufactured between October 14, 1997 and February 29, 2008 ("Flushmate Sytem").

The Flushmate System threatens injury and public safety in that it can burst at or near the vessel weld seam releasing stored pressure. This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage.

This notice applies to all toilets sold by Home Depot which incorporate the Flushmate System including, but not limited to, American Standard, Crane, Eljer, Gerber, Kohler, Mansfield, St. Thomas, and Western. All toilets with a Flushmate System were recalled by the Consumer Product Safety Commission ("CPSC") on June 21, 2012.

Ms. Steiner owns a Kohler toilet bought from Home Depot in Arizona. The "repair kit" offered by Flushmate is inadequate in that it does not repair the design defect and improperly alters the appearance and operation of the Kohler toilet in an effort to compensate for the defect. Further, Flushmate requires consumers to install the "repair kit" at their expense. The entire Flushmate System needs to be replaced by a qualified plumber, paid for by Home Depot, Kohler or Flushmate. There is also the additional inconvenience of having an inoperable toilet until the proper repair or replacement is completed.

Ms. Steiner on behalf of herself and all others similarly situated, hereby demands that Home Depot: (1) pay all costs required to investigate, repair, and replace all Flushmate Systems utilized in toilets manufactured between January 1, 1997 and the present; and (2) provide notice to consumers of the product performance issues in this letter and of their right to present a claim. Demand is made on Home Depot to remedy these defects and reimburse all owners who have replaced the defective products.

BIRKA-WHITE LAW OFFICES

Home Depot U.S.A., Inc.
October 5, 2012
Page 2 of 2

This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.  All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding all toilets manufactured between January 1, 1997 and the present which contain a Flushmate System;

2.  All advertising and marketing materials disseminated to consumers, retailers, plumbing contractors, and/or distributors that discuss or concern the Flushmate System referenced above;

3.  All product advisory notices, technical bulletins, or other information regarding any vessel weld leak or separation issues with the Flushmate System described above;

4.  Any complaints from any source concerning the Flushmate System;

5.  All documents which reflect the sale of any toilets containing the Flushmate System referenced above in the United States, including manufacturing dates and model numbers;

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

David M. Birka-White

DBW/mw