COPY

1   David M. Birka-White (State Bar No. 85721)
    dbw@birka-white.com
2   Mindy M. Wong (State Bar No. 267820)
    mwong@birka-white.com
3   BIRKA-WHITE LAW OFFICES
    411 Hartz Avenue, Suite 200
4   Danville, CA  94526
    Telephone: (925) 362-9999
5   Facsimile:  (925) 362-9970

6   Robert J. Nelson (State Bar No. 132797)
    rnelson@lchb.com
7   Kristen Law Sagafi (State Bar No. 222249)
    klaw@lchb.com
8   Jordan Elias (State Bar No. 228731)
    jelias@lchb.com
9   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
10  275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
11  Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
12
    *Attorneys for Plaintiffs*
13
    [Additional counsel in signature block]

14
15                  **UNITED STATES DISTRICT COURT**

16          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  UNITED DESERT CHARITIES, FRED EDE, III, EMILY WILLIAMS, BRUCE PRITCHARD, JEAN STEINER, PANKAJ PATEL, JEFFREY BRETTLER, DANIEL E. BERUBE, RANDY KUBAT, and JOHN L. SNYDER, on behalf of themselves and all others similarly situated, | Case No. CV12-06878 SJO (SHx) |
| | *The Honorable S. James Otero* |
| | **CONDITIONAL FOURTH AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY DEMAND** |
| v. | Action Filed:   August 9, 2012 |
| SLOAN VALVE COMPANY, AMERICAN STANDARD BRANDS AS AMERICA, INC., KOHLER CO., GERBER PLUMBING FIXTURES, LLC, MANSFIELD PLUMBING PRODUCTS, LLC, and HOME DEPOT, U.S.A., INC., | |
| Defendants. | |

FILED
CLERK, U.S. DISTRICT COURT
FEB - 7 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

1    Plaintiffs UNITED DESERT CHARITIES, FRED EDE, III, EMILY

2    WILLIAMS, BRUCE PRITCHARD, JEAN STEINER, PANKAJ PATEL,

3    JEFFREY BRETTLER, DANIEL E. BERUBE, RANDY KUBAT, and JOHN L.

4    SNYDER ("Plaintiffs"), on behalf of themselves and all others similarly situated,

5    allege as follows:

6    **I.    INTRODUCTION**

7        1.    This is a class action for damages, restitution, and injunctive relief

8    filed on behalf of Plaintiffs and all persons or entities who own toilets equipped

9    with a Series 503 Flushmate® III Pressure-Assist Flushing System (the "Flushmate

10   System") manufactured by defendant Sloan Valve Company ("Sloan") between

11   October 14, 1997 and June 30, 2009.  The Flushmate System is currently the

12   subject of a nationwide Consumer Product Safety Commission ("CPSC") product

13   recall (the "Recall").  The Recall affects more than 2.3 million toilets.

14       2.    The Flushmate System is unreasonably dangerous to consumers

15   because of a defect in its pressure vessel that can cause the vessel to rupture and the

16   toilet to explode.  Sloan has instructed owners of toilets containing the Flushmate

17   System ("Flushmate Toilets") to turn off the supply of water to the toilet

18   immediately in order to avoid physical injury and property damage.

19       3.    Sloan has not publicized the Recall adequately.  Many owners of

20   Flushmate Toilets have not received notice of the Recall.

21       4.    Sloan expressly warranted that the Flushmate System was free from

22   defects and promised to replace any Flushmate tanks that proved defective.  Sloan

23   breached its express warranty and violated California law in failing to pay for

24   replacement tanks and the labor required to install them.

25       5.    Sloan and the Manufacturer Defendants allegedly breached the

26   statutory implied warranty of merchantability in California because they

27   manufactured and brought to market toilet products that were unfit for their

28   ordinary and intended purpose.

6.    Plaintiffs and members of the proposed Class (the "Class") have also been damaged by Sloan's misrepresentations and omissions concerning the defect in the Flushmate System.

7.    The Consumer Product Safety Commission reported that when the federal government first mandated disclosure of the toilet defect in June of 2012, Sloan had already "received 304 reports of the product bursting, resulting in property damage and 14 impact or laceration injuries."  Until forced to do so, Sloan intentionally failed to notify owners or otherwise disclose the hazard.

8.    Each Plaintiff detrimentally relied on recommendations made by plumbers, contractors or other specialists who would have recommended against the purchase of Flushmate Toilets had Sloan properly disclosed the defect in the Flushmate System and the seriousness of its consequences.  Sloan's misrepresentations and omissions were communicated to Plaintiffs and the Class by these advisors.

9.    Sloan could have avoided injury to Plaintiffs and the Class by disclosing the nature and severity of the defect in the Flushmate System when it became aware of the defect, or by providing effective notice of the Recall and providing and paying for replacement of the defective product.  Sloan did none of these things, resulting in substantial injury to Plaintiffs and the Class.

**II.    PARTIES**

10.    Plaintiff United Desert Charities ("UDC") is a California non-profit corporation located in Palmdale, California.  UDC owns seven Flushmate Toilets manufactured by American Standard which are subject to the Recall.  One of these toilets failed, leaked, and had to be replaced.

11.    Plaintiff Fred Ede, III ("Ede") is a resident of Fresno, California.  Ede owns six Flushmate Toilets manufactured by Kohler which are installed at his residences.  The Flushmate System in each of his six toilets is subject to the Recall.

1        12.    Plaintiff Emily Williams ("Williams") is a resident of South San

2    Francisco, California.  Williams purchased a Flushmate Toilet manufactured by

3    Gerber for her residence.  The Flushmate System in her toilet is subject to the

4    Recall.

5        13.    Plaintiff Bruce Pritchard ("Pritchard") is a resident of Emerald Hills,

6    California.  Pritchard acquired a Flushmate Toilet manufactured by Mansfield for

7    his residence.  The Flushmate System in his toilet is subject to the Recall.

8        14.    Plaintiff Jean Steiner ("Steiner") is a resident of Desert Hills, Arizona.

9    Steiner purchased from Home Depot a Flushmate Toilet manufactured by Kohler

10   for her residence.  The Flushmate System in her toilet is subject to the Recall.

11       15.    Plaintiff Pankaj Patel is a resident of Millbrae, California.  Patel

12   purchased 22 Flushmate Toilets manufactured by Gerber for the Travelers Inn in

13   South San Francisco, which he owns, as well as four Flushmate Toilets

14   manufactured by Gerber for his residence.  The Flushmate System in each of his

15   toilets is subject to the Recall.

16       16.    Plaintiff Jeffrey Brettler is a resident of Pemberton, New Jersey.

17   Brettler purchased three Flushmate Toilets manufactured by Gerber.  The

18   Flushmate System in each of his toilets is subject to the Recall.

19       17.    Plaintiff Daniel E. Berube is a resident of Pensacola, Florida.  Berube

20   purchased a Crane toilet containing the Flushmate System that is subject to the

21   Recall.

22       18.    Plaintiff Randy Kubat is a resident of Thornton, Colorado.  Kubat

23   purchased two Crane toilets containing the Flushmate System.  The Flushmate

24   System in each of his toilets is subject to the Recall.

25       19.    Plaintiff John L. Snyder is a resident of Bennington, Nebraska.

26   Plaintiff purchased a Crane toilet containing the Flushmate System that is subject to

27   the Recall.

28

20.     Sloan is a Delaware corporation with its principal place of business in Franklin Park, Illinois.  Sloan manufactures the Flushmate System at a division in New Hudson, Michigan.

21.     AS America, Inc., doing business in California as American Standard Brands AS America, Inc. ("American Standard"), is a Delaware corporation with its principal place of business in Piscataway, New Jersey.

22.     Kohler Co. ("Kohler") is a Delaware corporation with its principal place of business in Kohler, Wisconsin.

23.     Gerber Plumbing Fixtures, LLC ("Gerber") is a Delaware corporation with its principal place of business in Woodridge, Illinois.

24.     Mansfield Plumbing Products, LLC ("Mansfield") is a Delaware corporation with its principal place of business in Perrysville, Ohio.

25.     Home Depot U.S.A., Inc. ("Home Depot") is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Home Depot claims to be the world's largest home improvement specialty retailer and operates more than 5,000 stores, with stores in all 50 states.  Home Depot sold toilets containing the Flushmate System throughout the United States.

26.     Defendants American Standard, Kohler, Gerber and Mansfield (collectively, the "Manufacturer Defendants") manufacture and sell Flushmate Toilets.

## III.   <u>JURISDICTION AND VENUE</u>

27.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are at least 100 Class members, (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and (3) some Plaintiffs and Class members are citizens of California and Defendants are citizens of other states.

28.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of conducting business activities within the State of California by advertising, selling, and warranting the toilets and the defective Flushmate System to Plaintiffs and the Class, and maintained systematic and continuous business contacts with the State of California and this District, which make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are residents of this District within the meaning of § 1391(d) and a substantial part of the events, misrepresentations and/or omissions giving rise to Plaintiff UDC's claims occurred in the Central District of California.

30.     The following cases have been transferred to this jurisdiction and are related to the *United Desert Charities* master action:

a.     *Daniel E. Berube v. Flushmate, a Division of Sloan Valve Company*, Northern District of Florida, Case No. 3:12-CV-00531 (filed 11/2/12);

b.     *Jeffrey Brettler v. Flushmate, a Division of Sloan Valve Company*, District of New Jersey, Case No. 1:12-CV-07077 (filed 11/14/12);

c.     *Pankaj Patel v. Flushmate, a Division of Sloan Valve Company*, Northern District of California, Case No. 4:13-cv-00736 (filed 2/19/13); and

d.     *Randy Kubat, et al. v. Flushmate, a Division of Sloan Valve Company*, District Court of Colorado, Case No. 1:13-cv-00520 (filed 2/28/13).

## IV.     FACTUAL ALLEGATIONS

### A.     The Flushmate System

31.     Between October 14, 1997 and June 30, 2009, Sloan manufactured over 2.3 million Flushmate Systems that were incorporated into Flushmate Toilets sold to Plaintiffs and the Class between October 1997 and the present (the "Class Period").

32.    The Flushmate System differs from traditional, gravity-fed flushing systems in that the water flushed is under pressure.  The Flushmate System includes a plastic tank or "vessel" located in a toilet's water storage tank.  The vessel is comprised of two plastic halves that are "welded" together.  The vessel stores water under pressure that is released when the toilet is flushed.  Pressure in the water supply line to the Flushmate System compresses and pressurizes air inside the vessel.  When the toilet is flushed, the compressed air forces water into the toilet bowl which "pushes" waste out.  Vessels in the Flushmate System are under constant high pressure.

33.    Flushmate Toilets are a premium product and are considerably more expensive than traditional, gravity-fed toilets.  Distributors, contractors and plumbers advised consumers to pay the premium based on their belief that the Flushmate System was more effective than traditional toilets and saved water.

34.    These benefits were not realized because the Flushmate System is defective.  Pressure in the vessel exerts forces on the seam weld greater than the weld can withstand, leading to weld separations and a sudden release of pressure.  The release of pressure can lift the lid off the toilet's water storage tank and shatter the tank.  This explosion can result in serious property damage and personal injury.

35.    True and correct copies of photographs of failed Flushmate Toilets are attached as **Exhibit A**.

36.    The Flushmate System fails suddenly and without warning.  Consumers only become aware of severity of the problem if they actually experience the failure firsthand, at which point they have already suffered property damage and/or physical injury.

37.    When the owner is not present at the time the Flushmate Systems fails, the property damage can be particularly severe.

38.    Flushmate Toilets are unsafe and unmerchantable.  They have either already failed or are substantially certain to fail before the end of their useful lives.

**B.    The Product Advisories**

39.    Sloan has known since at least 2000 that the Flushmate System leaks
and explodes, resulting in property damage and serious bodily injury, but never
advised consumers or plumbing professionals of this fact.  Instead, on July 24,
2000, Sloan issued a Product Advisory notice entitled, "Flushmate® II and III
Vessel Weld Leak Or Separation."  The Product Advisory was posted on the
Flushmate website no later than October 2000.  A true and correct copy of this
Product Advisory is attached as **Exhibit B**.

40.    The Product Advisory states that "a very small number" of Flushmate
II and III units developed leaks, or separation of the joints in the vessels that are
accompanied by the rapid release of the pressurized water contained in the vessel.
The Product Advisory was revised in 2003 in a manner not material to the claims
stated herein.  A true and correct copy of this revised Product Advisory is attached
as **Exhibit C**.

41.    Sloan did not disclose in the Product Advisory Notices or elsewhere
the seriousness of the problems with the Flushmate System or the fact that
Flushmate Toilets have exploded, resulting in personal injury and property damage.
Sloan's public statements concerning the problems with the Flushmate System were
intended to, and did, conceal from its customers, plumbing professionals and the
public the severity of the defect in the Flushmate System.

42.    Sloan also took pains to obscure even the Product Advisory.  For
example, the "Product Advisory" link on the Flushmate website appears as a tab
below the "Where to Buy" link.  A true and correct copy of this website is attached
as **Exhibit D**.

**C.    The Product Recalls**

43.    On June 21, 2012, the CPSC issued a Recall affecting Flushmate
Systems manufactured between October 14, 1997 and February 29, 2008.

44.     According to the CPSC, at the time of the Recall, Sloan had received 304 reports that the Flushmate System had exploded, resulting in serious property damage and fourteen impact or laceration injuries.  In fact, however, more than 304 Flushmate Toilets had exploded at the time of the Recall.  Certain owners of such toilets (*e.g*., Plaintiffs UDC and Ede) did not notify Sloan of the explosions.

45.     The notice issued in connection with the Recall (the "Recall Notice") is entitled:  "Flushmate Recalls Flushmate® III Pressure-Assisted Flushing System Due to Impact and Laceration Hazards."  A true and correct copy of this Recall Notice is attached as **Exhibit E**.

46.     The Recall Notice states:  "**Hazard:** The system can burst at or near the vessel weld seam releasing stored pressure.  This pressure can lift the tank lid and shatter the tank, posing impact or laceration hazards to consumers and property damage."

47.     The Recall Notice further states:  "Consumers should stop using recalled products immediately unless otherwise instructed.  It is illegal to resell or attempt to resell a recalled consumer product. . . . Consumers should immediately turn off the water supply to the recalled Flushmate III unit and stop using the system.  Consumers should contact the firm to determine if their Flushmate III serial number is included in the recall and to request a free Repair Kit."

48.     The Recall Notice was not disseminated adequately; many owners of the Flushmate System have not received notice of the Recall.  A much broader, larger, and more robust notice program is required to alert owners of Flushmate Toilets.

49.     On January 23, 2014, the CPSC announced an expansion of the original Recall to include Flushmate Systems manufactured between October 14, 1997 and June 30, 2009.  A true and correct copy of this Expanded Recall Notice is attached as **Exhibit F**.

### D.     The "Repair Kit"

50.     Although Sloan advises consumers to turn off the water supply to the toilet immediately and stop using their toilets, Sloan will not replace the defective Flushmate System.  Instead, Sloan compels Plaintiffs and the Class to install a "Repair Kit."

51.     The Repair Kit includes two components.  The first component is a U-shaped metal strap described as the "U-Band."  Sloan instructs the owner to install the U-Band around the pressure vessel.  The purpose of the U-band is to restrain the movement of the two halves of the pressure vessel when it fails.

52.     The second component of the Repair Kit is an "external regulator." The external regulator reduces the water pressure from the water supply line to the pressure vessel, thereby limiting the force of a toilet explosion.

53.     The instructions that come with the Repair Kit state that the contents will "minimize the possibility for injury and property damage due to Flushmate III unit separation[.]"  A true and correct copy of these Repair Kit instructions is attached as **Exhibit G**.

54.     Sloan has consistently refused to pay for the installation of the Repair Kit, even when consumers complain.

55.     As detailed below, Sloan's written warranty states that it will replace any defective tank.  Similarly, the Product Advisories recommended "the replacement of the unit to assure proper function of the unit and avoid damage to the toilet fixture, any collateral damage, or the possibility of personal injury."  In administering claims under the Recall, Sloan consistently refuses to replace the tank it expressly agreed to replace and which it recommended consumers replace to avoid the risk of explosion, injury, and property damage.

56.     Sloan's refusal to pay the labor costs associated with the repair or replacement of the Flushmate System – as well as the inadequate recall notice program itself – undermine the purpose and impact of the Recall.

**E.    Sloan's Misrepresentations and Omissions Concerning the Flushmate System**

57.    The Flushmate lifetime warranty (the "Warranty Document") states that the Flushmate System is "free of defects in material and workmanship" (the "Express Warranty").

58.    A true and correct copy of the Warranty Document is attached as **Exhibit H**.

59.    This Warranty Document can be found (1) on the inside of the toilet tank; (2) on the Flushmate website; and (3) in the 503 Series Owner's Manual.

60.    The Warranty Document has been displayed on the Flushmate website from at least 1998 through the present.

61.    The Owner's Service Manual for the 503 Series has been displayed on the Flushmate website from approximately 1999 through the present.

62.    The representation that the Flushmate System is "free of defects in material and workmanship" is false because the Flushmate System is defective.  As described above, the weld binding the two halves of the storage tank is not strong enough to withstand the pressure in the pressure vessels, causing leaks and explosions.  From at least 2000 forward, Sloan knew that this representation was false.

63.    Sloan was obligated to disclose that the Flushmate System had exploded, causing serious property damage and personal injury.

64.    Sloan was obligated to disclose these facts to Plaintiffs and the Class because: (1) the defect in the Flushmate System posed an unreasonable safety risk; (2) disclosure was necessary to qualify affirmative representations made concerning the Flushmate System in order to make such representations non-misleading; and (3) Sloan was uniquely in possession of the facts it did not disclose, knew that such facts were not available to Plaintiffs and the Class and knew that such facts would be highly material to any prospective purchaser or owner of a Flushmate Toilet.

65.    Instead of disclosing these facts, since at least 2000 Sloan has engaged in a practice of deceptive material misrepresentations and omissions in connection with the marketing, advertising, and sale of the Flushmate System.  Had Sloan disclosed the known history of leaks and explosions and the risks and consequences of such leaks and explosions, including the risk of serious laceration injuries due to impact and the risk of flooding to the property, Plaintiffs and the Class would not have purchased any toilet containing the Flushmate System.

F.    **Reliance by Consumers on Representations and Omissions Made by Sloan to the Distribution Chain**

66.    Almost all purchasers of Flushmate Toilets rely on contractors, plumbing equipment dealers and others (collectively, "Advisors") to advise them concerning the advantages and disadvantages of purchasing a particular type and brand of toilet.

67.    Sloan knows Advisors will recommend the Flushmate System only if they are convinced it is reliable and safe.  Sloan undertook a broad-based and effective advertising and promotion campaign that was designed to – and did – convince Advisors that the Flushmate System was reliable.  At all times during the pendency of this campaign, Sloan was aware that the Flushmate System was not reliable, having received numerous reports and complaints of explosions and damaging leaks resulting from the failure of Flushmate Toilets.

68.    Sloan's advertising and promotion campaign was directed both to Advisors and to persons higher up the distribution chain who inform the Advisors concerning the merits of particular products.  Sloan intended that all statements it made concerning the reliability of the Flushmate System be communicated down the distribution chain to the Advisors and ultimately to consumers.

69.    In order to sell the Flushmate System, Sloan first had to convince the Manufacturer Defendants to incorporate the Flushmate System into Flushmate Toilets.  Sloan knew that Advisors and their customers assume that the

1    Manufacturer Defendants would not produce Flushmate Toilets if the Flushmate

2    System were unsafe or unreliable.

3          70.    If the Manufacturer Defendants had been aware of either (1) the falsity

4    of Sloan's representation that the Flushmate System was "free of defects in material

5    and workmanship" or (2) that the Flushmate System had leaked, exploded and

6    caused personal injury and property damage, they would not have incorporated the

7    Flushmate System into Flushmate Toilets.  If the Manufacturer Defendants had not

8    incorporated the Flushmate System into their products, neither Plaintiffs nor the

9    Class would have suffered the harm described herein.

10          71.    In addition to persuading the Manufacturer Defendants to purchase the

11   Flushmate System, Sloan needed to convince persons farther down the distribution

12   chain of the advantages and reliability of the Flushmate System.  The distribution

13   chain consists of the Manufacturer Defendants, their manufacturer representatives,

14   distributors, plumbing supply vendors, contractors, plumbers and others who either

15   are, or have direct access to, Advisors.

16          72.    Sloan employed public relations and marketing professionals to

17   disseminate broadly information about the purported reliability of Flushmate

18   Toilets.  For example, Sloan employed the Interline Group to undertake a series of

19   promotional initiatives (which Interline described as "advertising, public relations,

20   website development, sales and marketing support, technical writing, packaging

21   and promotional materials and direct mail") to educate "the residential and light

22   commercial marketplace about pressure-assist technology as a water-saving

23   alternative to gravity toilets" and "*dispel myths about the undependability of low-*

24   *consumption toilets*."  (Emphasis added.)

25          73.    Interline undertook these initiatives – including creation of a "micro-

26   site," case studies, advertisements and technical materials – for the purpose of

27   convincing participants in the distribution chain, including Advisors, that

28

1   Flushmate Toilets are dependable high-end toilet products that should be

2   recommended to end-users in the market for a new toilet.

3        74.    Follow-up surveys conducted by Interline demonstrated that, as a

4   result of its marketing campaign, the "public is more aware of pressure-assist

5   technology and that they're more willing to buy these water-conserving toilets,

6   *especially when the toilets are proven to be more reliable*."  (Emphasis added.)

7        75.    A true and correct copy of these Interline statements is attached as

8   **Exhibit I**.

9        76.    Sloan's public relations efforts and material omissions persuaded

10   manufacturers to manufacture Flushmate Toilets and Advisors to promote their sale

11   to end-users.  Throughout the Class Period, every level in the distribution chain

12   relied upon the material misrepresentations and omissions by Sloan regarding the

13   defect.

14        77.    This reliance pervaded all transactions throughout the Class Period

15   relating to Flushmate Systems and Flushmate Toilets.

16        78.    If the Advisors had been aware of either (1) the falsity of Sloan's

17   representation that the Flushmate System was "free of defects in material and

18   workmanship" or (2) that the Flushmate System had leaked, exploded and caused

19   personal injury and property damage, they would have recommended that Plaintiffs

20   and the Class not purchase Flushmate Toilets.

21        79.    If the Advisors had recommended against purchasing Flushmate

22   Toilets, Plaintiffs and the Class would not have purchased them.  The reliance by

23   Plaintiffs and the Class on the Advisors was reasonable because the Advisors are in

24   the business of advising consumers concerning the purchase of toilets.

25        **G.**    **Defendants' Breach of the Implied Warranty of Merchantability**

26        80.    The Legislature provided that "every sale of consumer goods that are

27   sold at retail in this state shall be accompanied by the manufacturer's and the retail

28

seller's implied warranty that the goods are merchantable." Civ. Code § 1792.
This statutory warranty does not require vertical privity between the plaintiff and
the manufacturer or seller.[1]  The Legislature intended that Plaintiffs and the Class
could enforce Sloan's implied warranty of merchantability whether or not they were
in privity with Sloan.

81.    In addition, Plaintiffs and the Class are third party beneficiaries of the
warranties between Sloan and the Manufacturer Defendants.  Sloan and the
Manufacturer Defendants intended that all implied warranties made by Sloan
concerning the Flushmate System would be for the benefit of Plaintiffs and the
Class.  This intent is evidenced, *inter alia*, in the written warranties of the
Manufacturer Defendants, which provide that "[f]or warranty issues related to
Flushmate, [Plaintiffs and the Class should] contact" Sloan (the "Gerber
Warranty").  A true and correct copy of the Gerber Warranty is attached as
**Exhibit J**.

82.    Consistent with Defendants' intent, Plaintiff Ede was told by Kohler
to contact Sloan regarding the problems with his Flushmate Toilets.  Further, when
the Manufacturer Defendants sell Flushmate Toilets, they ensure that literature
related to the Flushmate System, separate from their own materials relating to the
toilet, is supplied to consumers.

83.    The implied warranties made by Sloan to the Manufacturer Defendants
would be of no economic value to them unless Plaintiffs and the Class received the
benefits of such warranties.  The Manufacturer Defendants are not users of
Flushmate Toilets.  The economic benefit of implied warranties made by Sloan to
the Manufacturer Defendants depends on the ability of consumers who buy their
products to obtain redress from Sloan if the warranties are breached.  Since the

---

[1] *E.g.*, *Keegan v. American Honda Motor Co., Inc*., 838 F.Supp.2d 929, 946-47
(C.D. Cal. 2012).

Manufacturer Defendants refer their customers to Sloan to address issues related to

the Flushmate System, it is in the best interests of the Manufacturer Defendants that

Plaintiffs and the Class be able to enforce these warranties.  Plaintiffs allege that

under *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65, 145

Cal.Rptr. 448 (1978), the implied warranties made by Sloan to the Manufacturer

Defendants are enforceable by Plaintiffs and the Class.

### H.    Plaintiffs' Experiences and Reliance on Advisors

84.    All Plaintiffs relied to their detriment on recommendations made by

plumbers, contractors, or other specialists.  Such Advisors would not have

recommended that Plaintiffs purchase Flushmate Toilets if Sloan had disclosed the

defects in the Flushmate System or its history of explosions and leakage.

85.    Each Plaintiff was exposed to Sloan's material misrepresentations and

omissions through Advisors.  These Advisors transmitted material

misrepresentations and omissions from higher up on the distribution chain to

Plaintiffs and the Class in the form of expert recommendations.

### i.    UDC

86.    UDC owns seven Flushmate Toilets manufactured by American

Standard which are used by hundreds of members of the public every week.  UDC

did not become aware of any problems with Flushmate Toilets until approximately

July 2012, when it learned of the Recall.

87.    UDC purchased and installed its seven Flushmate Toilets as part of a

building remodel which took place in late 2003 or early 2004.  UDC hired Gary

Fisher Construction, with which it had a longstanding relationship, as its general

contractor for the project.

88.    Gary Fisher told UDC that commercial building codes for the City of

Palmdale required low-water consumption toilets.  Gary Fisher informed UDC that

the Flushmate Toilets would meet the new building codes, and recommended them.

89.    The Flushmate Toilets recommended by Gary Fisher were premium toilets.  The cost of the toilets exceeded UDC's estimated budget for the bathroom remodeling.  However, Gary Fisher assured UDC that the toilets satisfied building code requirements and had a powerful flush.  UDC trusted Gary Fisher and had no reason to question his judgment and recommendation to install the Flushmate Toilets.

90.    UDC had daily meetings with Gary Fisher throughout the six-month construction project.  At no point did Mr. Fisher inform UDC that Flushmate Toilets had any history of leaks or explosions.

91.    Had UDC been informed of Sloan's history of causing personal injury and property damage, UDC would not have installed Flushmate Toilets.  There were many other low-consumption toilets on the market which did not pose any risk of personal injury or property damage.

92.    To date, one of UDC's Flushmate Toilets has exploded and caused damage to the bathroom floor, requiring the replacement of floor tiles as well as the toilet itself.

93.    UDC was not aware that the defective Flushmate System caused this failure, and did not notify Sloan concerning the exploded toilet.  Thus, UDC's toilet is not included in the 304 explosions of which Sloan reported having received notice, as part of the Recall.

94.    Because of risk to the public, UDC will have to replace all of its Flushmate Toilets.

### ii.    Ede

95.    Ede owns six Flushmate Toilets manufactured by Kohler which were installed in two properties in California, including his primary residence.  Ede is a licensed plumbing contractor and the primary owner of M&L Plumbing, Inc.

96.    Ede purchased his Flushmate Toilets from Ferguson Enterprises ("Ferguson"), one of the largest wholesale plumbing distributors in the nation.  Ede

1   has had a longstanding relationship with Ferguson and has purchased plumbing

2   supply products from Ferguson for many years.  Ede trusted the judgment of

3   Ferguson sales personnel because of their experience and knowledge concerning

4   the performance of plumbing products.

5       97.   At no time did Ferguson inform Ede that Flushmate Toilets had leaked

6   or exploded.  Had Ferguson or any other person informed Ede that Flushmate

7   Toilets had leaked, exploded and caused both personal injury and property damage,

8   Ede never would have installed the Flushmate Toilets at his home.

9       98.   Had Ferguson or any other person informed Ede that Flushmate

10  Toilets had leaked, exploded and caused both personal injury and property damage,

11  Ede would have recommended to his clients that they not install a Flushmate Toilet.

12      99.   During the winter of 2011, one of Ede's toilets exploded, causing

13  property damage as a result of flooding.  Ede paid for and installed a new toilet to

14  replace the irreparably damaged toilet.

15      100.  Ede contacted a manufacturing representative for Kohler, Zurier

16  Company.  The person at Zurier with whom Ede spoke told Ede that Zurier had

17  never been advised by any representative of Kohler that any of the Flushmate

18  Toilets had experienced any explosions.

19      101.  Ede did not notify Sloan concerning this exploded toilet; thus, Ede's

20  exploded toilet is not included in the 304 explosions of which Sloan reported

21  having received notice, as part of the Recall.

22      102.  Ede did not become aware of the Recall or the risk of explosion until

23  he was notified of the Recall by an acquaintance in July or August of 2012.

24      103.  Ede contacted Kohler about the Recall and was informed by Kohler

25  that he should contact Sloan.

26      104.  Ede then contacted Sloan to learn more about the Recall.  He was

27  directed to turn off the water supply to his toilets immediately and told that Sloan

28  would provide Repair Kits for the toilets.

105.   When Ede inquired about who was going to pay for the labor to install the Repair Kits, he was told that Sloan would not pay the cost of installing the Repair Kits.

106.   Ede incurred nearly one thousand dollars in expenses for additional supplies and labor in connection with the installation of Repair Kits at his residences.

### iii.    Williams

107.   Williams owns a Flushmate Toilet manufactured by Gerber.

108.   Williams hired Rosenberg Plumbing to install a new toilet.  Rosenberg was recommended to her and had done previous work for her at her home. Williams knew Rosenberg Plumbing to be honest and reliable.  Williams told Rosenberg that she wanted a high-quality toilet that flushed well.  Williams trusted Rosenberg and requested Rosenberg select her toilet.

109.   Rosenberg selected a Flushmate Toilet.  Rosenberg informed Williams that it was a "good toilet" that would meet her needs.  The toilet was significantly more expensive than a traditional gravity-flush toilet.

110.   Had Rosenberg Plumbing informed Williams that there was any risk that the Flushmate Toilet would leak or explode, Williams never would have installed the Flushmate Toilet in her home.

111.   On or about July 26, 2012, Williams contacted Sloan about the Recall and received a Repair Kit.  Sloan refused to pay the cost of the plumber who installed the Repair Kit.

### iv.    Pritchard

112.   Pritchard owns a Flushmate Toilet manufactured by Mansfield.

113.   Pritchard installed the Flushmate Toilet as part a Free Toilet Replacement Program in approximately 2008.  Under this program, residents exchanged their traditional gravity toilets for low-water consumption toilets paid for by Redwood City, California.  Redwood City officials gave Pritchard the option

- 18 -

of the Flushmate Toilet or an alternative low-water consumption gravity toilet from another toilet manufacturer.

114.   At no time did any representative of Redwood City inform Pritchard that the Flushmate Toilet had a history of explosions or carried a risk of personal injury and property damage.

115.   Had Pritchard been aware that the Flushmate Toilet had a known risk of leaks and explosions, he never would have installed the Flushmate Toilet.

### v.   <u>Steiner</u>

116.   Steiner owns a Flushmate Toilet manufactured by Kohler.  She purchased her toilet on or about October 7, 2007, from Home Depot.

117.   At the time of her purchase, Steiner was looking to replace a gravity toilet in her home.  Partly because of her experience with her daughter's toilet, which flushed fast, Steiner went to Home Depot to find a toilet with an effective flushing mechanism to replace her older toilet.

118.   Steiner ordered a Flushmate Toilet manufactured by Kohler based on the recommendation of a Home Depot sales representative, who seemed to be very knowledgeable about toilets and the Flushmate Toilet in particular.  Steiner relied on Home Depot's judgment in selecting a toilet that would best suit her needs.

119.   Had Home Depot or its management or employees informed Steiner that there was any risk of the Flushmate Toilet leaking or exploding, Steiner never would have purchased the Flushmate Toilet for her home as there were other toilets available that did not carry that risk.

120.   Steiner became aware of the Recall when she received a Recall Notice in the mail in or about September 2012.  Steiner went online and obtained information concerning the Repair Kit being offered by Sloan.

121.   Steiner contacted Sloan and informed it that she would not accept the Repair Kit, requesting instead a replacement pressure vessel pursuant to the terms of Sloan's Express Warranty covering defects in the Flushmate System.  However,

the Sloan representative informed Steiner that Sloan would not replace her Flushmate System and she would have to speak with a manager.

122.    After repeated requests, Sloan sent a licensed plumber to Steiner's residence to install the Repair Kit.  Sloan continues to deny Steiner's request to have the Flushmate System replaced.

### vi.    Patel, Brettler, Berube, Kubat, and Snyder

123.    Similar to the Plaintiffs whose experiences are detailed above, Plaintiffs Patel, Brettler, Berube, Kubat, and Snyder each detrimentally relied on recommendations made by plumbers, contractors, or other specialists.  These Advisors would not have recommended that these Plaintiffs purchase Flushmate Toilets had Sloan disclosed the defects in the Flushmate System or its history of explosions and leakage.  Each of these Plaintiffs was exposed to Sloan's material misrepresentations and omissions through Advisors who transmitted material misrepresentations and omissions from higher up on the distribution chain to Plaintiffs and the Class in the form of expert recommendations.

### I.    Flushmate Toilets Built by Manufacturer Defendants

124.    During the Class Period, the Manufacturer Defendants manufactured and sold Flushmate Toilets.  These toilets include, without limitation:

a.    American Standard: Cadet 16 ½" Elongated ADA Toilet, Model No. 2467.016, Cadet Elongated Front Toilet, Model No. 2462.016, Yorkville Elongated Front Toilet, Model No. 2876.016, and Glenwall Elongated Toilet, Model No. 2093.100;

b.    Kohler: Highline Pressure Assist and Pressure Lite, Wellworth Pressure Assist and Pressure Lite, and Barrington Pressure Assist that flush 1.4 gallon and 1.6 gallon toilets;

c.    Gerber: Maurice one-piece toilet (Model No. 21-012), Ultra-Flush™ Handicap Elongated Toilet (Model No. 21-318), Ultra-Flush™ Elongated

1   Back Outlet Toilet (Model No. 21-310), Ultra-Flush™ Round Front Toilet (Model

2   No. 21-302), and Ultra-Flush™ Elongated Front Toilet (Model No. 21-312);

3           d.      Mansfield: QUANTUM™ Elongated Front, Back Outlet Toilet

4   149-123, QUANTUM™ Elongated Front Toilet 147-123, QUANTUM™ Round

5   Front Toilet 146-123, and QUANTUM™ Elongated Front Smart-Height Toilet

6   148-123.

7   **V.      STATUTE OF LIMITATIONS**

8           125.   **Discovery Rule.**  The defective nature of the Flushmate System is

9   latent and not perceptible to Plaintiffs and the Class.  Plaintiffs did not become

10  aware that they had suffered losses caused by the defective Flushmate System until

11  they were made aware of the Recall in the months following the issuance of the

12  Recall Notice.

13          126.   **Fraudulent Concealment Tolling.**  Any applicable statutes of

14  limitation have been tolled by Sloan's knowing and active concealment of facts as

15  alleged herein.  Without any fault or lack of diligence on their part, Plaintiffs and

16  the Class have been kept ignorant by Sloan of vital information essential to the

17  pursuit of these claims.  Plaintiffs and the Class could not reasonably have

18  discovered the problems associated with the Flushmate System on their own.

19          127.   **Estoppel.**  Sloan is estopped from relying on any statutes of limitation

20  in defense of this action.  For the reasons described in paragraph 63, Sloan was

21  under a continuous duty to disclose to Plaintiffs and the Class the true character,

22  quality and nature of the Flushmate System, especially because the problems

23  associated with the Flushmate System pose unreasonable safety risks.  Sloan

24  knowingly and affirmatively misrepresented and actively concealed the true

25  character, quality, and nature of the Flushmate System and the risk of explosions

26  and leaks.  Plaintiffs and the Class reasonably relied upon Sloan's active

27  concealment of these facts.  Had the true facts been disclosed, Plaintiffs and the

28  Class would not have purchased any toilet with the Flushmate System.

## VI.   DAMAGES ALLEGATIONS AND MEASURES OF RESTITUTION

128.   As a result of the facts heretofore alleged, Plaintiffs and the Class have suffered actual loss in one or more of the following amounts:

a.   The difference in market value between Flushmate Toilets and toilets which are not defective.  Plaintiffs allege that this difference is the full price of the Flushmate Toilet.

b.   The cost of replacing the Flushmate Toilets or the Flushmate Systems, and any other amounts necessary to return Plaintiffs and the Class to the position they would have enjoyed had they not purchased Flushmate Toilets.

c.   The cost of hiring a licensed plumber or other third party to install the Repair Kit.

## VII.   CLASS ACTION ALLEGATIONS

129.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated (together, the "Class").

130.   The particular Classes that Plaintiffs seek to represent in this action are defined as follows:

**The Nationwide Purchaser Class**: All persons in the United States who purchased toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing System manufactured from October 14, 1997 to June 30, 2009.

**The Nationwide Home Depot Purchaser Subclass**: All persons in the United States who purchased from Home Depot, U.S.A., Inc., toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing System manufactured from October 14, 1997 to June 30, 2009.

**The California Recall Class**: All persons and entities in California who own toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing System manufactured from October 14, 1997 to June 30, 2009.

- 22 -

1    **The California Purchaser Subclass**: All persons in California who

2    purchased toilets containing a Series 503 Flushmate® III Pressure-

3    Assist Flushing System manufactured from October 14, 1997 to June

4    30, 2009.

5    **The California Consumer Subclass**: All persons who purchased

6    toilets in California containing a Series 503 Flushmate® III Pressure-

7    Assist Flushing System manufactured from October 14, 1997 to June

8    30, 2009 who are consumers within the meaning of the Song-Beverly

9    Consumer Warranty Act, Cal. Civ. Code § 1791, and the Consumer

10    Legal Remedies Act, Cal. Civ. Code § 1761.

11    **The New Jersey Recall Class**: All persons and entities in New Jersey who

12    own toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing

13    System manufactured from October 14, 1997 to June 30, 2009.

14    **The Florida Recall Class**: All consumers in Florida who own toilets

15    containing a Series 503 Flushmate® III Pressure-Assist Flushing System

16    manufactured from October 14, 1997 to June 30, 2009.

17    **The Colorado Recall Class**: All persons and entities in Colorado who own

18    toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing

19    System manufactured from October 14, 1997 to June 30, 2009.

20    **The Nebraska Recall Class**: All persons and entities in Nebraska who own

21    toilets containing a Series 503 Flushmate® III Pressure-Assist Flushing

22    System manufactured from October 14, 1997 to June 30, 2009.

23    131.   The following persons are excluded from the Class: (1)

24    all Defendants and their subsidiaries and affiliates; (2) all persons who make a

25    timely election to be excluded from the Class; and (3) the judge(s) to whom this

26    case is assigned and any immediate family members thereof.

27    132.   Plaintiffs reserve the right to modify or amend the definition of the

28    Class as appropriate.

1    133.   Certification of Plaintiffs' claims for class-wide treatment is

2  appropriate because Plaintiffs can prove the elements of their claims on a class-

3  wide basis using the same evidence as would be used to prove those elements in

4  individual actions alleging the same claims and because this case meets the

5  requirements of Federal Rule of Civil Procedure 23.

6    134.   **Numerosity Under Rule 23(a)(1)**.  The members of the Class are so

7  numerous that individual joinder of all the members is impracticable.  There are

8  hundreds of thousands of Class members who have been damaged by Defendants'

9  conduct.

10   135.   **Commonality and Predominance Under Rule 23(a)(2) and (b)(3)**.

11 This action involves common questions of law and fact, which predominate over

12 any questions affecting individual Class members.  These common questions

13 include, without limitation:

14        a.   Whether Sloan violated California's Unfair Competition Law,

15 Bus. & Prof. Code § 17200, *et seq.*, by, among other things, engaging in unfair,

16 unlawful, or fraudulent practices;

17        b.   Whether Sloan violated California's Consumer Legal Remedies

18 Act, Civ. Code § 1750, *et seq.*, by falsely advertising that its Flushmate System was

19 of a certain standard, quality, and grade when in fact, it was not;

20        c.   Whether the Flushmate System is subject to premature failure in

21 advance of its useful life, and not suitable for use as a long-term plumbing product;

22        d.   Whether Sloan knew or should have known that the Flushmate

23 System was defective;

24        e.   Whether the Flushmate System involved an unreasonable safety

25 risk to owners/users;

26        f.   Whether Sloan had a duty to disclose that toilets containing the

27 Flushmate System had exploded and caused property damage;

28

1      g.      Whether Sloan's false representations and concealment of the

2   defective nature of the Flushmate System were done with the intent to deceive

3   Plaintiffs and the Class;

4      h.      Whether Sloan's false representations and concealment of the

5   defective nature of the Flushmate System were done with the intent to induce

6   Plaintiffs and the Class to rely upon them;

7      i.      Whether Sloan breached its express warranties to Plaintiffs and

8   the Class;

9      j.      Whether Defendants breached their implied warranties to

10  Plaintiffs and the Class;

11     k.      Whether Plaintiffs and the Class are entitled to equitable relief,

12  including restitution; and

13     l.      Whether Plaintiffs and the Class are entitled to restitution or

14  damages and, if so, in what amount;

15     136.   **Typicality Under Rule 23(a)(3)**.  The named Plaintiffs' claims are

16  typical of the claims of the Class because, among other things, Plaintiffs, like all

17  Class members, purchased and/or own Flushmate Toilets.  The uniformly defective

18  nature of the Flushmate System renders each class member's claims, legal theory,

19  and injury common and typical.

20     137.   **Adequacy of Representation Under Rule 23(a)(4)**.  Plaintiffs are

21  adequate representatives of the Class because their interests do not conflict with the

22  interests of the proposed Class.  Plaintiffs have retained counsel competent and

23  experienced in complex class actions involving building products and product

24  liability, and intend to prosecute this action vigorously.  The interests of the Class

25  will be fairly and adequately protected by Plaintiffs and their counsel.

26     138.   **Superiority Under Rule 23(b)(3)**.  A class action is superior to all

27  other available means for the fair and efficient adjudication of this controversy in

28  that:

- 25 -

1        a.     The prosecution of separate actions by individual members of

2 the Class would create a foreseeable risk of inconsistent or varying adjudications,

3 which would establish incompatible results and standards for Defendants;

4        b.     Adjudications with respect to individual members of the Class

5 would, as a practical matter, be dispositive of the interests of the other members not

6 parties to the individual adjudications or would substantially impair or impede their

7 ability to protect their own separate interests;

8        c.     Class action treatment avoids the waste and duplication inherent

9 in potentially thousands of individual actions and conserves the resources of the

10 courts; and

11     139.   The claims of the individual class members are relatively small

12 compared to the burden and expense that would be required to litigate their claims

13 against Defendants individually, so it would be impracticable for the members of

14 the Class to seek redress for Defendants' wrongful conduct.  Even if the members

15 of the Class could afford individual litigation, the court system could not.

16 Individualized litigation creates a potential for inconsistent or contradictory

17 judgments, and increases the delay and expense to all parties and the court system.

18 By contrast, the class action device presents far fewer management difficulties, and

19 provides the benefits of single adjudication, economy of scale, and comprehensive

20 supervision by a single court.

21     140.  **Class Notice (Central District Local Rule 23-2.2(g))**.  Plaintiffs

22 cannot be certain of the form and manner of class notice they will propose until the

23 class is finally defined and some discovery concerning the identity of Class

24 members is undertaken.  Based on the experience of their counsel in previous cases,

25 however, Plaintiffs anticipate that notice by mail will be given to all Class members

26 who can be identified specifically and that this notice will be supplemented by

27 notice published in appropriate periodicals, notice published on the Internet and by

28 press releases and similar communications to relevant industry and trade groups.

# VIII.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Fraudulent Concealment / Intentional Misrepresentation)
### (Against Sloan)

141.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

142.   Sloan represented falsely that the Flushmate System was free of defects in material and workmanship.

143.   Sloan knew that this representation was false at the time it was made.

144.   Sloan knowingly concealed and intentionally failed to disclose to Plaintiffs and the Nationwide Purchaser Class the fact that the Flushmate System was deficient and susceptible to leaks and explosions which posed an unreasonable safety risk.

145.   For the reasons set forth in paragraph 63, Sloan owed a duty to Plaintiffs and the Nationwide Purchaser Class to disclose these material facts about the Flushmate System.

146.   In making the misrepresentations and omissions alleged herein, Sloan intended to deceive Plaintiffs and the members of the Nationwide Purchaser Class.

147.    In making the misrepresentations and omissions alleged herein, Sloan intended that Plaintiffs and the members of the Nationwide Purchaser Class rely on such misrepresentations and omissions.

148.   Plaintiffs and the members of the Nationwide Purchaser Class were unaware of the falsity of the representations and of the omitted facts.  Plaintiffs and the members of the Nationwide Purchaser Class reasonably and justifiably relied to their detriment upon such misrepresentations and omissions.

149.   Had Plaintiffs and the members of the Nationwide Purchaser Class been aware of the true state of affairs concerning the Flushmate Toilets, they would not have purchased any Flushmate Toilets.

150.   As a proximate result of Sloan's material misrepresentations and omissions, Plaintiffs and the members of the Nationwide Purchaser Class have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Violation of the Unfair Competition Law)
### (Against Sloan)

151.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

152.   Pursuant to Bus. & Prof. Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

153.   Sloan's actions alleged herein in connection with the sale of the Flushmate System and the Recall constitute unfair, deceptive, fraudulent, and unlawful practices committed in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

154.   Sloan's conduct was unlawful because Sloan violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5) and (a)(7), the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1793.2, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(6), 2301(7), and 2304(d)(1).

155.   Sloan's conduct was unfair because Sloan acted unscrupulously in a manner that is substantially injurious to consumers.  In particular: (1) Sloan concealed information concerning the danger posed by its defective product and continued to sell the product even after it was made aware of the danger; (2) notice of the Recall was inadequate and therefore failed to disclose adequately the risks posed by the defective Flushmate System to the California Recall Class; and (3) since the Recall Notice describes only Flushmate Systems manufactured in a particular time frame, and some members of the California Recall Class purchased Flushmate Toilets covered by the Recall months or years after the manufacture of

1   the defective Flushmate Systems, members of the California Recall Class were

2   misled concerning whether their Flushmate Toilets are affected by the Recall.

3       156.   All of this conduct of Sloan has no utility or countervailing benefit,

4   other than to attempt to avoid liability.

5       157.   Plaintiffs and the members of the California Recall Class could not

6   reasonably have avoided injury as a result of Sloan's unfair conduct.

7       158.   Sloan's conduct was also fraudulent.  Members of the California

8   public were certain to be deceived because Sloan failed to disclose the Flushmate

9   System's known defects, history of exploding and the related risks to safety and

10  property.  A reasonable customer would not expect a toilet to explode or leak under

11  any circumstances and would expect that the toilet would last for decades.

12  Plaintiffs and the members of the California Recall Class would not have purchased

13  any Flushmate Toilet but for the fraudulent, deceptive and unlawful conduct of

14  Sloan.

15      159.   All of Sloan's unfair conduct, failures to disclose, and

16  misrepresentations alleged herein occurred in the course of Sloan's business and

17  were part of a pattern or generalized course of conduct.

18      160.   Sloan's deceptive, unfair, fraudulent, and unlawful conduct alleged

19  herein was specifically designed to and did induce Plaintiffs and members of the

20  California Recall Class or their agents to purchase toilets with the Flushmate

21  System for use and installation in their homes and other structures.

22      161.   As a direct and proximate cause of Sloan's unfair methods of

23  competition and unfair or deceptive acts or practices, Plaintiffs and the California

24  Recall Class have suffered injury-in-fact and have lost money or property.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD CLAIM FOR RELIEF**
**(Consumer Legal Remedies Act)**
**(Against Sloan)**

162.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

163.   Flushmate Systems are "goods" as defined by Civil Code § 1761(a).

164.   Sloan is a "person" as defined by Civil Code § 1761(c).

165.   Plaintiffs Ede, Williams and Pritchard, and the members of the California Consumer Subclass, purchased Flushmate Toilets for personal, family and household purposes and are therefore "consumers" as defined by Civil Code § 1761(d).

166.   Such purchases by Plaintiffs and the California Consumer Subclass are "transactions" as defined by Civil Code § 1761(e).

167.   Under the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1770, *et seq*., the following are unfair methods of competition and unfair or deceptive acts or practices:

        a.   "Representing that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Civil Code § 1770(a)(5).

        b.   "Representing that goods . . . are of a particular standard, quality, or grade, . . . if they are of another."  Civil Code § 1770(a)(7).

168.   For the reasons stated in paragraph 63, Sloan owed a duty to Plaintiffs and the California Consumer Subclass to disclose the defects in, and the unreasonable safety risks associated with, the Flushmate System.

169.   The falsity of the Express Warranty and the defects and unreasonable safety risks concealed by Sloan are material, because a reasonable consumer would consider them to be important in deciding whether or not to purchase a Flushmate

- 30 -

Toilet.  A reasonable customer would not expect a toilet to explode under any circumstances and would expect it to last for many years.

170.    Had Plaintiffs and the members of the California Consumer Subclass known the facts Sloan concealed or that the Express Warranty was false, they would not have purchased a Flushmate Toilet.

171.    By making the Express Warranty, failing to disclose and concealing the defects in the Flushmate System, and thereby causing physical injury and property damage, Sloan engaged in unfair competition and unfair and deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7).

172.    Sloan's unfair and deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk to the public.

173.    As a proximate result of Sloan's unfair and deceptive acts and practices, Plaintiffs and the members of the California Consumer Subclass have been harmed.  Plaintiffs and the members of the California Consumer Subclass seek actual damages, punitive damages, and attorneys' fees and costs according to proof at trial.

174.    On August 24, 2012, Ede served Sloan with notice of its violation of the CLRA pursuant to Civil Code § 1782 by certified mail to its agent for service of process and its corporate offices.  A copy of this notice is attached hereto as **Exhibit K**.  Sloan failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of this notice.

175.    On August 24, 2012, Williams served Sloan with notice of its violation of the CLRA pursuant to Civil Code § 1782 by certified mail to its agent for service of process and its corporate offices.  A copy of this notice is attached hereto as **Exhibit L**.  Sloan failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of this notice.

# FOURTH CLAIM FOR RELIEF
## (Breach of Express Warranty)
## (Against Sloan)

176.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

177.   In connection with the sale of Flushmate System, Sloan made the Express Warranty.

178.   Sloan promised in the Warranty Document "to replace any part of this product that proves, upon our inspection . . . to be defective in material or workmanship."

179.   Sloan breached the Express Warranty by selling the defective Flushmate System.  Sloan breached the terms of the Warranty Document by, *inter alia*, refusing to provide and install replacement pressure vessels to Plaintiffs and the Nationwide Purchaser Class.

180.   As a result of Sloan's breaches, Plaintiffs and the Nationwide Purchaser Class have been damaged in an amount to be proven at trial.

181.   Sloan received timely notice of the breach of warranty alleged herein by reason of Plaintiffs Ede, Williams, and Steiner's notice to it and its own knowledge of the defects in Flushmate System.

182.   In addition, notice of the breach of warranty to Sloan was – and remains – futile.  Accordingly, persons who have not given notice under the terms of the Express Warranty should not now be required to do so.  Sloan is clearly on notice of the existence of the alleged defect in light of the Recall.  The purpose of notice is to give Sloan the opportunity to repair and replace the defective Flushmate System.  By the Recall, Sloan has acknowledged that the Flushmate System has a defect that necessitates a retrofit and has instructed owners of the Flushmate System to cease using their Flushmate Toilets until it is retrofitted.

183.   There is, therefore, no genuine purpose in providing additional notice to Sloan and, insofar as such notice is determined to be a condition to enforcement of the Express Warranty, performance of that condition should be excused as futile.

## FIFTH CLAIM FOR RELIEF
**(Breach of Express Warranty Under Song-Beverly Consumer Warranty Act)**
**(Against Sloan)**

184.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

185.   Flushmate Systems are "consumer goods" within the meaning of Civil Code § 1791(a).

186.   Sloan is a "manufacturer" within the meaning of Civil Code § 1791(j).

187.   Plaintiffs Ede, Williams and Pritchard, and the members of the California Consumer Subclass, purchased Flushmate Toilets within the State of California.

188.   Sloan expressly made the Express Warranty and agreed that it would repair or replace any defective products.

189.   In violation of Civil Code § 1793.2, Sloan breached the Express Warranty by selling Flushmate Systems that were defective and refusing to replace the toilets and/or the defective Flushmate Systems.

190.   As a result of Sloan's breach of the Express Warranties, Plaintiffs and the California Consumer Subclass have been damaged in an amount to be proven at trial and are entitled to relief under the statute.

## SIXTH CLAIM FOR RELIEF
**(Breach of Express Warranty – Magnuson-Moss Warranty Act)**
**(Against Sloan)**

191.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

192.   The Flushmate System is a consumer product as defined in 15 U.S.C. § 2301(1).

193.   Plaintiffs and the members of the Nationwide Purchaser Class are consumers as defined in 15 U.S.C. § 2301(3).

194.   Sloan is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

195.   Sloan provided Plaintiffs and the Nationwide Purchaser Class with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

196.   Sloan has breached the Express Warranty by refusing to honor the express warranty to replace, free of charge, any defective pressure vessel.

197.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

198.   Despite repeated demands by Plaintiffs and members of the Nationwide Purchaser Class that Sloan pay the labor costs and incidental expenses associated with repairing or replacing the Flushmate System, and with installing the Repair Kit, Sloan has refused to do so.  Sloan's refusal in this regard violates 15 U.S.C. § 2304(d)(1).

199.   Sloan was afforded a reasonable opportunity to cure its breach of the Express Warranty, but failed to do so.

200.   Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives.

201.   As a direct and proximate result of Sloan's breach of its express written warranties, Plaintiffs and the members of the Nationwide Purchaser Class have been damaged in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)
### (Against Sloan, American Standard, Kohler, Gerber, and Mansfield)

202.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

203.   Under the Song-Beverly Consumer Warranty Act, Civ. Code § 1792, *et seq.*, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and a retail seller's implied warranty that the goods are merchantable (the "Implied Warranty").

204.   Sloan and the Manufacturer Defendants allegedly breached the Implied Warranty by selling Flushmate Systems and Flushmate Toilets that were not of merchantable quality and that failed to perform the tasks for which they were intended.

205.   It is alleged that certain Flushmate Toilets are not of a merchantable quality because the plastic vessel used in the pressure-assisted flushing system is defective, dangerous, and unusable, and poses a known, objective, identifiable safety risk to Plaintiffs and the California Consumer Subclass.  In particular, the Flushmate System can leak or burst at or near the vessel weld seam releasing stored pressure and causing the toilet tank lid to blow off and shatter the tank.  As a result, it is alleged that the Flushmate System is not fit for ordinary use as a flushing mechanism.

206.   Flushmate Systems and Flushmate Toilets are "consumer goods" within the meaning of the Song-Beverly statute.

207.   Sloan and the Manufacturer Defendants are "manufacturers" within the meaning of the statute.

208.   Plaintiffs Ede, Williams and Pritchard, and the members of the
California Consumer Subclass, purchased toilets with a Flushmate System in the
State of California.

209.   Plaintiffs and the California Consumer Subclass maintain that they can
enforce the Implied Warranty whether or not they are in privity with any
Defendant.  Civil Code § 1792 provides that "[u]nless disclaimed in the manner
prescribed by this chapter, every sale of consumer goods that are sold at retail in
this state shall be accompanied by the manufacturer's and the retail seller's implied
warranty that the goods are merchantable."  Civil Code § 1792 does not require
privity of contract to enforce the Implied Warranty.  Plaintiffs and the California
Consumer Subclass maintain that they can also enforce the Implied Warranty
because they are the intended beneficiaries of the Implied Warranty that Sloan
made to the Manufacturer Defendants when it sold them Flushmate Systems.

210.   As a direct and proximate result of Defendants' breaches of the
statutory Implied Warranty, Plaintiffs and the members of the California Consumer
Subclass have been damaged in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Implied Warranty)
### (Against Home Depot)

211.   Plaintiffs incorporate by reference each allegation set forth in the
preceding paragraphs.

212.   When it sold Flushmate Toilets, Home Depot extended an implied
warranty to the members of the Nationwide Home Depot Purchaser Subclass that
the toilet products were merchantable and fit for the ordinary purpose for which
such products were sold.  Persons who purchased a toilet from Home Depot are
entitled to the benefit of their bargain: a safe toilet that will not leak or explode.

213.   Home Depot breached this implied warranty in that Flushmate Toilets
are (1) not fit for ordinary use, and (2) not of a merchantable quality.

214.   The Flushmate Toilets that Home Depot sold created an unreasonable safety risk.  These sales transactions were for products that need to be repaired or replaced.

215.   As a direct and proximate result of Home Depot's breach of the implied warranty of merchantability, Plaintiffs and the members of the Nationwide Home Depot Purchaser Subclass have been damaged in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**(Breach of Implied Warranty – Magnuson-Moss Warranty Act)**
**(Against Sloan and Home Depot)**

216.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

217.   Plaintiffs and the members of the Nationwide Purchaser Class and Nationwide Home Depot Purchaser Subclass are consumers as defined in 15 U.S.C. § 2301(3).

218.   Defendant Sloan is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

219.   Defendant Home Depot is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

220.   Flushmate Systems and Flushmate Toilets are consumer products as defined in 15 U.S.C. § 2301(1).

221.   Sloan extended an implied warranty to Plaintiffs and the members of the Nationwide Purchaser Class by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in Flushmate Systems.

222.   Sloan breached this implied warranty by selling Flushmate Systems that were neither merchantable nor fit for their intended purpose.

223.   Home Depot extended an implied warranty to Steiner and the members of the Nationwide Home Depot Purchaser Subclass by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in Flushmate Toilets.

224.   Home Depot breached this implied warranty by selling Flushmate Toilets that were neither merchantable nor fit for their intended purpose.

225.   Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives.

226.   Plaintiff Steiner notified Home Depot of its breach of warranty on October 5, 2012.  A true and correct copy of the letter Steiner sent Home Depot is attached as **Exhibit M**.

227.   As a direct and proximate result of Sloan and Home Depot's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs, the Nationwide Purchaser Class, and the Nationwide Home Depot Purchaser Subclass have been damaged in an amount to be proven at trial.

### TENTH CLAIM FOR RELIEF
**(Violation of the False Advertising Law)**
**(Against Sloan)**

228.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

229.   Under California Business and Professions Code section 17500, *et seq.*, "It is unlawful for any . . . corporation . . . with intent or indirectly to dispose of real or personal property . . . or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposal . . . disposition thereof,

1   which is untrue or misleading, and which is known, or which by the exercise of

2   reasonable care should be known, to be untrue or misleading . . . or . . . to so make

3   or disseminate or cause to be so made or disseminated any such statement as part of

4   a plan or scheme with the intent not to sell that personal property . . . as so

5   advertised."

6       230.   Sloan violated this False Advertising Law by knowingly disseminating

7   unfair, deceptive, untrue and/or misleading marketing, advertising and other

8   broadly disseminated representations, including that its plumbing fixtures met

9   ASSE and ASME standards when in fact they did not.

10      231.   As a result of Sloan's violations of the FAL, Plaintiffs and the

11  California Recall Class have suffered injury-in-fact, lost money, and lost property,

12  and Sloan has been unjustly enriched.

13      232.   But for Sloan's misrepresentations described herein, Plaintiffs and the

14  California Recall Class would not have purchased or installed toilets containing the

15  Flushmate Systems.

16      233.   Pursuant to California Business and Professions Code section 17535,

17  Plaintiffs and the California Recall Class seek to recover from Sloan restitution and

18  disgorgement of earnings, profits, compensation, and benefit obtained as a result of

19  the practices that are unlawful under section 17500, *et seq.* according to proof.

20                        **ELEVENTH CLAIM FOR RELIEF**
21              **(Strict Liability – Design Defect / Manufacturing Defect)**
22                           **(Against Sloan)**

23      234.   Plaintiffs incorporate by reference each allegation set forth in the

24  preceding paragraphs.

25      235.   At all relevant times, Sloan was engaged in the business of

26  manufacturing the Flushmate System.

27

28

236.   The Flushmate System was expected to and did reach Plaintiffs and the members of the Nationwide Purchaser Class without substantial change to the condition in which it was designed, manufactured, and sold by Sloan.

237.   The Flushmate System is or was installed in each Flushmate Toilet owned by Plaintiffs and the members of the Nationwide Purchaser Class.  Each Flushmate System was and is defective and unfit for its intended use, as detailed herein.  The Flushmate System has caused and will continue to cause property damage and other damage to Plaintiffs and the members of the Nationwide Purchaser Class.

238.   The Flushmate System was defective in design, formulation, and manufacture when it left the hands of Sloan.  The foreseeable risks of the Flushmate System vastly exceeded any benefits associated with its design, formulation, or manufacture.

239.   At all relevant times, the Flushmate System was in a defective condition and unsafe, and Sloan knew or should have known that the Flushmate System was defective and unsafe.

240.   Plaintiffs and the members of the Nationwide Purchaser Class used the Flushmate System and the toilets in which it was or is contained for the purposes and in the manner normally intended.

241.   Sloan owed a duty to design and manufacture a product that was not unreasonably dangerous for its normal, intended use and that would not cause property and/or personal injury to Plaintiffs and the members of the Nationwide Purchaser Class.

242.   Plaintiffs and the members of the Nationwide Purchaser Class, acting as reasonably prudent people, could not have discovered that Sloan's Flushmate System was defective, or perceived its danger.

243.   The Flushmate System designed, manufactured, warranted, advertised and sold by Sloan was unreasonably dangerous and defective due to inadequate warnings, instructions, and product testing.

244.   Accordingly, Sloan is strictly liable to Plaintiffs and the members of the Nationwide Purchaser Class for its design, manufacture, and sales of the defective Flushmate System.

**TWELFTH CLAIM FOR RELIEF**
**(Violation of the New Jersey Consumer Fraud Act)**
**(Against Sloan)**

245.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

246.   The New Jersey Consumer Fraud Act, N.J.S.A. § 56:B-1, *et seq.* (the "NJCFA") provides, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. § 56:B-2.

247.   Sloan's actions, as alleged herein, constitute affirmative acts or representations that include: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation.  As such, Sloan's actions are unlawful under the NJCFA.

248.   Because this NJCFA claim is based in part on affirmative acts or representations, Plaintiffs and the New Jersey Recall Class need not demonstrate actual reliance on such, or Sloan's intent to deceive.

249.   Sloan's actions, as alleged herein, constitute knowing omissions and therefore are unlawful under the NJCFA.

250.   Plaintiffs and the New Jersey Recall Class reasonably and justifiably relied on Sloan's deceptive, unfair, fraudulent, and unlawful knowing omissions, as alleged herein.  Plaintiffs, the members of the New Jersey Recall Class, and the public at large were certain to be deceived because Sloan knowingly failed to disclose the Flushmate System's defects and history of exploding and the related serious health, safety, and property damage risks.  A reasonable customer would expect that a toilet would not explode under any circumstances and would last for decades.  Plaintiffs and the New Jersey Recall Class would not have purchased toilets containing the Flushmate System had this material information been disclosed.

251.   As a direct and proximate cause of Sloan's unlawful acts and omissions, Plaintiffs and the New Jersey Recall Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased toilets in which the recalled Flushmate Systems are or were installed but for Sloan's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Flushmate System. The Flushmate System has or will require Plaintiffs and the New Jersey Recall Class to incur costs to repair and/or replace their toilets and/or Flushmate System, and/or to install the Repair Kit.

252.   Further, Plaintiffs and the New Jersey Recall Class are unable to use their toilets until the Flushmate System has been repaired and/or replaced due to the serious health, safety, and property damage risks created by the Flushmate System. Sloan has instructed Plaintiffs and the New Jersey Recall Class to immediately turn off the water supply to the toilet, and to stop using the Flushmate System.

253.    Pursuant to the NJCFA mandate, Plaintiffs and the New Jersey Recall Class are entitled to an award of treble damages because they have suffered an ascertainable loss.

## THIRTEENTH CLAIM FOR RELIEF
### (Violation of the Florida Deceptive and Unfair Trade Practices Act)
### (Against Sloan)

254.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

255.    Plaintiffs and the members of the Florida Recall Class are "consumers," and the transactions at issue herein constitute "trade or commerce," within the meaning of Florida Statutes § 501.203(7) and (8).

256.    Florida Statutes § 502.301, *et seq*., commonly known as "the FDUPTA," was enacted to ensure protection from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

257.    Sloan's actions, as alleged herein, constitute affirmative acts or representations that include unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation.  As such, Sloan's actions are unlawful under the FDUPTA.

258.    Because this FDUPTA claim is based in part on affirmative acts or representations, Plaintiffs and the Florida Recall Class need not demonstrate actual reliance on such, or Sloan's intent to deceive.

259.    Sloan's actions, as alleged herein, constitute knowing omissions and therefore are unlawful under the FDUPTA.

260.    Plaintiffs and the Florida Recall Class reasonably and justifiably relied on Sloan's deceptive, unfair, fraudulent, and unlawful knowing omissions, as alleged herein.  Plaintiffs, members of the Florida Recall Class, and the public at large were certain to be deceived because Sloan knowingly failed to disclose the

Flushmate System's defects and history of exploding and the related serious health,
safety, and property damage risks.  A reasonable customer would expect that a
toilet would not explode under any circumstances and would last for decades.
Plaintiffs and the Florida Recall Class would not have purchased toilets containing
the Flushmate System had this material information been disclosed.

261.   As a direct and proximate cause of Sloan's unlawful acts and
omissions, Plaintiffs and the Florida Recall Class suffered an ascertainable loss of
money or property, real or personal, in that they would not have purchased toilets in
which the recalled Flushmate Systems are or were installed but for Sloan's material
omissions and affirmative acts or representations in connection with the marketing,
advertising, and sale of the Flushmate System.  The Flushmate System has or will
require Plaintiffs and the Florida Recall Class to incur costs to repair and/or replace
their toilets and/or Flushmate System, and/or to install the Repair Kit.

262.   Further, Plaintiffs and the Florida Recall Class are unable to use their
toilets until the Flushmate System has been repaired and/or replaced due to the
serious health, safety, and property damage risks created by the Flushmate System.
Sloan has instructed Plaintiffs and the Florida Recall Class to immediately turn off
the water supply to the toilet, and to stop using the Flushmate System.

263.   Plaintiffs and the Florida Recall Class are entitled to compensatory
damages, equitable and declaratory relief, costs, and reasonable attorney's fees.

**FOURTEENTH CLAIM FOR RELIEF**
**(Violation of the Colorado Consumer Protection Act)**
**(Against Sloan)**

264.   Plaintiffs incorporate by reference each allegation set forth in the
preceding paragraphs.

265.   The Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-
105(1)(e), (g), and (u), provides in part, as follows:

(1) A person engages in a deceptive trade practice when, in the course

- 44 -

of such person's business, vocation, or occupation, such person:

(e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services or property;

(g) Represents that the goods, food, services or property are of a particular standard, quality, or grade or the goods are of a particular style or model, if he knows or should know that they are of another;

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

266.    In the course of its business, Sloan engaged in the deceptive trade practices and unconscionable acts or practices set forth herein.

267.    Sloan's business practices in advertising, marketing, and selling its Flushmate System, including its material misrepresentations and omissions relating to the design, reliability, and performance of the Flushmate System, as more fully set forth herein, constitute deceptive trade practices and unconscionable acts or practices, and constitute multiple separate violations of Colo. Rev. Stat. Ann. §§ 6-1-105(1)(e), (g), and (u).

268.    Sloan's misrepresentations and omissions are material in that they related to matters which are important to consumers and were likely to affect the purchasing decisions of consumers, such as Plaintiffs and the Colorado Recall Class.

269.    Plaintiffs and the Colorado Recall Class reasonably and justifiably relied on Sloan's material deceptive, unfair, fraudulent, and unlawful knowing omissions, as alleged herein.  Plaintiffs, the members of the Colorado Recall Class, and the public at large were certain to be deceived, and Sloan intended to deceive them.  Sloan knowingly failed to disclose the Flushmate System's defects and

1    history of exploding and the related serious health, safety, and property damage

2    risks.  A reasonable customer would expect that a toilet would not explode under

3    any circumstances and would last for decades.  Plaintiffs and the Colorado Recall

4    Class would not have purchased toilets containing the Flushmate System had this

5    material information been disclosed.

6          270.   As a direct and proximate cause of Sloan's unlawful acts and

7    omissions, Plaintiffs and the Colorado Recall Class have suffered an ascertainable

8    loss of money or property, real or personal, in that they would not have purchased

9    toilets in which the recalled Flushmate Systems are or were installed but for

10   Defendant's material omissions and affirmative acts or representations in

11   connection with the marketing, advertising, and sale of the Flushmate System.  The

12   Flushmate System has or will require Plaintiffs and the Colorado Recall Class to

13   incur costs to repair and/or replace their toilets and/or Flushmate System, and/or to

14   install the Repair Kit.

15         271.   Further, Plaintiffs and the Colorado Recall Class are unable to use

16   their toilets until the Flushmate System has been repaired and/or replaced due to the

17   serious health, safety, and property damage risks created by the Flushmate System.

18   Sloan has instructed Plaintiffs and the Colorado Recall Class to immediately turn

19   off the water supply to the toilet, and to stop using the Flushmate System.

20         272.   Sloan knowingly and willfully engaged in the deceptive trade practices

21   and unconscionable acts and practices described herein.

22         273.   Plaintiffs and the Colorado Recall Class are entitled to actual damages,

23   compensatory damages, equitable and declaratory relief, costs, and reasonable

24   attorney's fees.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTEENTH CLAIM FOR RELIEF
### (Violation of the Nebraska Uniform Deceptive Trade Practices Act)
### (Against Sloan)

274.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

275.   The Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-302(a)(5) and (7), provides in part:

(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, he or she:

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ,

(7) Represents that the goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

276.   Neb. Rev. Stat. § 87-303.01(1) provides that "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction shall be in violation of sections 87.301 to 87.306."

277.   Neb. Rev. Stat. § 87.302, *et seq*. was enacted to ensure protection from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

278.   Plaintiffs and the Nebraska Recall Class are "persons likely to be damaged by a deceptive trade practice," and the transactions at issue in this complaint constitute "consumer transaction[s]," within the meaning of Nebraska Statutes §§ 87.301(19) and 87.303.01(1).

279.   In the course of its business, Sloan engaged in the deceptive trade practices and unconscionable acts or practices set forth herein.

280.   Sloan's business practices in advertising, marketing, and selling its Flushmate System, including its material misrepresentations and omissions relating to the design, reliability, and performance of the Flushmate System, as more fully set forth herein, constitute deceptive trade practices and unconscionable acts or practices, and constitute multiple separate violations of Neb. Rev. Stat. §§ 87-302(a)(5) and (7), and Neb. Rev. Stat. § 87-303.01(1).

281.   Sloan's misrepresentations and omissions are material in that they related to matters which are important to consumers and were likely to affect the purchasing decisions of consumers, such as Plaintiffs and the Nebraska Recall Class.

282.   Plaintiffs and the Nebraska Recall Class reasonably and justifiably relied on Sloan's material deceptive, unfair, fraudulent, and unlawful knowing omissions, as alleged herein.  Plaintiffs, the members of the Nebraska Recall Class, and the public at large were certain to be deceived, and Sloan intended to deceive them.  Sloan knowingly failed to disclose the Flushmate System's defects and history of exploding and the related serious health, safety, and property damage risks.  A reasonable customer would expect that a toilet would not explode under any circumstances and would last for decades.  Plaintiffs and the Nebraska Recall Class would not have purchased toilets containing the Flushmate System had this material information been disclosed.

283.   As a direct and proximate cause of Sloan's unlawful acts and omissions, Plaintiffs and the Nebraska Recall Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased toilets in which the recalled Flushmate Systems are or were installed but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Flushmate System.  The Flushmate System has or will require Plaintiffs and the Nebraska Recall Class to

1   incur costs to repair and/or replace their toilets and/or Flushmate System, and/or to

2   install the Repair Kit.

3        284.   Further, Plaintiffs and the Nebraska Recall Class are unable to use

4   their toilets until the Flushmate System has been repaired and/or replaced due to the

5   serious health, safety, and property damage risks created by the Flushmate System.

6   Sloan has instructed Plaintiffs and the Nebraska Recall Class to immediately turn

7   off the water supply to the toilet, and to stop using the Flushmate System.

8        285.   Sloan knowingly and willfully engaged in the deceptive trade practices

9   and unconscionable acts and practices described herein.

10       286.   Plaintiffs and the Nebraska Recall Class are entitled to actual damages,

11  compensatory damages, equitable and declaratory relief, costs, and reasonable

12  attorney's fees.

13                        **SIXTEENTH CLAIM FOR RELIEF**
14              **(Violation of the Nebraska Consumer Protection Act)**
15                              **(Against Sloan)**

16       287.   Plaintiffs incorporate by reference each allegation set forth in the

17  preceding paragraphs.

18       288.   The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602,

19  provides, "Unfair methods of competition and unfair or deceptive acts or practices

20  in the conduct of any trade or commerce shall be unlawful."

21       289.   In the course of its business, Sloan engaged in the deceptive trade

22  practices and unconscionable acts or practices set forth herein.

23       290.   Sloan's business practices in advertising, marketing, and selling its

24  Flushmate System, including its material misrepresentations and omissions relating

25  to the design, reliability, and performance of the Flushmate System, as more fully

26  set forth herein, constitute deceptive trade practices and unconscionable acts or

27  practices, and constitute multiple separate violations of Neb. Rev. Stat. § 59-1602.

28

291.   Sloan's misrepresentations and omissions are material in that they related to matters which are important to consumers and were likely to affect the purchasing decisions of consumers, such as Plaintiffs and the Nebraska Recall Class.

292.   Plaintiffs and the Nebraska Recall Class reasonably and justifiably relied on Sloan's material deceptive, unfair, fraudulent, and unlawful knowing omissions, as alleged herein.  Plaintiffs, the members of the Nebraska Recall Class, and the public at large were certain to be deceived, and Sloan intended to deceive them.  Sloan knowingly failed to disclose the Flushmate System's defects and history of exploding and the related serious health, safety, and property damage risks.  A reasonable customer would expect that a toilet would not explode under any circumstances and would last for decades.  Plaintiffs and the Nebraska Recall Class would not have purchased toilets containing the Flushmate System had this material information been disclosed.

293.   As a direct and proximate cause of Sloan's unlawful acts and omissions, Plaintiffs and the Nebraska Recall Class have suffered an ascertainable loss of money or property, real or personal, in that they would not have purchased toilets in which the recalled Flushmate Systems are or were installed but for Defendant's material omissions and affirmative acts or representations in connection with the marketing, advertising, and sale of the Flushmate System.  The Flushmate System has or will require Plaintiffs and the Nebraska Recall Class to incur costs to repair and/or replace their toilets and/or Flushmate System, and/or to install the Repair Kit.

294.   Further, Plaintiffs and the Nebraska Recall Class are unable to use their toilets until the Flushmate System has been repaired and/or replaced due to the serious health, safety, and property damage risks created by the Flushmate System.  Sloan has instructed Plaintiffs and the Nebraska Recall Class to immediately turn off the water supply to the toilet, and to stop using the Flushmate System.

295.   Sloan knowingly and willfully engaged in the deceptive trade practices and unconscionable acts and practices described herein.

296.   Plaintiffs and the Nebraska Recall Class are entitled to actual damages, compensatory damages, an increased award of damages of up to one thousand dollars ($1,000) per incident, equitable and declaratory relief, costs, and reasonable attorney's fees.

## SEVENTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Against All Defendants)

297.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

298.   Plaintiffs and the members of the Nationwide Purchaser Class conferred a benefit on Defendants when they purchased the Flushmate Systems.

299.   By means of Defendants' wrongful conduct alleged herein, Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and the members of the Nationwide Purchaser Class.  In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and the members of the Nationwide Purchaser Class.

300.   As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Nationwide Purchaser Class.

301.   Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

302.   Plaintiffs maintain it is inequitable for Defendants to be permitted to retain the benefits they received from the sale of knowingly defective toilets. Plaintiffs allege the Flushmate Systems were defective in design, were not fit for their ordinary and intended use, and did not perform in accord with the advertisements, marketing materials and warranties disseminated by Sloan, or the

1   reasonable expectations of ordinary consumers, and consequently caused the

2   Plaintiffs and the members of the Nationwide Purchaser Class to lose money.

3   Defendants' retention of such funds under such circumstances that render it

4   inequitable to do so constitutes unjust enrichment.

5       303.   Plaintiffs and the members of the Nationwide Purchaser Class suffered

6   a loss of money as a result of this unjust enrichment because: (a) they would not

7   have purchased the Flushmate Systems on the same terms if the true facts

8   concerning the defective Flushmate Systems had been known; (b) they paid a price

9   premium due to the represented fact the Flushmate Systems would be free from

10  defects; and (c) the Flushmate Systems did not perform as promised.

11      304.   The benefits obtained by Defendants from the sale of defective

12  Flushmate Systems rightfully belong to Plaintiffs and the members of the

13  Nationwide Purchaser Class.  As such, Defendants should be compelled to disgorge

14  in a common fund for the benefit of Plaintiffs and the members of the Nationwide

15  Purchaser Class all wrongful or inequitable proceeds received by them.

16      305.   Plaintiffs and the members of the Nationwide Purchaser Class have no

17  adequate remedy at law and are entitled to restitution for their loss.

18                      **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly

20  situated, pray that the Court certify the Classes as defined herein, enter judgment

21  against Defendants and in favor of Plaintiffs and the Class, and award the following

22  relief:

23                      **(Against All Defendants)**

24      1.   Actual damages according to proof;

25      2.   Costs of suit;

26      3.   Costs of notice to the Class; and

27      4.   All other relief to which Plaintiffs and the Class may be entitled at law

28  or in equity and which the Court deems appropriate.

1                                 **(Against Sloan)**

2        5.       Restitution of all sums paid by Plaintiffs and the Class for the

3 Flushmate System;

4        6.       An injunction:

5               a.       Requiring Sloan to give full and fair notice of the Recall

6 sufficient to ensure the receipt of such notice by all consumers entitled to benefits

7 thereunder; and

8               b.       To provide and pay for an effective retrofit of the defects in the

9 Flushmate System;

10        7.       Punitive damages as provided by the law;

11        8.       Pre-judgment interest as allowed by law; and

12        9.       Attorneys' fees.

13

14 Dated:    February 7, 2014              Respectfully submitted,

15                                                   BIRKA-WHITE LAW OFFICES

16

17                                             By: ___/s/ *David M. Birka-White*___

18                                             DAVID M. BIRKA-WHITE
                                            Attorneys for Plaintiffs

19                                             *United Desert Charities, Fred Ede III,*
                                            *Emily Williams, Bruce Pritchard, and*

20                                             *Jean Steiner*

21                                             Robert J. Nelson (State Bar No. 132797)

22                                             *rnelson@lchb.com*
                                            Kristen Law Sagafi (State Bar No.

23                                             222249)
                                            *klaw@lchb.com*

24                                             Jordan Elias (State Bar No. 228731)
                                            *jelias@lchb.com*

25                                             LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP

26                                             275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339

27                                             Telephone:  (415) 956-1000
                                            Facsimile:  (415) 956-1008

28

1

2          Jordan Lucas Chaikin
           jchaikin@yourlawyer.com
3          PARKER WAICHMAN LLP
           3301 Bonita Beach Road Suite 101
4          Bonita Springs, FL 34134
           Telephone:  (239) 390-1000
5          Facsimile:  (239) 390-0055

6          Attorneys for Plaintiffs
           Daniel Berube and Jeffrey Brettler
7

8          Charles E. Schaffer
           cschaffer@lfsblaw.com
9          Brian F. Fox
           bfox@lfsblaw.com
10         LEVIN FISHBEIN SEDRAN &
           BERMAN
11         510 Walnut Street, Suite 500
           Philadelphia, PA  19106
12         Telephone:  (215) 592-1500
           Facsimile:  (215) 592-4663
13

14         Eric D. Holland
           eholland@allfela.com
15         HOLLAND GROVES SCHNELLER &
           STOLZE LLC
16         300 North Tucker Boulevard Suite 801
           St. Louis, MO 63101
17         Telephone:  (314) 241-8111
           Facsimile:  (314) 241-5554
18

19         Attorneys for Plaintiffs
           Randy Kubat and John Snyder
20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark John Geragos
geragos@geragos.com
Shelley Lynn Kaufman
kaufman@geragos.com
GERAGOS AND GERAGOS PC
644 South Figueroa Street
Los Angeles, CA 90017-3480
Telephone:  (213) 625-3900
Facsimile:  (213) 625-1600

Attorneys for Plaintiffs
Pankaj Patel, Daniel Berube and Jeffrey
Brettler

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial.

Dated:    February 7, 2014

Respectfully submitted,

BIRKA-WHITE LAW OFFICES


By: /s/ David M. Birka-White
DAVID M. BIRKA-WHITE
Attorneys for Plaintiffs
*United Desert Charities, Fred Ede III,
Emily Williams, Bruce Pritchard, and
Jean Steiner*