1  Robert J. Nelson (State Bar No. 132797)
   *rnelson@lchb.com*
2  Kristen Law Sagafi (State Bar No. 222249)
   *klaw@lchb.com*
3  Jordan Elias (State Bar No. 228731)
   *jelias@lchb.com*
4  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
6  Facsimile: (415) 956-1008

7  Attorneys for Plaintiffs and the Class

8  [Additional Class Counsel in signature block]

9                 UNITED STATES DISTRICT COURT

10         FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  UNITED DESERT CHARITIES,              Case No. CV12-06878 SJO (SHx)
    FRED EDE, III, EMILY WILLIAMS,
13  BRUCE PRITCHARD, and JEAN             **PLAINTIFFS' MOTION FOR**
    STEINER, on behalf of themselves and  **FINAL APPROVAL OF CLASS**
14  all others similarly situated,        **ACTION SETTLEMENT;**
                                          **MEMORANDUM OF POINTS**
15                    Plaintiffs,         **AND AUTHORITIES IN**
                                          **SUPPORT THEREOF**
16  v.
                                          Action Filed: August 9, 2012
17  SLOAN VALVE COMPANY,
    AMERICAN STANDARD BRANDS             *The Honorable S. James Otero*
18  AS AMERICA, INC., KOHLER CO.,
    GERBER PLUMBING FIXTURES,            Hearing Date:   August 25, 2014
19  LLC, MANSFIELD PLUMBING              Time:           10:00 a.m.
    PRODUCTS, LLC, and HOME              Dept.:          Courtroom 1
20  DEPOT, U.S.A., INC.,
                                         Consolidated Cases:
21                    Defendants.        *Berube v. Flushmate*
                                         2:13-cv-02372-SJO-SH
22                                       *Brettler v. Flushmate*
                                         2:13-cv-02499-SJO-SH
23                                       *Kubat, et. al. v. Flushmate*
                                         2:13-cv-02425-SJO-SH
24                                       *Patel v. Flushmate*
                                         2:13-cv-02428-SJO-SH
25

26                                       Related Case:
                                         *Dimov, et. al. v. Sloan Valve Co.*
27                                       1:12-cv-09700 (N.D. Ill.)

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on August 25, 2014, at 10:00 a.m., in the Courtroom of the Honorable S. James Otero, United States District Judge for the Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiffs, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a Final Order and Judgment approving the proposed Settlement Agreement ("Settlement") entered into between the parties. This motion is made following the conference of counsel pursuant to L.R. 7-3, and the Defendants in this action do not object to the motion in the context of the parties' proposed settlement.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Kristen Law Sagafi, David M. Birka-White, William M. Audet, and Katherine Kinsella and all documents attached thereto, Plaintiffs' Unopposed Motion for Preliminary Approval and the accompanying Memorandum of Points and Authorities, any reply papers, the argument of counsel, and all papers and records on file in this matter.

Dated: June 30, 2014              By: /s/ *Kristen Law Sagafi*
                                           Kristen Law Sagafi

                                  Robert J. Nelson (State Bar No. 132797)
                                  *rnelson@lchb.com*
                                  Kristen Law Sagafi (State Bar No. 222249)
                                  *klaw@lchb.com*
                                  Jordan Elias (State Bar No. 228731)
                                  *jelias@lchb.com*
                                  LIEFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP
                                  275 Battery Street, 29th Floor
                                  San Francisco, CA 94111-3339
                                  Telephone: (415) 956-1000
                                  Facsimile: (415) 956-1008

1    David M. Birka-White (State Bar No. 85721)
     *dbw@birka-white.com*
2    Stephen Oroza (State Bar No. 84681)
     *soroza@birka-white.com*
3    Mindy M. Wong (State Bar No. 267820)
     *mwong@birka-white.com*
4    BIRKA-WHITE LAW OFFICES
     65 Oak Court
5    Danville, CA 94526
     Telephone: (925) 362-9999
6    Facsimile: (925) 362-9970

7    *Attorneys for the Class and Plaintiffs United*
     *Desert Charities, Fred Ede III, Emily Williams,*
8    *Bruce Pritchard, and Jean Steiner*

9    William M. Audet (State Bar No. 117456)
     *waudet@audetlaw.com*
10   AUDET & PARTNERS, LLP
     221 Main Street, Suite 1460
11   San Francisco, CA 94105
     Telephone: (415) 568-2555
12   Facsimile: (415) 568-2556

13
     Kenneth A. Wexler
14   *kaw@wexlerwallace.com*
     Amy E. Keller
15   *aek@wexlerwallace.com*
     WEXLER WALLACE LLP
16   55 West Monroe, Suite 3300
     Chicago, IL 60603
17   Telephone: (312) 346-2222
     Facsimile: (312) 346-0022
18

19   *Attorneys for the Class and Plaintiffs Milen*
     *Dimov, Trigona Dimova, Scott Iver, and Neal*
20   *Olderman*

21   Jordan Lucas Chaikin
     *jchaikin@yourlawyer.com*
22   PARKER WAICHMAN LLP
     3301 Bonita Beach Road Suite 101
23   Bonita Springs, FL 34134
     Telephone: (239) 390-1000
24   Facsimile: (239) 390-0055

25
     *Attorneys for the Class and Plaintiffs Daniel*
26   *Berube and Jeffrey Brettler*

27

28

1   Charles E. Schaffer
    *cschaffer@lfsblaw.com*
2   Brian F. Fox
    *bfox@lfsblaw.com*
3   LEVIN FISHBEIN SEDRAN & BERMAN
    510 Walnut Street, Suite 500
4   Philadelphia, PA 19106
    Telephone: (215) 592-1500
5   Facsimile: (215) 592-4663
6
    Eric D. Holland
7   *eholland@allfela.com*
    HOLLAND GROVES SCHNELLER &
8   STOLZE LLC
    300 North Tucker Boulevard, Suite 801
9   St. Louis, MO 63101
    Telephone: (314) 241-8111
10  Facsimile: (314) 241-5554
11
    *Attorneys for the Class and Plaintiffs Randy*
12  *Kubat and John Snyder*
13  Mark John Geragos
    *geragos@geragos.com*
14  GERAGOS AND GERAGOS PC
    644 South Figueroa Street
15  Los Angeles, CA 90017-3480
    Telephone: (213) 625-3900
16  Facsimile: (213) 625-1600
17
    *Attorneys for the Class and Plaintiffs Pankaj*
18  *Patel, Daniel Berube and Jeffrey Brettler*
19
20
21
22
23
24
25
26
27
28

1180573.7

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION.................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.    INTRODUCTION.................................................................................1

II.   LITIGATION HISTORY.....................................................................3

    A.  The UDC Filing. ........................................................................3

    B.  Consolidated and Related Class Actions. ..................................4

    C.  Plaintiffs' Factual Allegations and Claims. ...............................5

    D.  Settlement Negotiations, Related Proceedings in This Court, Discovery, and Preliminary Approval. ......................................6

III.  SUMMARY OF THE SETTLEMENT TERMS ..................................9

    A.  The Class of Flushmate Toilet Owners.....................................9

    B.  Settlement Consideration. ........................................................10

      1.  Reimbursement for Unreimbursed Out-of-Pocket Installation Costs. .......................................................10

      2.  Reimbursement for Property Damage Caused by a Flushmate System Leak or Burst...............................11

    C.  Settlement Funding Schedule. .................................................12

    D.  Claims Process. ........................................................................13

    E.  Settlement Release. ..................................................................15

IV.  THE APPROVED CLASS NOTICE HAS BEEN DISSEMINATED, AND SATISFIES RULE 23 AND DUE PROCESS. ...................16

V.   FINAL APPROVAL IS WARRANTED...........................................17

    A.  Summary of Argument. ...........................................................17

    B.  The Settlement is Fair, Reasonable, and Adequate, and the Relevant Factors Weigh in Favor of Approval...............17

      1.  The Strengths of the Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Settlement Approval Here........................18

      2.  The Settlement Confers a Meaningful Benefit Upon the Class.....................................................................21

      3.  Investigation and Discovery Prior to the Settlement Weigh in Favor of Approval...........................................21

      4.  The Views of Experienced Class Counsel and the Positive Reaction of the Class Support Approval. ............22

      5.  No Governmental Entity Has Raised Any Concern About the Settlement. ...........................................................24

      6.  The Settlement Is the Product of Months of Robust Negotiations. .......................................................24

VI.  CONCLUSION ..................................................................................25

- iv -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979)...............................................................23

*Bruno v. Quten Research Inst., LLC*,
  Case No. SACV 11-00173 DOC (Ex),
  2013 U.S. Dist. LEXIS 35066 (C.D. Cal. March 13, 2013) .............................20

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)...........................................................17, 18, 20, 23

*Daniel E. Berube v. Flushmate, a Division of Sloan Valve Company*,
  Northern District of Florida, Case No. 3:12-CV-00531
  (filed 11/2/12) ...................................................................................................4

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  MDL No. 2147, 2011 WL 2204584 (N.D. Ill. June 2, 2011) ...........................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)............................................................................24

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).................................24

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Prods. Liab. Litig.*,
  Case No. Case No. 8:10ML 02151 JVS (FMOx),
  2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ..............................24

*In re Toys "R" Us-Del., Inc. Fair and Accurate Credit Transactions
  Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .......................................................23

*Jeffrey Brettler v. Flushmate, a Division of Sloan Valve Company*,
  District of New Jersey, Case No. 1:12-CV-07077 (filed 11/14/12)....................4

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977)..........................................................................23

*McKenzie v. Fed. Express Corp.*,
  No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666
  (C.D. Cal. July 2, 2012)....................................................................................23

*Milen Dimov, et al. v. Sloan Valve Company*,
  Northern District of Illinois, Case No. 1:12-cv-09700
  (filed 12/5/12) ....................................................................................................4

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082, 23 Cal. Rptr. 2d 101 (Cal. 1993) ..........................................19

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)......................................................................17, 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pankaj Patel v. Flushmate, a Division of Sloan Valve Company*,
  Northern District of California, Case No. 4:13-cv-00736
  (filed 2/19/13) ...................................................................................4

*Randy Kubat, et al. v. Flushmate, a Division of Sloan Valve Company*,
  District Court of Colorado, Case No. 1:13-cv-00520 (filed 2/28/13) .................4

*Simpao v. Gov't of Guam*,
  369 F. App'x 837 (9th Cir. 2010) ......................................................16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...........................................................18

*Torrisi v. Tuscon Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................18

## STATUTES

28 U.S.C. § 1404.................................................................................3

28 U.S.C. § 1715...............................................................................24

Cal. Bus. & Prof. Code § 17200 ..........................................................19

Cal. Civil Code § 1770, *et seq.* ..........................................................19

## RULES

Fed. R. Civ. P. 23.................................................................3, 8, 16, 17

Fed. R. Civ. P. 23(a)–(c) ...................................................................20

Fed. R. Civ. P. 23(c)(2).....................................................................23

Fed. R. Civ. P. 23(e) .......................................................................i, 18

Fed. R. Civ. P. 23(f).........................................................................20

Fed. R. Civ. P. 23(g) ........................................................................20

Fed. R. Civ. P. 30(b)(6) ................................................................8, 22

## TREATISES

4 *Newberg on Class Actions*,
  § 11:22, *et seq.* (4th ed. 2002) .......................................................17

4 *Newberg on Class Actions*,
  § 11:41, (4th ed. 2002) ..................................................................24

*Manual for Complex Litigation* (Fourth) § 21.63 (2004)......................17

*Manual for Complex Litigation* (Third) § 30.42 (1995).........................24

1180573.7

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3

Plaintiffs United Desert Charities, Fred Ede, III, Emily Williams, Bruce

4

Pritchard, Jean Steiner, Daniel Berube, Jeffrey Brettler, Randy Kubat, John Snyder,

5

Milen Dimov, Trigona Dimova, Scott Iver, Neal Olderman, and Pankaj Patel

6

("Plaintiffs"), individually and as representatives of the Class, submit this

7

Memorandum in support of their Motion for Final Approval of the Class Action

8

Settlement ("Settlement") with Defendants Sloan Valve Company ("Sloan"), AS

9

America, Inc., doing business as American Standard Brands ("American

10

Standard"), Kohler Co. ("Kohler"), Gerber Plumbing Fixtures, LLC ("Gerber"),

11

Mansfield Plumbing Products, LLC ("Mansfield"), and Home Depot, U.S.A., Inc.

12

("Home Depot") (collectively, "Defendants").

13

The proposed Settlement[1] resolves the consolidated and all pending related

14

class action cases arising from the Recall associated with the Flushmate System.

15

Plaintiffs alleged that the Flushmate Systems have a defect, causing leaks and/or

16

bursts at or near the weld seam of the Flushmate System's vessel. Plaintiffs allege

17

that, due to the nature of the Flushmate System, any leaks or bursts may release

18

stored pressure, and that in addition to the need to replace the System, the leak or

19

burst can cause not only property damage but potential personal injury as well. The

20

first class action complaint was filed in this Court on August 9, 2012. Other class

21

cases were filed elsewhere and, after extensive efforts by the parties in all of the

22

consolidated and related actions, the parties reached the global Settlement now

23

before the Court.

24

On February 21, 2014, after consideration of the parties' respective

25

submissions, the Court granted preliminary approval to the Settlement, finding that

26

---

27

[1] Capitalized terms utilized herein have the same definitions as set forth in the Class Action Settlement Agreement and Release ("Settlement"), filed January 28, 2014 (ECF No.116-1), unless otherwise specified.

28

1   it "confers substantial benefits upon the Settlement class" and appeared to be "fair,

2   reasonable, and adequate." (ECF No. 135, ¶¶ 2, 3.) The proposed Settlement

3   provides significant cash relief to Class members, among other benefits. The cash

4   payments available under the Settlement will fairly and substantially reimburse

5   Class members for out-of-pocket expenses related to the repair or replacement of

6   their Flushmate Toilets, and will also reimburse Class members for property

7   damage resulting from a Flushmate System that leaked or burst.

8         Under the Settlement, Defendants will pay a minimum of eighteen million

9   dollars ($18,000,000) into a common fund to reimburse Class members for

10  unreimbursed out-of-pocket repair and replacement costs as well as property

11  damage. To the extent Property Damage claims of the Class members exceed $1.5

12  million and certain other conditions are met, Defendants will be obligated to make

13  additional payments into the Settlement fund for the benefit of the Class.

14  Furthermore, unlike most common fund settlements, the Settlement here provides

15  for an extended, two-year claims period to maximize the ability of Class members

16  to obtain relief under the Settlement. Significantly, too, if a sufficient sum remains

17  in the Settlement fund after the Claims Period, Class members will receive

18  additional funds on a *pro rata* basis if it is feasible to do so. In no event will any

19  Settlement funds revert to the Defendants.

20        This comprehensive Settlement is the result of a series of five in-person

21  mediation sessions before the Honorable William J. Cahill (Ret.), numerous in-

22  person sessions with the parties, and countless telephonic mediation and settlement-

23  related calls. The hard-fought negotiations lasted more than nine months. The

24  Settlement constitutes a significant achievement in terms of the completeness of

25  available relief and the public safety benefit from creating a monetary incentive for

26  consumers to repair or replace their Flushmate Toilets. Judge Cahill will continue

27  to contribute his expertise and knowledge of the case as Special Master, ensuring

28  that the Settlement is efficiently and fairly implemented.

As detailed below (and as noted in the parties' prior submissions to this Court), the Settlement now before this Court is fair, reasonable, and adequate, and satisfies all the requirements of Fed. R. Civ. P. 23 and due process. Plaintiffs therefore respectfully request that the Court approve the Settlement and enter the proposed Final Order and Judgment submitted herewith.

## II. LITIGATION HISTORY

### A. The UDC Filing.

Plaintiffs United Desert Charities, Fred Ede III, Bruce Pritchard, Emily Williams, and Jean Steiner filed their First Amended Class Action Complaint ("FAC") in this Court on October 5, 2012, against the Sloan Defendants and others ("UDC Action").[2] (ECF No. 20.) On October 22, 2012, Defendants filed a transfer motion pursuant to 28 U.S.C. § 1404, which the Court ultimately denied. (*See* ECF Nos. 43, 48, 51, 54, 64.)

While that motion was pending, on November 5, 2012, Defendants also moved to dismiss the FAC. (ECF Nos. 52, 53, 55, 60.) Plaintiffs filed a consolidated opposition on November 19, 2012, to which Defendants replied. (ECF Nos. 57, 61, 62.) On January 4, 2013, this Court denied in part and granted in part the motion to dismiss. The Court's detailed memorandum opinion guided the subsequent litigation and settlement negotiations. (ECF No. 65.)

Plaintiffs filed their Third Amended Complaint ("TAC") on February 7, 2013 (ECF No. 75), and Defendants moved to dismiss it on March 4, 2013. (ECF No. 76 (Flushmate and Defendant Toilet Manufacturers' Motion to Dismiss); ECF No. 77

---

[2] Federal courts in the Eastern and Northern Districts of California dismissed related actions in favor of the first-filed *United Desert Charities* action. Plaintiff UDC filed its original complaint in this District on August 9, 2012, naming Sloan and American Standard as Defendants. (ECF No. 1.) Plaintiff Fred Ede, III filed his original complaint in the Eastern District of California on August 23, 2012, naming Sloan and Kohler as Defendants. (E.D. Cal. Case No. 1:12-cv-01391-LJO-DLB, ECF No. 1.) Plaintiff Emily Williams filed her original complaint in the Northern District of California on September 12, 2012, naming Sloan and Gerber as Defendants. (N.D. Cal. Case No. 3:12-cv-04757-EMC, ECF No. 1.)

1   (Home Depot's Motion to Dismiss).) Upon stipulation of the parties, the Court on

2   March 25, 2013, stayed further proceedings related to the motions to dismiss to

3   allow the parties to focus on mediation and settlement negotiations. (ECF No. 81.)

4   **B.   Consolidated and Related Class Actions.**

5        After Plaintiffs in the UDC Action filed suit in this Court, five other civil

6   class actions were filed around the United States. Counsel for Plaintiffs in those

7   actions participated in the global mediation sessions and settlement discussions

8   with the Defendants. The Settlement before this Court efficiently resolves all the

9   claims asserted in the consolidated and related cases.[3] Notwithstanding the number

10  of class actions filed by different Plaintiffs and law firms, Plaintiffs' counsel in all

11  the actions worked together to secure a global Settlement that would benefit all

12  Plaintiffs, the Class, and the public at large.

13       Plaintiffs in *Berube*, *Brettler*, *Patel*, and *Kubat* stipulated to transferring their

14  actions to this Court for consolidation with the first-filed UDC Action.[4] With leave

15  of the Court, Plaintiffs in the *UDC*, *Berube*, *Brettler*, *Patel*, and *Kubat* matters filed

16  an amended and consolidated complaint on February 7, 2014 (the Conditional

17  Fourth Amended and Consolidated Complaint ("CFACC") (ECF No. 129)). *See*

18  Settlement, § I (Definition of "Complaint") (ECF No. 119-1 at 10).

19       The *Dimov* action is not consolidated herewith and remains pending as a

20  "related" action in the United States District Court for the Northern District of

21

---

22  [3] *Daniel E. Berube v. Flushmate, a Division of Sloan Valve Company*, Northern District of Florida, Case No. 3:12-CV-00531 (filed 11/2/12); *Jeffrey Brettler v.*

23  *Flushmate, a Division of Sloan Valve Company*, District of New Jersey, Case No. 1:12-CV-07077 (filed 11/14/12); *Milen Dimov, et al. v. Sloan Valve Company*,

24  Northern District of Illinois, Case No. 1:12-cv-09700 (filed 12/5/12); *Pankaj Patel v. Flushmate, a Division of Sloan Valve Company*, Northern District of California,

25  Case No. 4:13-cv-00736 (filed 2/19/13); and *Randy Kubat, et al. v. Flushmate, a Division of Sloan Valve Company*, District Court of Colorado, Case No. 1:13-cv-

26  00520 (filed 2/28/13).

27  [4] *Berube*, N.D. Fla. Case No. 3:12-CV-00531, ECF No. 14; *Brettler*, D.N.J. Case No. 1:12-CV-07077, ECF No. 15; *Patel*, N.D. Cal. Case No. 4:13-cv-00736, ECF

28  No. 18; *Kubat*, D. Colo. Case No. 1:13-cv-00520, ECF No. 6.

Illinois. However, after initial motion practice, that case was stayed by agreement of the *Dimov* plaintiffs and the Sloan Defendants in deference to the global settlement discussions. (N.D. Ill. Case No. 1:12-cv-09700, Dkt. No. 39.) *Dimov* remains stayed while this Court considers the Settlement, and will be voluntarily dismissed with prejudice if and when the Settlement becomes effective and final. *See* Settlement, § II(I) (ECF No. 119-1 at 22).

### C.   Plaintiffs' Factual Allegations and Claims.

Plaintiffs' complaint initially centered on the Series 503 Flushmate® III Pressure-Assist Flushing System manufactured by Sloan between October 14, 1997 and February 29, 2008.[5] (*See generally* First Amended Complaint, filed Oct. 5, 2012; ECF No. 20.) As alleged therein and in the operative CFACC, the Flushmate System differs from traditional gravity flushing systems in that the water flushed is under constant pressure. The Flushmate System includes a pressurized tank made of two plastic halves welded together that is placed inside a traditional porcelain toilet fixture, and that forces water into the toilet bowl upon flushing. The compressed air inside this plastic tank sometimes exerts such pressure that the weld separates, causing leaks and bursts that can rupture the porcelain fixture, potentially resulting in other property damage and physical harm. (CFACC ¶¶ 32, 34; ECF No. 129.)

Plaintiffs allege that Flushmate Toilets were marketed as a premium product and sold at higher prices than gravity-based toilets. Distributors, contractors and plumbers ("Advisors") advised Class members to pay a premium based on their belief that the Flushmate System was more effective than traditional toilets and saved water. (CFACC ¶ 33.) These Advisors, however, would have recommended that consumers not purchase Flushmate Toilets had Sloan disclosed the safety hazard, and Plaintiffs and the members of the proposed litigation Class would not

---

[5] For Settlement purposes, the group of covered Flushmate Toilets has been expanded to those manufactured between October 14, 1997, and June 30, 2009. The Settlement and CFACC provisions reflect the expanded range of Class members.

- 5 -

1  have purchased these toilets had they known that the Flushmate System "had a
2  propensity to burst and fail." (CFACC ¶¶ 78–79.)

3       According to the CFACC and other class complaints, Sloan misrepresented
4  in its written warranty (which it knew toilet Advisors would see and rely upon) that
5  the Flushmate System was "free of defects in material and workmanship." (CFACC
6  ¶¶ 57–65.) Sloan promoted Flushmate as "more reliable" than other toilets as part
7  of its stated strategy to "dispel myths about the undependability of low-
8  consumption toilets." (CFACC ¶¶ 66–79 & Ex. I thereto.) Plaintiffs allege that
9  Sloan failed to disclose the defect until June 2012, despite knowing of the defect
10 when it issued product advisories in 2000 and 2003. (CFACC ¶¶ 39–41 & Exs. B &
11 C thereto.)

12      Plaintiffs in the consolidated actions assert seventeen claims on behalf of the
13 proposed nationwide Class, including fraudulent concealment, violation of the
14 Unfair Competition Law, and breach of warranty. (CFACC ¶¶ 141–305.) These
15 causes of action arise out of the same facts as the *Dimov* action still pending in the
16 Northern District of Illinois, which asserts different causes of action. The CFACC
17 prays for damages corresponding to the loss in value of the toilets due to the defect,
18 or the cost of replacing the Flushmate Systems. (CFACC ¶ 128.)

19     **D.    Settlement Negotiations, Related Proceedings in This Court,**
          **Discovery, and Preliminary Approval.**
20

21      In addition to ongoing settlement discussions before and after the "official"
22 mediations, the parties participated in four all-day mediation sessions on April 18
23 and 19, 2013, and May 13 and 14, 2013. (Declaration of Kristen Law Sagafi in
24 Support of Final Approval of Class Action Settlement and Class Counsel's
25 Application for Attorneys' Fees and Expenses ("Sagafi Decl."), ¶ 12(a);
26 Declaration of David M. Birka-White ("Birka-White Decl."), ¶ 13; Declaration of
27 William M. Audet ("Audet Decl."), ¶ 19.) As the record reflects, during the
28 sessions and at all times, the parties' negotiations were hard-fought, contested, and

1    at arms' length. (Sagafi Decl., ¶¶ 12(a)-(i); Birka-White Decl., ¶ 12; Audet Decl.,

2    ¶¶ 19, 22.) As part of the settlement discussions, the parties retained as mediator the

3    Honorable William J. Cahill of JAMS, a retired Superior Court Judge with

4    significant prior experience and skill with complex class action settlements. (Sagafi

5    Decl., ¶ 12(a); Birka-White Decl., ¶ 13.)

6          After much deliberation, and after the negotiations appeared on the verge of

7    breaking down, the parties came to an agreement regarding core settlement terms

8    on May 17, 2013. (Sagafi Decl., ¶ 12(b).) The parties promptly informed this Court,

9    which on May 28, 2013, stayed this action for 60 days so the parties could work

10   towards a final settlement agreement. (ECF Nos. 91–92.)

11         Painstaking negotiations on a host of issues followed. (Sagafi Decl., ¶ 12(b);

12   Audet Decl., ¶¶ 19, 21.) The parties' initial exchange of drafts in June 2013 brought

13   to light a number of issues that needed resolution. (Sagafi Decl., ¶ 12(c).) The

14   parties' divergent views necessitated further negotiations and another full-day

15   mediation session before Judge Cahill on July 25, 2013. (Sagafi Decl., ¶ 12(c).)

16   With the assistance of Judge Cahill, the parties thereafter continued to negotiate and

17   reached an agreement in principle on July 29, 2013. (Sagafi Decl., ¶ 12(d); Birka-

18   White Decl., ¶¶ 14–15.)

19         In light of the complex nature of the settlement, the parties further negotiated

20   detailed terms, working steadily toward a finalized agreement over the next several

21   months. In the meantime, Plaintiffs formally requested and obtained the production

22   of core documents, and noticed depositions on a number of issues. (*See generally*

23   Birka-White Decl., ¶¶ 16(k)–(l); Audet Decl., ¶ 17; Sagafi Decl., ¶¶ 12(f), (k).)[6] At

24   ───────────────
     [6] On August 27, 2013, Plaintiffs' counsel prepared a revised draft settlement
25   agreement incorporating the agreement in principle reached on July 29, 2013.
     (Sagafi Decl., ¶ 12(g).) On September 9, 2013, Plaintiffs' counsel provided
26   Defendants' counsel with a separate, detailed proposed claims protocol. (Sagafi
     Decl., ¶ 12(g).) Defendants' counsel provided comments to both drafts at an in-
27   person meeting on September 18, 2013. (Sagafi Decl., ¶ 12(g).) After further
     negotiations, the parties met again in person on October 8, 2013, to discuss a host
28   of issues, with the focus on a streamlined claims process for Class members.
     *(Footnote continues on next page.)*

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. CV12-06878 SJO (SHX)

1  the request of the parties, the Court again extended the stay until January 28, 2014.
2  (ECF Nos. 106, 110, 114.) On December 9 and 10, 2013, Class Counsel deposed
3  two key Sloan witnesses pursuant to Fed. R. Civ. P. 30(b)(6) regarding the
4  engineering details and efficacy of the Repair Kit, warranty claims, and Sloan's
5  finances. (Birka-White Decl., ¶ 16(l); Audet Decl., ¶ 17; Sagafi Decl., ¶ 12(k).)
6  Following months of extensive due diligence and coordination with other pending
7  actions, the parties finalized the details of their agreement and finally executed the
8  Settlement between January 18 and January 22, 2014. (Sagafi Decl., ¶ 14; Birka-
9  White Decl., ¶ 15; Audet Decl., ¶21.)

10      As provided for under the Settlement, on January 31, 2014, Plaintiffs and
11  Class Counsel in all the consolidated and related actions submitted the proposed
12  Settlement to this Court, together with a request that the Court grant preliminary
13  approval and provide for Rule 23 and due process notice to the Class. (ECF Nos.
14  118–124). The Court conducted a preliminary approval hearing on February 10,
15  2014. (ECF No. 132.) The Court requested certain modifications during the
16  hearing, and consistent with the Court's suggestions, Class Counsel thereafter
17  submitted amended forms of notice and a revised proposed order on February 14,
18  2014. (ECF No. 134).

19      The Court preliminarily approved the Settlement on February 21, 2014. (ECF
20  No. 135.) The Court found that Plaintiffs "have investigated the pertinent facts and
21  law, have engaged in motion practice and discovery, and have evaluated the risks
22  associated with continued litigation, trial, and/or appeal," and that the Settlement
23  appears "fair, reasonable, and adequate." (ECF No. 135, ¶ 2.) The Court further
24  found that "the Settlement was reached in the absence of collusion, is the product of

26  (Sagafi Decl., ¶ 12(h).) Counsel also met with the proposed Claims Administrator
27  on October 25, 2013, in Lancaster, California (the operational headquarters of the
   proposed Claims Administrator) to conduct an informal site inspection of the
28  claims facilities and to discuss claims processing logistics and implementation of
   the settlement. (Sagafi Decl., ¶ 12(i) Birka-White Decl., ¶ 16(j).)

1   informed, good-faith, arms-length negotiations between the parties and their

2   capable and experienced counsel, and was reached with the assistance of a well-

3   qualified and experienced mediator . . . ." (ECF No. 135, ¶ 2.) The Court also

4   conditionally certified the Class for settlement purposes, appointed the named

5   Plaintiffs as Class representatives, appointed Class Counsel, and scheduled a

6   Fairness Hearing for August 25, 2014. (ECF No. 135, ¶¶ 2, 5, 12.) Additionally, the

7   Court approved the form and content of the Class Notices and the Notice Plan,

8   appointed the Notice Provider and Claims Administrator, and ordered that Notice

9   be completed by June 30, 2014. (ECF No. 135, ¶¶ 6–9, 16–17.) Finally, the Court

10  preliminarily appointed Judge Cahill as Special Master. (ECF No. 135, ¶ 17.)

## III.   SUMMARY OF THE SETTLEMENT TERMS

12         The Settlement terms were described in detail in the Plaintiffs' preliminary

13  approval papers, are available for review in the Settlement (ECF No. 119–1), and

14  are briefly summarized again here.

### A.   The Class of Flushmate Toilet Owners.

16         The Settlement provides cash reimbursement to members of the Class,

17  defined to include "any Person who owns or owned a Flushmate System or

18  Flushmate Toilet installed in the United States."[7] Settlement, § I (Definition

---

[7] Excluded from the Class are (1) Defendants, any entity in which Defendants have a controlling interest, or which has a controlling interest in Defendants and Defendants' legal representatives, assigns, and successors, and any retailers or wholesalers of the Flushmate System or Flushmate Toilets, and (2) the judges to whom this case is or was assigned and any members of the judges' immediate families. Also excluded from the Class are (3) all Persons who have obtained a judgment against Defendants with regard to the Released Claims on or before the date of Preliminary Approval by the Court; (4) all Persons who, prior to Preliminary Approval, received cash reimbursement from Flushmate for property damage resulting from a Burst or Leak in their Flushmate System; (5) all Persons who have incurred damages as a result of a Leak or Burst of a Flushmate System that occurred on or before August 9, 2008, but who have not brought any civil action relating thereto on or before August 9, 2012; (6) all Persons whose Property previously contained, but no longer contains, a Flushmate System or Flushmate Toilet, and have not experienced a Leak or Burst of a Flushmate System or Flushmate Toilet, except Persons who replaced their Flushmate Toilets in response to the Recall; and (7) all Persons who formerly owned Property that contained a

*(Footnote continues on next page.)*

1  of "Class") (ECF No. 119-1 at 9).[8]

2      **B.      Settlement Consideration.**

3      Defendants agree to pay a minimum of $18 million in cash for the benefit of

4  the Class. Specifically, Class members who have (1) paid to install a Repair Kit, (2)

5  paid to install a replacement pressure vessel, (3) paid to install a replacement toilet,

6  and/or (4) sustained direct Property Damage as a result of a Leak or Burst of a

7  Flushmate System at any time prior to the close of the Claims Period, will be

8  eligible to submit a claim during the Claims Period. Each type of relief is addressed

9  below.

10     **1.      Reimbursement for Unreimbursed Out-of-Pocket
               Installation Costs.**

11

12     Under the terms of the Recall, Flushmate will provide a free Repair Kit to

13  each Claimant. The Repair Kit (*see* Exhibit A to the Settlement; ECF No. 119-1 at

14  80-82) comprises a metal U-band that encircles the Flushmate System within the

15  Flushmate Toilet, with an external pressure regulator to be installed between the

16  water supply line and the toilet fixture.[9] While the Repair Kit was designed for ease

17  of installation, the parties have provided under the Settlement that any Class

18  ─────────────────────────────
   Flushmate System, and did not experience a Leak or Burst of a Flushmate System
19  or Flushmate Toilet during their ownership. (ECG No. 119-1 at 9.)
   [8] Under the Settlement, a Flushmate Toilet means any toilet equipped with a
20  Flushmate System. The Flushmate System is defined as any Series 503 Flushmate
   III Pressure-Assist Flushing System manufactured by Flushmate between October
21  14, 1997 and June 30, 2009. The manufacturing date code/serial number is up to 16
   characters long and is located on the label on the top of the Flushmate System's
22  polypropylene vessel. The first six numerals of the serial number are the
   manufacturing date code. The manufacturing date code range for the Settlement
23  begins with 101497 (October 14, 1997) and continues through 063009 (June 30,
   2009). *See* Settlement, § 1 (Definitions of "Flushmate Toilet" and "Flushmate
24  System") (ECF No. 119-1 at 11). The serial number is easily visible upon lifting the
   lid of the porcelain tank on any Flushmate Toilet, making it simple and easy for
25  consumers to ascertain whether they are members of the Class.
   [9] The U-band is designed to contain the pressure vessel in the event of a weld seam
26  separation, thereby reducing the likelihood of a burst forceful enough to shatter the
   porcelain fixture. The external regulator further reduces the likelihood and severity
27  of a weld seam separation by reducing the pressure within the Flushmate System.

28

member may choose to engage a plumber or third-party technician to install the Repair Kit. (Sagafi Decl., ¶ 12(k).) Class members who submit qualified claims for reimbursement of costs associated with hiring a plumber or third-party technician to install the Repair Kit will be paid an initial amount in accordance with proof and claims volume. *See* Plan of Allocation, § I.B.1 (ECF No. 134-7 at 2). Based on currently available data, and claims rate calculations over the next two years, Class Counsel anticipate that Claimants will receive approximately $50.00 per Flushmate Toilet plus another $25.00 for each additional Flushmate Toilet located at the same property address. (Sagafi Decl., ¶ 14.)

It should be noted that under the Settlement, claims will be made on an ongoing basis, and thus Claimants will be paid shortly after their claim is submitted. In addition, the Class members will potentially receive a *pro rata* second-round distribution of any unclaimed funds at the end of the two-year Claims Period. Further, as provided in the Settlement, Class members who paid to replace a Flushmate System or Flushmate Toilet will receive an initial distribution from the Settlement Fund for their unreimbursed out-of-pocket replacement expenses in accordance with proof and claims volume. These Claimants will also receive approximately $50.00 per Flushmate Toilet, with $25.00 for each additional Flushmate Toilet located at the same property address. (Sagafi Decl., ¶ 14.) As is true for the other Claimants, these Class members will potentially receive an additional *pro rata* distribution based on the overall claims rate, at the end of the two-year Claims Period.

## 2. Reimbursement for Property Damage Caused by a Flushmate System Leak or Burst.

As Class Counsel learned during the course of the investigation and confirmed through discovery, some Class members have experienced leak- or burst-related failures of the Flushmate Systems that resulted in shattered fixtures and/or associated property damage. For those Class members the Settlement provides

- 11 -

recovery of all reasonable and documented unreimbursed out-of-pocket expenses incurred to restore the affected Property to its pre-damage condition, including the cost to replace the toilet fixture itself. *See* Plan of Allocation, § I.B.2 (ECF No. 134-7 at 2). If any reasonable and documented Property Damage claims remain unpaid after Defendants' guaranteed payments totaling $18 million have been exhausted, and the total amount of paid-for Property Damage claims exceeds $1.5 million, Defendants will be required to pay such remaining Property Damage claims in full to the Settlement fund for allocation to those Claimants. *See* Settlement, § IV.A.4 (ECF No. 119-1 at 28). As agreed by the parties, any Property Damage claims arising after the Claims Period are not included in the Settlement, will not be paid out of the Settlement fund, and are not released under the Settlement.

## C. Settlement Funding Schedule.

The Settlement obligates Defendants to contribute a guaranteed total of eighteen million dollars ($18,000,000) to the Settlement fund over the course of the next two-plus years. *See* Settlement, § IV.A (ECF No. 119-1 at 27–28). Following preliminary approval, Defendants have already transferred $2 million into the Settlement Fund Trust Account, with an additional tranche of $4.5 million to be transferred within ten (10) days after the Effective Date; a final transfer of $2.5 million will be made no later than six (6) months after the Effective Date. *See* Settlement, § IV.A.1 (ECF No. 119-1 at 27). Accordingly, the total Settlement payments during the first year of funding will be $9 million. In Year Two, Defendants will pay a total of $6 million in two installments, of $4 million and $2 million. *See* Settlement, § IV.A.2 (ECF No. 119-1 at 28). In Year Three, Defendants will pay another $3 million in four equal installments. *See* Settlement, § IV.A.3 (ECF No. 119-1 at 28).

As indicated above, should any reasonable and documented Property Damage claims remain unpaid after Defendants' guaranteed payments have been exhausted, and should the total amount of paid Property Damage claims exceed

1  $1.5 million, then Defendants will be responsible for paying the remaining unpaid

2  qualified Property Damage claims. *See* Settlement, § IV.A.4 (ECF No. 119-1 at 28).

3  In this regard, the Settlement Agreement is effectively "uncapped" as to Property

4  Damage claims for the Class members. After all Eligible Claims for reimbursement

5  have been paid, any funds remaining in the Settlement Fund Trust Account will be

6  distributed to the Claimants on a *pro rata* basis as "supplemental" payments if

7  feasible (or, if not practical, the amount will be distributed *cy pres* subject to the

8  Court's approval). *See* Settlement, § V.C (ECF No. 119-1 at 32); Plan of

9  Allocation, § I.B.3 (ECF No. 134-7 at 2).

10      **D.      Claims Process.**

11          Section V of the Settlement, in conjunction with the more detailed Plan of

12  Allocation, sets forth the claims process. Claimants whose property contains more

13  than one Flushmate Toilet can file multiple claims, one for each toilet. *See*

14  Settlement, § V.B (ECF No. 119-1 at 31–32). The costs associated with

15  administering the Settlement will be paid out of the Settlement Fund Trust Account.

16  *See* Settlement, §§ IV.B, V.E (ECF No. 119-1 at 31–32). For purposes of

17  Settlement administration, Claimants are sorted into two groups: economic loss

18  Claimants and property damage Claimants.

19  • **Economic loss Claimants.** Owners of Flushmate Toilets can submit claims

20      for unreimbursed, out-of-pocket expenses associated with having installed a

21      Repair Kit, replacement pressure vessel, or replacement toilet. It

22      is anticipated that these Claimants will receive a minimum $50 cash

23      payment. For properties with multiple Flushmate Toilets, Claimants will

24      receive additional compensation for each subsequent installation. *See* Plan of

25      Allocation, I.B.1 (ECF No. 134-7 at 1–2). It is requested that Claimants

26      submit copies of their invoices or receipts with their claims. If they do not

27      have invoices or receipts, they can still submit the claim listing the serial

28      number or providing other proof of ownership of the Flushmate System(s)

1    for which they are seeking reimbursement.

2    • **Property damage Claimants.** Owners of Flushmate Toilets whose Property

3       was damaged directly as a result of a leak or a burst are entitled to

4       reimbursement for the reasonable and necessary documented expense to

5       restore the Property to its pre-damage condition. *See* Plan of Allocation, I.B.2

6       (ECF No. 134-7 at 2).

7    Claimants whose Flushmate Toilets have already been repaired or replaced at

8    Sloan's expense, or whose Property Damage claims relating to Flushmate Toilets

9    have already been paid or resolved by Sloan, are not eligible for relief. *See* Plan of

10   Allocation, n. 2 (ECF No. 134-7 at 1 n. 2).

11        The parties proposed, and the Court preliminarily approved, the appointment

12   of Class Litigation Administration and Support Services ("CLASS") to implement

13   the Plan of Allocation. The founder and president of CLASS is Arnold Rodio, an

14   experienced claims administrator and plumbing expert who is the former president

15   of the largest California plumbing trade group and a member of various committees

16   of the international plumbing trade group responsible for promulgating uniform

17   plumbing standards. Mr. Rodio has administered property damage claims arising

18   from numerous civil actions, and is well-qualified to administer the claims under

19   this Settlement. (Declaration of Arnold Rodio in Support of Plaintiffs' Unopposed

20   Motion for Preliminary Approval of Class Action Settlement, and Exhibits A & B

21   thereto; ECF Nos. 121, 121-1, 121-2.)

22        The Settlement provides for the appointment of a Special Master who will

23   resolve certain disputes that may arise during Settlement administration. Pursuant

24   to the suggestion of the Court, and by agreement of the parties, Judge Cahill (Ret.)

25   will serve as the Special Master. *See* Settlement, § I (Definition of "Special

26   Master") (ECF No. 119-1 at 16); Plan of Allocation, §§ IV.D, VI (ECF No. 134-7

27   at 5-6, 7); Stipulation Following February 10, 2014 Hearing on Plaintiff's

28   Unopposed Motion for Preliminary Settlement Approval (ECF No. 134). The

1  Settlement also provides for the appointment of a Special Circumstances

2  Committee, consisting of the Claims Administrator and representatives of Plaintiffs

3  and Defendants, to resolve any and all large, disputed, or unusual claims in the first

4  instance. *See* Plan of Allocation, § V (ECF No. 134-7 at 6-7). Any disputes arising

5  from the Special Circumstances Committee, including disputes among the members

6  of the Committee and objections to decisions of the Committee, will be referred to

7  the Special Master for resolution. *See* Plan of Allocation, § V (ECF No. 134-7 at 7).

8  The parties respectfully request that the Court finally approve Judge Cahill's

9  appointment as Special Master.

10      During the Claims Period, Class Counsel will submit an annual report to the

11  Court detailing the work performed by the Claims Administrator and the amounts

12  paid to the Class during the prior year. *See* Settlement, § V.E (ECF No. 119-1 at

13  32–33). At the end of the Claims Period, the Class members will revert to their

14  remaining warranty rights, which the Settlement preserves. *See* Settlement, § VI.D

15  (ECF No. 119-1 at 35).

16      **E.      Settlement Release.**

17      In exchange for the valuable consideration summarized above and set forth in

18  greater detail in the Settlement, Plaintiffs agree to an appropriately tailored Release

19  of Defendants from liability. *See* Settlement, § VI.A (ECF No. 119-1 at 33). This

20  Release will preclude future claims "to the extent such claims are alleged to be

21  caused by, arise out of, or relate to any claim asserted, or that could have been

22  asserted, in the Action relating to the Flushmate System and/or Flushmate Toilets."

23  Settlement, § I (Definition of "Released Claims") (ECF No. 119-1 at 14-15). The

24  Release does not prevent Class members from exercising their rights under any

25  applicable written express warranties offered with Flushmate Systems and

26  Flushmate Toilets during or after the Claims Period. *See* Settlement, § VI.D (ECF

27  No. 119-1 at 35). Moreover, the Release does not extinguish any wrongful death,

28  personal injury, or emotional distress claims, or any claims for property damage

- 15 -

arising after the end of the Claims Period. *See* Settlement, § I (Definition of "Released Claims") (ECF No. 119-1 at 14–15).

## IV.  THE APPROVED CLASS NOTICE HAS BEEN DISSEMINATED, AND SATISFIES RULE 23 AND DUE PROCESS.

The Notice Plan approved by the Court (ECF No. 135, ¶¶ 7–9) has been fully implemented by the Parties and the Court-approved Claims Administrator and Notice Provider in accordance with the Court's directives. (Sagafi Decl., ¶ 17; Declaration of Katherine Kinsella, ¶¶ 5–23 ("Kinsella Decl.").)

Pursuant to the Court-approved Notice Plan, direct individual notice of the Settlement has been disseminated by mail to approximately 203,885 Class Members, and to approximately 105,166 plumbing and general contractors nationwide. (Kinsella Decl., ¶¶ 7, 19.) The Settlement notice has also been published in more than 25 media outlets, including *People*, *Time*, *Parade*, and *Better Homes & Gardens*, as well as on the Internet,[10] and in 10 publications likely to be read by commercial, public, and other owners of Flushmate Toilets. (ECF 120-3 at 31, 37; Sagafi Decl., ¶ 17; Kinsella Decl., ¶¶ 9–18, 20–23.)

At the preliminary approval hearing, the Court stated: "I was impressed with the declaration of Kinsella and the various avenues for notice, direct notice, and then notice to paid media, notice through press release, notice through third-party outreach, notice to the plumbing contractors and the interactive website are all I think as good as one can expect." (ECF No. 132 at 49.) The Notice Plan as executed complies with the Court's Order, satisfies Rules 23(c) and (e), and meets the requirements of due process. (Kinsella Decl., ¶¶ 2, 24.) *Cf. Simpao v. Gov't of Guam*, 369 F. App'x 837, 838 (9th Cir. 2010) (notice published by radio, television, and newspaper, mailed directly to 49,000 class members, satisfied due process).

---

[10] *See* Flushmate Class Action Settlement Fund, http://www.flushmateclaims.com/ (last visited June 21, 2014).

- 16 -

## V.      FINAL APPROVAL IS WARRANTED

### A.      Summary of Argument.

The *Manual for Complex Litigation* (Fourth) § 21.63 (2004) ("*Manual*") describes the three-step procedure for approval of class action settlements pursuant to Fed. R. Civ. P. 23:

1. Preliminary approval of the proposed settlement at a hearing after submission to the Court of a written motion for preliminary approval;

2. Dissemination of notice of the proposed settlement to the affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, regularly used by courts in this Circuit, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 *Newberg on Class Actions*, § 11:22, *et seq.* (4th ed. 2002) ("*Newberg*"). The first two steps in this process have now occurred. With this motion, Plaintiffs respectfully request that the Court take the third and last step in the process by granting final approval to the Settlement agreed upon by the parties.

### B.      The Settlement is Fair, Reasonable, and Adequate, and the Relevant Factors Weigh in Favor of Approval.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "This is especially true in complex class action litigation . . . ." *Id.*; *see also Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). To safeguard the interests of the Class, the Court has the duty to ensure that a proposed settlement is "fair, reasonable, and adequate" before granting approval. *See* Fed. R.

- 17 -

Civ. P. 23(e)(2). In performing that duty the Court's scrutiny "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

The Ninth Circuit has laid out a set of factors courts should consider in evaluating class settlements: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575; *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). This list is non-exclusive, *Churchill Village*, 361 F.3d at 576 n.7, and "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Application of the pertinent factors and consideration of the Settlement as a whole demonstrates that the Settlement is fair, reasonable, and adequate.

**1.   The Strengths of the Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Settlement Approval Here.**

Plaintiffs and Class Counsel believe the claims against Defendants have merit and would present a compelling case at trial. Defendants deny that the Plaintiffs' claims have any merit. It is clear that Plaintiffs and the Class would face difficult and lengthy challenges if the litigation were to continue.

As noted above, the Parties reached agreement on the Settlement terms during the pendency of Defendants' Motion to Dismiss the TAC. (ECF No. 76.) Defendants therein challenged the legal sufficiency of Plaintiffs' fraud-based claims

in tort and under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and Consumer Legal Remedies Act, Cal. Civil Code § 1770, *et seq*. In particular, Defendants argued that Plaintiffs had not adequately pled reliance on Defendants' alleged misrepresentations, and that relief could not be granted on any of Plaintiffs' fraud claims. (ECF No. 76.) Plaintiffs argued in response that the reliance element was sufficiently pled under an "indirect reliance" theory, because the Advisors who recommended Defendants' toilets to them relied on Defendants' alleged misrepresentations, and would not have recommended purchasing the defective Flushmate Toilets but for those misrepresentations. (ECF No. 78 at 2–9.)

Plaintiffs believe their arguments opposing Defendants' Motion to Dismiss the TAC are meritorious, and that they would have defeated the Motion absent the Court's stay. Nevertheless, there could be no guarantee that Plaintiffs' theory of indirect reliance through "Advisors" and the distribution chain would have been found legally viable. *Cf. Mirkin v. Wasserman*, 5 Cal. 4th 1082, 23 Cal. Rptr. 2d 101 (Cal. 1993). To recover for fraud, Plaintiffs also would have needed to establish that Sloan knew or should have known of the defect but failed to disclose it until the Recall Notice. Additionally, because the Court had previously granted Defendants' Motion to Dismiss the FAC in a detailed order (ECF No. 65), there remained a significant risk of the Court again dismissing Plaintiffs' fraud claims for failure to remedy the Court's expressed concerns. Dismissal of the fraud claims would have greatly reduced the damages available to Plaintiffs at trial.

Defendants further asserted that Plaintiffs' warranty claims were insufficiently pled. With respect to any purported warranty, Defendants would have argued, *inter alia*, that any limited warranty covering "defects in materials and workmanship" does not extend to the alleged design defect. They would have argued that the warranty claim lacks merit because Plaintiffs allegedly did not satisfy all the conditions precedent, *i.e.*, contacting Flushmate to request warranty service and making their toilets available for inspection. Additionally, Defendants

- 19 -

would have attacked the warranty claims on the grounds that the defect did not manifest and/or was not substantially certain to manifest in most of the Flushmate Toilets owned by Plaintiffs and the putative Class. Defendants also argued that the economic loss doctrine bars Plaintiffs' negligent recall claim under California law.

Even if Plaintiffs could have prevailed against experienced defense counsel to overcome these and other obstacles, years of expensive litigation would likely have followed. Plaintiffs would have needed to litigate certification, the propriety of the proposed Class under Rule 23, and the appointment of the Class representatives and Class Counsel for litigation purposes. *See* Fed. R. Civ. P. 23(a)–(c), (g).[11] After any class certification order and interlocutory Rule 23(f) appeal, the parties would have needed to litigate motions for summary judgment, to conduct additional and potentially extensive fact and expert discovery, to prepare the case for trial, and potentially to bring or defend appeals of any verdict or summary judgment.

Even assuming Plaintiffs could have prevailed at every remaining stage of the litigation, bringing this nationwide class action to trial would have entailed years of additional effort and cost. As the Court has already found, this Settlement "avoids the costs, uncertainty, delays, and other risks associated with continued litigation, trial, and/or appeal" while benefiting the Class and "advance[ing] public safety" by "maximiz[ing] Class members' incentive to repair or replace their Flushmate Toilets." (ECF No. 135 at ¶ 3.) This factor thus strongly favors approval. *See Churchill Village*, 361 F.3d at 575.[12] (Audet Decl., ¶¶ 26, 27, 31.)

---

[11] To the extent that the Settlement might be viewed as "early" because class certification issues have not yet been litigated, this is "an early resolution [that] demonstrate[s] that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end . . . ." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, MDL No. 2147, 2011 WL 2204584 (N.D. Ill. June 2, 2011) (citations omitted).

[12] *See also Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC (Ex), 2013 U.S. Dist. LEXIS 35066, at *6–7 (C.D. Cal. Mar. 13, 2013) (finding that this factor militated in favor of approval in part because the proposed settlement advanced the public interest "without the challenges and risks of trial").

### 2. The Settlement Confers a Meaningful Benefit Upon the Class.

The amount of the Settlement is more than adequate, providing meaningful cash relief to the Class that augments the relief available under the voluntary Recall. As described above, Defendants will pay a minimum of $18,000,000 into a common fund for the benefit of the Class. Class Counsel anticipate that Claimants will receive approximately $50.00 per Flushmate Toilet, with $25.00 for each additional Flushmate Toilet located at the same property address, to offset unreimbursed, out-of-pocket costs to install a Repair Kit, replacement pressure vessel, or replacement toilet. If any sums remain in the Settlement Fund after payment of claims, Class members may receive an additional *pro rata* distribution.

Cash reimbursement at this level supplements the relief available to Class members well beyond what is available under the Recall, and allows for the fair *pro rata* distribution of the Settlement funds to the Class. Claims by Class members who have suffered property damage are effectively uncapped, while claims for wrongful death, personal injury, or emotional distress are not being released.

The relief provided under the Settlement supports final approval—as this Court has previously recognized, the Settlement "confers substantial benefits . . . ." (ECF No. 135, ¶ 2.)

### 3. Investigation and Discovery Prior to the Settlement Weigh in Favor of Approval.

By the time the parties reached the Settlement, after months of intensive negotiation, Class Counsel had conducted substantial investigation as well as document and deposition discovery that informed Plaintiffs' claims. Prior to filing their initial complaint, and continuing throughout the litigation, Plaintiffs in the UDC Action and in the other actions investigated the problems with the Flushmate System, including by conducting interviews and independent research into the Flushmate System and supply chain. (Sagafi Decl., ¶ 7; Birka-White Decl., ¶ 15.)

1    Beyond their own investigation, Plaintiffs' counsel retained plumbing, engineering,

2    and plumbing-code experts to investigate the facts and assess the viability and

3    strength of the claims. *Id.* This investigation informed the settlement negotiations,

4    as did the discovery that Defendants provided both before and during those

5    negotiations. (Sagafi Decl., ¶ 8.) Indeed, Class Counsel noticed and took two

6    depositions of Sloan representatives under Fed. R. Civ. P. 30(b)(6) while

7    negotiations were ongoing, to resolve a number of issues related to the Settlement.

8    (Sagafi Decl., ¶ 12(k).) This Court's order resolving Defendants' motions to

9    dismiss the FAC was also invaluable in helping the parties assess the strengths and

10   weaknesses of their respective positions. (Sagafi Decl., ¶ 11.)

11        Plaintiffs' counsel thus had a sound basis for evaluating the benefits of this

12   Settlement against the risks attending continued litigation. The final terms of

13   Settlement were agreed to only after Class Counsel had thoroughly vetted the

14   claims and potential damages through the exchange of both informal and formal

15   discovery, participated in arm's length negotiations with Defendants, and

16   vigorously litigated the case over nearly two years. (Sagafi Decl., ¶¶ 6–12; Audet

17   Decl., ¶¶ 29–31; Birka-White Decl., ¶ 15.) In short, the stage of the proceedings and

18   the well-informed nature of the negotiations that produced this Settlement favor

19   approval.

20        **4.    The Views of Experienced Class Counsel and the Positive
           Reaction of the Class Support Approval.**

21

22        Class Counsel unreservedly support this Settlement and believe it is the best

23   result for the Class that could have been achieved given all the circumstances. Class

24   Counsel have extensive experience litigating nationwide class actions involving

25   allegedly defective products like those at issue here, and had a keen understanding

26   of the legal and factual issues in this case. (Sagafi Decl., ¶¶ 3, 7, 9 19; Birka-White

27   Decl., ¶ 3, 19; Audet Decl., ¶¶ 13–25.) That qualified and well-informed counsel

28   endorse the Settlement as fair, reasonable, and adequate weighs in favor of

1  approval.[13]

2       The Class's reaction to the Settlement to date also supports its approval.

3  Because the Claims Period will remain open for at least two years, and because the

4  deadline to opt out of or object to the Settlement has not yet arrived, the absent

5  Class members' reaction cannot be fully evaluated as of this filing. Thus far, the

6  reaction has been overwhelmingly positive. A toll-free telephone number was set

7  up to assist consumer and third-party notice recipients; as of June 26, 2014, the

8  number had received 9,154 calls. (Kinsella Decl., ¶¶ 22, 23.) As of that same date,

9  the FlushmateClaims.com website had received 154,641 unique visits. (Kinsella

10  Decl., ¶¶ 20, 21.) As against these large numbers, there have been only 15 opt-outs

11  to date, and zero objections, which favors approval. (Sagafi Decl., ¶ 18.)[14]

12       A court may appropriately infer that a class action settlement is fair,

13  adequate, and reasonable when few class members object to it.[15] Here, the Court

14  has determined that the Notice Plam "constitutes the best notice practicable under

15  the circumstances" and is "reasonably calculated under the circumstances to apprise

16  the Class members" of all necessary information for them to determine their rights

17  and assess their options under the Settlement. (ECF No. 135 at ¶ 7.) *See* Fed. R.

18  Civ. P. 23(c)(2); *Churchill Village*, 361 F.3d at 575. Particularly given the

19  extensive Notice and the large amount of Class members, the positive reaction of

20  _____

21  [13] *See In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 455 (C.D. Cal. Jan. 17, 2014) ("The recommendations of plaintiffs' counsel should be given a presumption of

22  reasonableness.") (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF (PLAx),

23  2012 U.S. Dist. LEXIS 103666, at *8 (C.D. Cal. July 2, 2012).

24  [14] In accordance with the Court's preliminary approval order, requests for exclusion must be postmarked by July 25, 2014, and any comments on or objections to the

25  Settlement and/or to Class Counsel's request for attorneys' fees and costs must be submitted by July 30, 2014. (ECF No. 135, ¶ 10.) Plaintiffs' and Defendants'

26  responses to any such comments or objections are to be filed by August 8, 2014. (ECF No. 135, ¶ 10.)

27  [15] *See, e.g.*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Churchill*, 361 F.3d at 577.

28

the Class heavily favors approval.

### 5.     No Governmental Entity Has Raised Any Concern About the Settlement.

On February 7, 2014, Defendants provided notice of the Settlement to the governmental officials designated to receive such notice under the Class Action Fairness Act, 28 U.S.C. § 1715. (ECF No. 138.) To date no governmental entity has raised any objection or concern about any aspect of the Settlement. This factor points to its fairness, reasonableness, and adequacy. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ("Although no governmental entity is a party to this action, the proposed settlement nevertheless bears the silent imprimatur of government approval because despite receiving notice, no state or federal official has filed an objection to the proposed settlement.") (Selna, J.).

### 6.     The Settlement Is the Product of Months of Robust Negotiations.

Finally, to ensure that the interests of Class Counsel and Defendants in the Settlement align with those of the absent Class members, the Court "must be particularly vigilant" for signs of collusion, whether "explicit" or "more subtle." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). There are no such warning signs here.

When a settlement like this one has resulted from arms' length negotiations conducted by capable and experienced counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable.[16] This presumption applies

---

[16] *See* 4 *Newberg* § 11:41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'") (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

1   with full force and effect in this situation: as this Court has already found, the

2   present Settlement stems from robust and painstaking negotiations between the

3   parties, including five full days of mediation before Judge Cahill. ECF No. 135, ¶ 2

4   (finding the "Settlement was reached in the absence of collusion, is the product of

5   informed, good-faith, arms-length negotiations between the parties . . . .").

6   **VI.   <u>CONCLUSION</u>**

7        For all of the foregoing reasons, Class Counsel respectfully ask the Court to

8   enter a Final Order and Judgment approving the proposed Settlement Agreement.

9

10  Dated: June 30, 2014                 Respectfully submitted,

11                                       LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
12

13                                       By: /s/ *Kristen Law Sagafi*
                                            Kristen Law Sagafi
14
                                         Robert J. Nelson (State Bar No. 132797)
15                                       *rnelson@lchb.com*
                                         Kristen Law Sagafi (State Bar No. 222249)
16                                       *klaw@lchb.com*
                                         Jordan Elias (State Bar No. 228731)
17                                       *jelias@lchb.com*
                                         LIEFF CABRASER HEIMANN &
18                                       BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
19                                       San Francisco, CA 94111-3339
                                         Telephone: (415) 956-1000
20                                       Facsimile: (415) 956-1008

21

22

23

24

25

26

27

28

                                         PLAINTIFFS' MOTION FOR FINAL APPROVAL
                                         OF CLASS ACTION SETTLEMENT
                                         CASE NO. CV12-06878 SJO (SHX)

David M. Birka-White (State Bar No. 85721)
*dbw@birka-white.com*
Stephen Oroza (State Bar No. 84681)
*soroza@birka-white.com*
Mindy M. Wong (State Bar No. 267820)
*mwong@birka-white.com*
BIRKA-WHITE LAW OFFICES
65 Oak Court
Danville, CA 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

*Attorneys for the Class and Plaintiffs United
Desert Charities, Fred Ede III, Emily Williams,
Bruce Pritchard, and Jean Steiner*

William M. Audet (State Bar No. 117456)
*waudet@audetlaw.com*
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Kenneth A. Wexler
*kaw@wexlerwallace.com*
Amy E. Keller
*aek@wexlerwallace.com*
WEXLER WALLACE LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

*Attorneys for the Class and Plaintiffs Milen
Dimov, Trigona Dimova, Scott Iver, and Neal
Olderman*

Jordan Lucas Chaikin
*jchaikin@yourlawyer.com*
PARKER WAICHMAN LLP
3301 Bonita Beach Road Suite 101
Bonita Springs, FL 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055

*Attorneys for the Class and Plaintiffs Daniel
Berube and Jeffrey Brettler*

- 26 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Charles E. Schaffer
*cschaffer@lfsblaw.com*
Brian F. Fox
*bfox@lfsblaw.com*
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Eric D. Holland
*eholland@allfela.com*
HOLLAND GROVES SCHNELLER &
STOLZE LLC
300 North Tucker Boulevard, Suite 801
St. Louis, MO 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554

*Attorneys for the Class and Plaintiffs Randy
Kubat and John Snyder*

Mark John Geragos
*geragos@geragos.com*
GERAGOS AND GERAGOS PC
644 South Figueroa Street
Los Angeles, CA 90017-3480
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

*Attorneys for the Class and Plaintiffs Pankaj
Patel, Daniel Berube and Jeffrey Brettler*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATION**

Pursuant to Civil Local Rule 5–4.3.4(a)(2)(i), Kristen Law Sagafi, the ECF User whose identification and password are being used to file the foregoing PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: June 30, 2014               /s/ *Kristen Law Sagafi*
                                              Kristen Law Sagafi

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO. CV12-06878 SJO (SHX)